1  Daniel S. Belsky, Esq. (SBN 75810)
   Vincent J. Iuliano, Esq. (SBN 153594)
2  Bruce W. Boetter, Esq. (SBN 188376)
   **BELSKY & ASSOCIATES**
3  591 Camino de la Reina, Suite 640
   San Diego, CA 92108
4  Telephone:    (619) 497-2900
   Facsimile:    (619) 497-2901
5

(SPACE BELOW FOR FILING STAMP ONLY)

FILED

2008 MAY 30 PH 1:38

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____KMH_____DEPUTY

6  Attorneys for Defendants
7       CELESTINE ARAMBULO, D.O., (erroneously sued and served as DR. C. ARAMBULO),
        KAISER FOUNDATION HOSPITALS, SOUTHERN CALIFORNIA PERMANENTE
        MEDICAL GROUP, and KAISER FOUNDATION HEALTH PLAN, INC.
8

9               **UNITED STATES DISTRICT COURT**

10          **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

11 | FRANZISKA I. COLLIER, individually, and as) | Civil Action No. **08 CV 0969 L POR**
   | Administrator of the Estate of Edgar T. Collier,)
12 | Deceased; KEA JADE COLLIER, a Minor, by) | **DEFENDANTS CELESTINE ARAMBULO,**
   | her Guardian Ad Litem, MICHAEL HYDE,     ) | **D.O., KAISER FOUNDATION HOSPITALS,**
13 |                                          ) | **SOUTHERN CALIFORNIA PERMANENTE**
   |       Plaintiffs,                        ) | **MEDICAL    GROUP,    and    KAISER**
14 |                                          ) | **FOUNDATION HEALTH PLAN, INC.'S**
   | v.                                       ) | **NOTICE OF REMOVAL**
15 |                                          )
   | PARADISE   HILLS   CONVALESCENT)
16 | CENTER, a business entity, form unknown; DR.)
   | GAYNSKI; DR. C. ARAMBULO; KAISER)
17 | FOUNDATION   HOSPITALS;   SOUTHERN)
   | CALIFORNIA   PERMANENTE   MEDICAL)
18 | GROUP; KAISER FOUNDATION HEALTH)
   | PLAN, INC.; and DOES 1 through 100,)
19 | inclusive,                               )
   |                                          )
20 |       Defendants.                        )
   |                                          )
21 _____)

22       Defendants CELESTINE ARAMBULO, D.O., KAISER FOUNDATION HOSPITALS,

23 SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP, and KAISER FOUNDATION

24 HEALTH PLAN, INC. respectfully remove this action to the United States District Court for the

25 Southern District of California.  In support of the Joint Notice of Removal, Defendants state as

26 follows:

27 ///

28 ///

# I.

## INTRODUCTION

1.      On September 17, 2007, Plaintiffs filed this action against Defendants in the Superior Court of the State of California, County of San Diego - Central Division. However, Defendants were only served with the summons and Second Amended Complaint filed on April 3, 2008, on or after April 30, 2008. A copy of all State Court pleadings and orders served on removing defendants is attached as Exhibit A.

2.      Consistent with 28 U.S.C. § 1446(b), this Notice of Removal is being filed within thirty (30) days of the date that Defendants were served with the Summons and Second Amended Complaint in this action.

3.      Defendants remove this case pursuant to 28 U.S.C. § 1441 as an action over which this Court has federal question jurisdiction under 28 U.S.C. § 1331. The Court has federal question jurisdiction because (1) the Second Amended Complaint raises claims that turn on the construction of a federal government contract and federal common law; and (2) the Second Amended Complaint raises claims that are "completely preempted" by the Federal Employees Health Benefit Act ("FEHBA"), 5 U.S.C. §§ 8901-8914.

# II.

## BACKGROUND

4.      Plaintiffs in this case are the estate and widow of Edgar T. Collier ("Decedent") and Kea Jade Collier, a minor, by her guardian ad litem, Michael Hyde. In this action, they assert various state and federal law claims against the Decedent's health maintenance organization and health care providers for actions occurring in July 2006.

5.      At all times relevant to this suit, the Decedent was enrolled in the federal government's health benefits plan administered by Kaiser (the "Kaiser Federal Plan").

6.      The Kaiser Federal Plan was, pursuant to FEHBA, created to provide health benefits for federal government employees and their dependents. It is established by federal government contract between the United States Office of Personnel Management ("OPM") and Kaiser.

/ / /

/ / /

7.    Federal employees do not enter any contract with Kaiser for coverage; instead, they "enroll" in the Kaiser Federal Plan pursuant to OPM regulations and receive benefits and services pursuant to the federal government contract between OPM and Kaiser. 5 U.S.C. § 8905(a); 5 C.F.R. §§ 890.101(a), 890.120-104, 890.301(d) and subparts C, D, and K.

8.    FEHBA and OPM's regulations establish a comprehensive framework for the supervision and administration of FEHBA plans.

        a.    Under FEHBA, OPM is vested with the sole authority to contract for the provision of health plans, to determine the benefit structure for each plan, and to promulgate the official description of a plan's terms in a Statement of Benefits. See 5 U.S.C. §§ 8902(a), 8907; see generally Statement of Benefits for the Kaiser Federal Plan attached as Exhibit B.

        b.    Congress delegated exclusively to OPM the authority to police the conduct and health care policies and practices of FEHBA carriers, and the agency has promulgated extensive regulations on the topic. See 5 U.S.C. §§ 8902(e), 8913(a); 48 C.F.R. Chapter 16.

        c.    FEHBA and OPM's regulations establish that the exclusive remedy for a purportedly wrongful denial of benefits or services is an administrative appeal at OPM, followed by judicial review of OPM's decision. OPM has mandated that no court suit shall be brought against a FEHBA carrier or its subcontractors in association with a denial of benefits or services. See 5 U.S.C. §§ 8902(j), 8912, 5 C.F.R. §§ 890.105, 890.107; 60 Fed. Reg. 16,037 (Mar. 29, 1995); 61 Fed. Reg. 15,177 (April. 5, 1996).

        d.    FEHBA contains a broad preemption provision that states: "The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans." 5 U.S.C. § 8902(m)(1) (2000) (as amended by the Federal Employees Health Care Protection Act of 1998, Pub. L. No. 105-266, § 3(c), 112 Stat. 2363, 2366). In enacting this preemption provision (which amended an earlier preemption section), Congress's intent was to "confirm" that "FEHB program contract which relate to the nature or extent of coverage or benefits (including payments with respect to benefits)

1  completely displace State or local law relating to health insurance or plans," to clarify that "this
2  preemption authority applies to FEHB program plan contract terms which relate to the provision of
3  benefits or coverage, including managed care programs," and "to strengthen the case for trying FEHB
4  program claims disputes in Federal courts rather than State courts." H.R. Rep. No. 105-374, at 9, 16
5  (1997).

6       9.    In the Second Amended Complaint, Plaintiffs allege that in July 2006, there existed
7  written agreements for the provision of health care services, which obligates Defendants to make
8  decisions concerning the nature and extent of Decedent's medical care and treatment and that
9  Defendants were to ensure that Decedent was provided reasonable, necessary and appropriate medical
10  care in a timely manner. Plaintiffs contend Decedent's wife is entitled to restitution of funds paid to
11  Defendants on Decedent's behalf, amongst other damages. (See Second Amended Complaint, Fourth
12  Cause of Action , page 10, line 19 to page 11, line 15.)

13       10.    Plaintiffs' Second Amended Complaint also alleges that in July 2006, Defendants
14  breached the covenant of good faith and fair dealing in that they made decisions regarding Decedent's
15  medical care and treatment because of their own economic interests and contrary to Decedent's best
16  interests, that Decedent was denied reasonable, necessary and appropriate services causing him
17  injuries and death. (See Second Amended Complaint, Fifth Cause of Action, page 11, line 16 to page
18  12, line 21.)

19                                            **III.**

20                                 **GROUNDS FOR REMOVAL**

21       11.    The Court has federal question jurisdiction under 28 U.S.C. § 1331, and thus removal
22  jurisdiction under 28 U.S.C. § 1441, on each of the following independent bases:

23            a.    One or more of Plaintiffs' claims turns on the construction of federal common
24  law and is thereby removable. Federal common law exclusively governs claims that concern the
25  interpretation of FEHBA contracts; that allege fraudulent, deceptive, or similarly wrongful conduct
26  on the part of FEHBA carriers or their subcontractors in the course of providing services to FEHBA
27  enrollees; or that challenge a FEHBA carrier's institutional policies and practices.
28  ///

/ / /

b.     FEHBA's enforcement scheme provides the exclusive remedy for all claims that involve the interpretation of FEHBA contracts; that allege fraudulent, deceptive, or similarly wrongful conduct on the part of FEHBA carriers or their subcontractors in the course of providing services to FEHBA enrollees; or that challenge a FEHBA carrier's institutional policies and practices. For this reason, FEHBA "completely preempts" - and therefore makes removable - one or more of Plaintiffs' claims in this action.

12.     Removal of an entire case is permitted if the Court has jurisdiction as to any claim against any Defendant. Consequently, so long as one of the Plaintiffs' claims as asserted against any Defendants are subject to removal, this Court can exercise jurisdiction over the entire case. See 28 U.S.C. §§ 1367, 1441(c).

13.     All Defendants known to have been served with Plaintiffs' Second Amended Complaint have consented to this Notice of Removal.

**WHEREFORE, PREMISES CONSIDERED**, Defendants remove this action from the Superior Court of the State of California, County of San Diego - Central Division.

Respectfully Submitted,

Dated: __May 30__, 2008     By: _____
Daniel S. Belsky, Esq.
Vincent J. Iuliano, Esq.
Bruce W. Boetter, Esq.
Attorneys for Defendants
CELESTINE    ARAMBULO,    D.O.,    KAISER
FOUNDATION    HOSPITALS,    SOUTHERN
CALIFORNIA PERMANENTE MEDICAL GROUP, and
KAISER FOUNDATION HEALTH PLAN, INC.

**EXHIBIT A**

*2nd* AMENDED

# SUMMONS
## *(CITACION JUDICIAL)*

**SUM-100**

RECEIVED
MAY 07 2008
DAVID J. LERMAN, M.D., J.D.

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

FILED
CLERK'S OFFICE 19

08 APR -3 AM 9: 42

CLERK
SAN DIEGO SUPERIOR COURT

ACCEPTED ON BEHALF OF
KFH/SCPMG, S.D.

MAY 0 1 2008

LEGAL SUPPORT COORDINATOR

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
PARADISE HILLS CONVALESCENT CENTER, a business
entity, form unknown; DR. GAYNSKI; DR. C. ARAMBULO;
KAISER FOUNDATION HOSPITALS; SOUTHERN CALIFORNIA
PERMANENTE MEDICAL GROUP; KAISER FOUNDATION HEALTH
PLAN, INC.; and DOES 1 through 100, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
FRANZISKA I. COLLIER, individually, and as
Administrator of the Estate of EDGAR T. COLLIER,
Deceased; KEA JADE COLLIER, a Minor, by her Guardian
Ad Litem MICHAEL HYDE

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* SUPERIOR COURT OF CALIFORNIA COUNTY OF SAN DIEGO 330 West Broadway San Diego, CA 92101 Central Division | CASE NUMBER: *(Número del Caso):* 37-2007-00075145-CU-MM-CT |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
BERNARD R. LAFER, ESQ. #122645          619-298-1969     619-298-7784
7801 Mission Center Court
Suite 430
San Diego, CA  92108

| DATE: *(Fecha)* APR 0 3 2008 | Clerk, by **B. Orihuela** , Deputy |
|---|---|
| | *(Secretario)* *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

[ SEAL ]

*5/1/08: Dr. Arambulo rec'd this at her home last night from a process server. — km*

3. [ ] on behalf of *(specify):*

   under: [ ] CCP 416.10 (corporation)        [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)    [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)
          [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Legal Solutions ® Plus

Code of Civil Procedure §§ 412.20, 465

2576

1  BERNARD R. LAFER, ESQ. SBN 122645
7801 Mission Center Court
2  Suite 430
San Diego, CA  92108
3  Tel: (619) 298-1969
Fax: (619) 298-7784

4

F I L E D
Clerk of the Superior Court

APR 0 3 2008

By: D. LIM, Deputy

5  Attorney for Plaintiffs
FRANZISKA I. COLLIER and
6  KEA JADE COLLIER, a Minor

7

8              SUPERIOR COURT OF CALIFORNIA

9                 COUNTY OF SAN DIEGO

10

11  FRANZISKA I. COLLIER, individually,)   CASE NO: 37-2007-
and as Administrator of the Estate )   00075145-CU-MM-CTL
12  of Edgar T. Collier, Deceased;    )
KEA JADE COLLIER, a Minor, by her  )   **SECOND AMENDED**
13  Guardian Ad Litem MICHAEL HYDE,   )   **COMPLAINT FOR DAMAGES:**
                                     )   MEDICAL NEGLIGENCE/
14                                    )   WRONGFUL DEATH; BREACH
                                     )   OF FIDUCIARY DUTY;
15            Plaintiffs,            )   VIOLATION OF STATUTE;
      v.                             )   BREACH OF CONTRACT;
16                                    )   BREACH OF COVENANT OF
PARADISE HILLS CONVALESCENT         )   GOOD FAITH AND FAIR
17  CENTER, a business entity,       )   DEALING; NEGLIGENT
form unknown; DR. GAYNSKI;           )   HIRING, TRAINING, AND
18  DR. C. ARAMBULO; KAISER          )   SUPERVISION; INTENTIONAL
FOUNDATION HOSPITALS; SOUTHERN       )   INFLICTION OF EMOTIONAL
19  CALIFORNIA PERMANENTE MEDICAL    )   DISTRESS; NEGLIGENT
GROUP; KAISER FOUNDATION HEALTH      )   INFLICTION OF EMOTIONAL
20  PLAN, INC.; and DOES 1 through   )   DISTRESS
100, inclusive,                      )
21                                    )
            Defendants.             )   [W&I Code §15610, et seq.]
22  _____)      (Elder Abuse)

23       Plaintiffs FRANZISKA I. COLLIER, individually, and as

24  Administrator of the Estate of Edgar T. Collier, Deceased, and

25  KEA JADE COLLIER, a Minor by her Guardian Ad Litem MICHAEL

26  HYDE, allege as follows:

27                    GENERAL ALLEGATIONS

28       1.  Plaintiff FRANZISKA I. COLLIER, at all times

---
                          1
                  Complaint for Damages

1  mentioned herein is, and was, the wife of Decedent Edgar T.

2  Collier, a resident of the City and County of San Diego, State

3  of California, Parent of KEA JADE COLLIER, a Minor, and

4  Administrator of the Estate of EDGAR T. COLLIER, Deceased.

5  **MICHAEL HYDE is guardian ad litem of KEA JADE COLLIER, a Minor**.

6       2.   At all relevant times mentioned herein, Decedent

7  Edgar T. Collier was over the age of 65 and at the time of his

8  death, was 66 years of age.

9       3.   At all times herein mentioned, Defendant PARADISE

10 HILLS CONVALESCENT CENTER, ("CENTER") a business entity, form

11 unknown, was and is in the business of providing long-term care

12 as a 24-hour health facility as defined in section 1250(c) of

13 the Health & Safety Code, and was at all times mentioned doing

14 business in the City and County of San Diego, in the State of

15 California.

16       4.   Upon information and belief, and at all times

17 mentioned, Defendants CENTER and DOES 1 through 100, were

18 licensed and unlicensed health care providers, rendering health

19 care as a skilled nursing facility, and in the capacities of

20 Director of Nursing, Medical Director, Administrator, or

21 otherwise, to patients at CENTER, including Edgar T. Collier,

22 deceased.

23       5.   At all times herein mentioned, Defendants KAISER

24 FOUNDATION HOSPITALS, SOUTHERN CALIFORNIA PERMANENTE MEDICAL

25 GROUP, and KAISER FOUNDATION HEALTH PLAN, INC., ("KAISER") were

26 inter-related health care providers licensed by the State of

27 California to provide health care, and during all relevant

28

Complaint for Damages

1    times mentioned herein were so engaged in San Diego,

2    California.

3        6.    At all times mentioned, Defendants KAISER and DOES 1

4    through 100, were licensed and unlicensed health care providers

5    rendering health care as a skilled hospital facility, and in

6    the capacities of Medical Director, Administrator, or

7    otherwise, to patients at CENTER, including Edgar T. Collier,

8    deceased.

9        7.    At all times herein mentioned, Defendant GAYNSKI,

10   first name unknown, was a physician licensed by the State of

11   California to practice medicine and was engaged in the practice

12   of medicine in San Diego, California.

13       8.    At all times herein mentioned, Defendant C.

14   ARAMBULO, first name unknown, was a physician licensed by the

15   State of California to practice medicine and was engaged in the

16   practice of medicine in San Diego, California.

17       9.    Plaintiffs are ignorant of the true names and

18   capacities of Defendants sued herein as DOES 1 through 100,

19   inclusive, and therefore sue those Defendants by these

20   fictitious names.  Plaintiffs will amend this complaint to

21   allege their true names and capacities when ascertained.

22       10.   Plaintiffs are informed and believe, and thereon

23   allege, that each of the Defendants fictitiously named is

24   responsible in some manner for the acts hereinafter alleged,

25   and that Plaintiffs' damages, as set forth herein, were

26   proximately caused by the acts of these Defendants, and each of

27   them, as set forth herein.

28

1    11.   Plaintiffs further allege, on information and

2   belief, that at all times herein mentioned, DOES 1 through 100,

3   inclusive, were the agents and employees of the named

4   Defendants, and each of them, and in doing the things herein-

5   after mentioned were acting within the scope of their authority

6   as such agents and employees and with the permission and

7   consent of their respective principals and employers.

8    12.   On or about July 15, 2006, Edgar T. Collier became

9   a resident patient of CENTER and remained at that facility

10   through and including July 20, 2006, and at all times relevant,

11   was in the care and custody of Defendants.  Edgar T. Collier

12   was 66 at his death on July 20, 2006, and was 65 or older at

13   all times relevant to this action.  Accordingly, under the

14   provisions of Welfare & Institutions Code section 15610.27,

15   while a patient at CENTER, he was at all times mentioned an

16   "elder."  At all times herein mentioned, Plaintiff FRANZISKA

17   observed the conditions under which Decedent suffered, and paid

18   money to Defendants for his care and treatment.

19                        FIRST CAUSE OF ACTION

20   (Medical Negligence/Wrongful Death - Against CENTER & ARAMBULO)

21    13.   Plaintiffs repeat the allegations contained in

22   paragraphs 1 through 12 of this Complaint and incorporate them

23   herein as if set forth in full.

24    14.   Beginning on July 15, 2006 and until July 20, 2006,

25   Decedent was a resident patient of CENTER.  Defendants CENTER,

26   DR. ARAMBULO, and DOES 1 through 100, and each of them, under-

27   took the care, treatment and examination of the Decedent, and

28

1 || were entrusted with his care, maintenance, hygiene, nutrition,

2 || health and overall well being.

3        15.   At the time and place aforesaid, these Defendants

4 so negligently, carelessly, recklessly, and unlawfully super-

5 vised, treated, handled, and cared for Decedent as to directly

6 and proximately cause him to develop serious sores over his

7 body and other serious injuries.  As a direct result of said

8 injuries, Edgar T. Collier died on July 20, 2006.

9        16.   At all times mentioned herein and prior thereto,

10 CENTER and DOES 1-100, were negligent in failing to ascertain

11 the competence of their medical staff, including but not

12 limited to, ARAMBULO, through careful selection and review.

13 Said Defendants were also negligent in failing to carefully

14 evaluate the quality of the medical treatment being rendered on

15 their premises and/or by their contracting and/or employed

16 physicians and medical or physician groups prior to July 15,

17 2006 and thereafter. Such negligence created an unreasonable

18 risk of harm to patients, including Edgar T. Collier, thereby

19 causing or contributing to his death on July 20, 2006.

20        17.   At said time and place, as aforesaid, Defendants,

21 and each of them, so negligently, carelessly, recklessly,

22 wantonly, and unlawfully treated, provided medical care,

23 information, monitoring, examination, surgery, diagnosis and

24 other medical services, so as to directly and proximately cause

25 death to Decedent.  Defendants and each of them specifically

26 failed to diagnose Decedent's condition as a staph infection

27 and informed Plaintiff FRANZISKA that his continuing diarrhea

28

1  was simply a side effect of the antibiotics he had been given.

2  Their failure to diagnose and properly treat the staph

3  infection resulted in Edgar Collier's death.

4      18.  As a direct and proximate result of the conduct of

5  the Defendants, and each of them, and of the death of Edgar T.

6  Collier, FRANZISKA and her minor child KEA JADE COLLIER have

7  been deprived of the love, companionship, comfort, affection,

8  society, solace and moral support of said Decedent and have

9  been caused the loss of future services, earnings and

10 protection of said husband and father, to their great loss and

11 damage in an amount to be shown according to proof.

12     19.  As a direct and proximate result of the conduct of

13 CENTER, ARAMBULO and DOES 1-100 and each of them, and the

14 resulting death, as aforesaid, Plaintiff FRANZISKA I. COLLIER,

15 has been compelled to incur funeral/burial expenses as well as

16 other special damages, all to her damage, in an amount to be

17 shown according to proof.

18                  SECOND CAUSE OF ACTION

19    (Breach of Fiduciary Duty - Against All Defendants)

20     20.  Plaintiffs repeat the allegations contained in

21 paragraphs 1 through 19 of this Complaint and incorporate them

22 herein as if set forth in full.

23     21.  In contracting with Defendants CENTER, KAISER,

24 GAYNSKI, ARAMBULO and DOES 1 through 100, Defendants had a

25 fiduciary duty to Decedent to ensure that he received reason-

26 able, necessary and competent health care.

27     22.  Plaintiffs are informed and believe, and thereon

28

1  allege, that Defendants and DOES 1-100, and each of them,

2  breached the above-mentioned fiduciary duty in that they made

3  decisions regarding Decedent's medical care and treatment

4  because of their own economic interests and contrary to his

5  best interests, in that Decedent was denied reasonable,

6  necessary and appropriate services, thereby proximately and

7  directly causing the injuries and damages set forth below.

8      23.  As a direct and proximate result of the negligence,

9  carelessness, recklessness, wantonness, and unlawfulness of the

10  Defendants and each of them, and the resulting death, injuries

11  and damages, as aforesaid, Decedent sustained severe and

12  serious injury to his person, all to his damage in a sum within

13  the jurisdiction of this court and to be shown according to

14  proof.

15      24.  As a direct and proximate result of the conduct of

16  the Defendants, and each of them, and of the death of Edgar T.

17  Collier, Plaintiffs have been deprived of the love, companion-

18  ship, comfort, affection, society, solace and moral support of

19  said decedent and have been caused the loss of future services,

20  earnings and protection of said husband and father, to their

21  great loss and damage in an amount to be shown according to

22  proof.

23      25.  As a direct and proximate result of the breach of

24  contract by Defendants, and each of them, and the resulting

25  death, as aforesaid, FRANZISKA has been compelled to incur

26  funeral/burial expenses as well as other special damages, all

27  to the damage of the Plaintiffs, in an amount to be shown

28

1  according to proof.

2                    THIRD CAUSE OF ACTION

3        (Violation of Statute - Against All Defendants)

4        26.  Plaintiffs repeat the allegations contained in

5  paragraphs 1 through 25 of this Complaint and incorporate them

6  herein as if set forth in full.

7        27.  Decedent had been a patient of KAISER and under the

8  care and treatment of GAYNSKI from July 4, 2006 through July

9  15th, when he was transferred to CENTER for nursing and

10 convalescent services.

11       28. Since Collier was a resident and patient of CENTER,

12 ARAMBULO, and the DOE Defendants, and prior to July 15, 2006

13 had been under the care, supervision, and treatment of KAISER,

14 GAYNSKI, and the DOE Defendants, each of these Defendants had a

15 duty under federal and state regulations (which were designed

16 for the protection and benefit of resident patients like

17 Collier) to provide for his care, comfort and safety.  Without

18 limiting the generality of the foregoing, Defendants had a duty

19 to, among other things:

20      a. follow, implement and adhere to all physician orders;

21      b. monitor and record Collier's condition, and to report

22 meaningful changes therein to the attending physician;

23      c. establish and implement a patient care plan for Collier

24 based upon and including without limitation an ongoing process

25 of identifying his care needs;

26      d. examine and diagnose Collier's medical condition;

27      e. accord to Collier an individual's dignity and respect,

28

                            8
                  Complaint for Damages

1  and not to subject him to abuse or neglect;

2      f. properly and accurately administer medication;

3      g. maintain nursing and other staffing at levels adequate

4  to meet his needs;

5      h. provide Collier with good nutrition and with necessary

6  fluids for hydration;

7      i. answer Collier's requests for assistance;

8      j. provide competent nursing and other staffing who

9  understood and spoke English; and

10     k. perform these services and administer tests in a timely

11  manner.

12     29. During the period of his residence at CENTER, and

13  under his care and treatment by KAISER and its medical

14  personnel, and up to and including his death on July 20, 2006,

15  Defendants, and each of them, breached their duties to Collier.

16  These breaches were intentional and in reckless disregard for

17  the probability that severe injury would result from their

18  failure to carefully adhere to their duties. Defendants knew or

19  should have known that there was a probability that injury

20  would result from the failure to adhere to their duties. In

21  particular, and without limiting the generality of the

22  foregoing, Defendants, and each of them, intentionally (and

23  with deliberate indifference to Collier's health and safety)

24  failed to provide the services aforementioned in paragraph 28.

25  Defendants' conduct, as aforesaid, constitutes physical abuse

26  as defined in Welfare and Institutions Code section 15610.63(d)

27  and (f), and/or neglect as defined in Welfare and Institutions

28

1 | Code section 15610.57.

2 |     30. In doing the things herein alleged, all of the

3 | Defendants and DOES 1 through 100, and each of them, acted

4 | recklessly and were grossly negligent.

5 |     31. By reason of the foregoing, Defendants violated

6 | California statutes, including but not limited to Welfare and

7 | Institutions Code sections 15610.57 and 15610.63(d) and (f).

8 |     32.  As a direct and proximate result of the Defendants'

9 | violation of statute, as aforesaid, Collier sustained severe

10 | and serious injury to his person which resulted in death,

11 | including, but not limited to, severe emotional distress, all

12 | to Plaintiffs' and Collier's damage in a sum within the

13 | jurisdiction of this court and to be shown according to proof.

14 |     33.  By reason of the foregoing, FRANZISKA and Collier

15 | were required to employ the services of hospitals, physicians,

16 | surgeons, nurses and other professional services, and were

17 | compelled to incur expenses for ambulance service, medicines,

18 | X-rays, and other medical supplies and services.

19 | FOURTH CAUSE OF ACTION

20 | (Breach of Contract - Against All Defendants)

21 |     34.  Plaintiffs incorporate by reference each and every

22 | allegation contained in paragraphs 1 through 33, inclusive, as

23 | though fully set forth herein.

24 |     35.  Plaintiffs are informed and believe, and thereon

25 | allege, through all relevant times herein mentioned, there

26 | existed written agreements for the provision of health care

27 | services between Defendants and DOES 1-100. Said agreement

28 |

Complaint for Damages

1  provided, among other things, that Defendants were obligated to
2  make decisions concerning the nature and extent of Collier's
3  medical care and treatment.  Said contract further provided
4  that Defendants, and each of them, were to ensure that Collier
5  was provided with reasonable, necessary and appropriate medical
6  care by Defendants and DOES 1 through 100 in a timely manner.

7        36.  Plaintiffs are informed and believe that at all
8  times herein mentioned, FRANZISKA and Decedent acted and dealt
9  with Defendants in good faith and performed all of their
10  obligations under the subject agreement.

11        37. FRANZISKA is entitled to restitution of all funds
12  paid to Defendants on Decedent's behalf.

13        38.  Plaintiffs are entitled to attorney fees under the
14  provisions of Code of Civil Procedure section 1021.5 and
15  Welfare & Institutions Code section 15657(a).

16                    FIFTH CAUSE OF ACTION

17    (Breach of Covenant of Good Faith and Fair Dealing -
18                    Against All Defendants)

19        39.  Plaintiffs incorporate by reference each and every
20  allegation contained in paragraphs 1 through 38, inclusive, as
21  though fully set forth herein.

22        40.  Pursuant to the agreement referenced above, there
23  existed at relevant times herein mentioned a Covenant of Good
24  Faith and Fair Dealing between Plaintiffs, Decedent, and all
25  Defendants, as Plaintiffs were intended beneficiaries of the
26  contracts with Defendants, and were third-party beneficiaries
27  of the contracts between those parties.

28        41.  Plaintiffs are informed and believe, and thereon

---
                           11
                  Complaint for Damages

1  allege, that Defendants, and each of them, breached the
2  covenant of good faith and fair dealing in that they made
3  decisions regarding Collier's medical care and treatment
4  because of their own economic interests and contrary to his
5  best interests, in that Decedent was denied reasonable,
6  necessary and appropriate services, thereby proximately and
7  directly causing his death, as well as the injuries and damages
8  set forth herein.

9      42.  As a direct and proximate result of the breach of
10  the covenant of good faith and fair dealing of the Defendants
11  and each of them, Collier sustained severe and serious injury
12  resulting in his death, all to Plaintiffs' damage in an amount
13  within the jurisdiction of this court and to be shown according
14  to proof.

15      43.  As a direct and proximate result of the conduct of
16  the Defendants, and each of them, and of the death of Collier,
17  Plaintiffs have been deprived of the love, companionship,
18  comfort, affection, society, solace and moral support of said
19  decedent and the loss of his future services, earnings and
20  protection, to their great loss and damage in an amount to be
21  shown according to proof.

22                    SIXTH CAUSE OF ACTION
23  (Negligent Hiring, Training, and Supervision of Health Care
24                  Personnel - Against CENTER)

25      44.  Plaintiffs incorporate by reference each and every
26  allegation contained in paragraphs 1 through 43, inclusive, as
27  though fully set forth herein.

28      45.  Defendants CENTER and DOES 1-100 have a duty of due

1  care in the hiring, training, and supervision of its employees.
2  Defendants have a further duty of due care to investigate the
3  background of their employees, especially in light of the
4  particular risk or hazard that the breach of that duty poses to
5  elders within Defendants' care. Defendants breached their duty
6  in that, among other things:

7        a. they knew or had reason to know that various DOES 1-100
8  were incompetent and unfit employees;

9        b. they knew or had reason to know that various DOES 1-
10  100, because of their qualities, were likely to harm patients
11  under their care;

12        c. they knew or had reason to know that various DOES 1-
13  100, were incompetent as employees because of their reckless or
14  vicious dispositions;

15        d. they failed to exercise due care in the interviewing,
16  selection, training and supervision of various DOES 1-100, such
17  that the employment necessarily brought them in contact with
18  patients, including Collier, in the performance of their
19  duties;

20        e. they knew or had reason to know that various DOES 1-100
21  had a history of or propensity to abuse elders and would in
22  fact engage in such abuse if brought in contact with elderly
23  patients.  Despite the foregoing, Defendants CENTER and DOES 1-
24  100 negligently, recklessly and carelessly permitted unquali-
25  fied health care personnel, to have contact with Collier in the
26  course of their employment, including personnel who did not
27  comprehend or speak English.
28

1    46.   As a direct and proximate result of the acts of
2 Defendants, as aforesaid, Collier sustained severe and serious
3 injury to his person, and Plaintiffs sustained severe emotional
4 distress and other damages, all to their respective damage in
5 an amount within the jurisdiction of this court and to be shown
6 according to proof.

7    47.   By reason of the foregoing, FRANZISKA and Collier
8 have been required to employ the services of hospitals,
9 physicians, surgeons, nurses and other professional services,
10 and were compelled to incur expenses for ambulance service,
11 medicines, X-rays, and other medical supplies and services.

12                    SEVENTH CAUSE OF ACTION

13          (Intentional Infliction of Emotional Distress -
14                    Against All Defendants)

15   48.   Plaintiffs hereby incorporate by reference
16 paragraphs 1 through 47 of this Complaint as though fully set
17 forth herein.

18   49.   Defendants' conduct was intentional and malicious
19 and done for the purpose of causing Plaintiffs and Collier to
20 suffer mental anguish, and emotional and physical distress.
21 Defendants' conduct in confirming and ratifying that conduct
22 was done with knowledge that their emotional and physical
23 distress would thereby increase, and was done with wanton and
24 reckless disregard of the consequences to Plaintiffs and
25 Collier.

26   50.   As the proximate result of the aforementioned acts,
27 Plaintiffs and Collier suffered severe emotional and mental
28 distress, including but not limited to frustration, depression,

1  nervousness, and anxiety and have thereby incurred general and

2  exemplary damages in an amount to be determined at trial.

3                      EIGHTH CAUSE OF ACTION

4       (Negligent Infliction of Emotional Distress -
                    Against All Defendants)
5

6       51.  Plaintiffs hereby incorporate by reference

7  paragraphs 1 through 50 of this Complaint as though fully set

8  forth herein.

9       52.  Defendants, and each of them, knew that their acts

10  and those of their employees would cause Plaintiffs and Collier

11  severe emotional distress, and had the duty of exercising

12  reasonable care so that their acts would not cause them such

13  distress.

14      53.  In violation of said duty, Defendants, and each of

15  them, failed to exercise reasonable care, and as a proximate

16  result of their breach of duty as aforementioned, caused

17  outrageous and severe emotional distress to Plaintiffs and

18  Collier.

19      54.  Wherefore, Plaintiffs demand compensatory damages

20  from Defendants and each of them for damages for emotional

21  distress on behalf of Plaintiffs in an amount to be determined

22  at trial.

23      WHEREFORE, Plaintiffs demand judgment against Defendants,

24  and each of them, as follows:

25  As to the First Cause of Action:

26      1.  General damages according to proof;

27      2.  Sums incurred and to be incurred for services of

28  hospitals, physicians, surgeons, nurses and other professional

1  services, ambulance service, x-rays and other medical supplies
2  and services;

3      3.  Special damages, according to proof, not limited to
4  medical, hospital, and related expenses;

5      4.  Funeral and burial expenses;

6      5.  Damages for loss of love, companionship, comfort,
7  affection, society, solace and moral support;

8      6.  Loss of income incurred and to be incurred according
9  to proof;

10     7.  Interest provided by law including, but not limited
11 to, California *Civil Code*, Section 3291;

12     8.  Costs of suit; and

13     9.  Such other and further relief as the court deems just
14 and proper.

15 As to the Second Cause of Action:

16     1.  General damages according to proof;

17     2.  Sums incurred and to be incurred for services of
18 hospitals, physicians, surgeons, nurses and other professional
19 services, ambulance service, x-rays and other medical supplies
20 and services;

21     3. Funeral and burial expenses;

22     4. Loss of income incurred and to be incurred according to
23 proof;

24     5. Interest provided by law including, but not limited to,
25 California *Civil Code*, Section 3291;

26     6. Costs of suit; and

27     7. Such other and further relief as the court deems just

28

1  and proper.

2  As to the Third Cause of Action:

3     1.  General damages in an amount according to proof;

4     2.  Sums incurred for services of hospitals, physicians,

5  surgeons, nurses and other medical supplies and services;

6     3.  Treble damages pursuant to Civil Code $3345;

7     4.  Interest provided by law including, but not limited

8  to, California Civil Code § 3291;

9     5.  Damages equal to the profit realized from Defendants'

10  conduct, as alleged, and for prejudgment interest thereon

11  according to law;

12     6.  Attorney fees under Welfare & Institutions Code

13  §15657(a);

14     7.  Costs of suit; and

15     8.  Such further relief as the Court deems just and

16  proper.

17  As to the Fourth Cause of Action:

18     1.  General damages according to proof;

19     2.  Sums incurred and to be incurred for services to

20  hospitals, physicians, surgeons, nurses and other professional

21  services, ambulance service, x-rays and other medical supplies

22  and services;

23     3. Funeral and burial expenses;

24     4. Loss of income incurred and to be incurred according to

25  proof;

26     5. For interest provided by law including, but not limited

27  to, California Civil Code, Section 3291;

28

---

17

Complaint for Damages

1    6. Costs of suit; and,

2    7. Such further relief as the Court deems just and

3  proper.

4  <u>As to the Fifth Cause of Action:</u>

5    1.  General damages in an amount according to proof;

6    2.  Sums incurred and to be incurred for services of

7  hospitals, physicians, surgeons, nurses and other professional

8  services, ambulance service, x-rays and other medical supplies

9  and services;

10    3. Funeral and burial expenses;

11    4. Damages for loss of love, companionship, comfort,

12  affection, society, solace and moral support;

13    5. Loss of income incurred and to be incurred according to

14  proof;

15    6. Interest provided by law including, but not limited to,

16  California *Civil Code*, Section 3291;

17    7. Costs of suit; and,

18    8. For such other and further relief as the court deems

19  just and proper.

20  <u>As to the Sixth Cause of Action:</u>

21    1. General damages in an amount according to proof;

22    2. Sums incurred and to be incurred for services of

23  hospitals, physicians, surgeons, nurses and other professional

24  services, ambulance service, x-rays and other medical supplies

25  and services;

26    3.  Interest provided by law including, but not limited

27  to, <u>California Civil Code</u> § 3291;

28

1      4. Costs of suit; and,

2      5. Such further relief as the Court deems just and

3 proper.

4 <u>As to the Seventh Cause of Action:</u>

5      1.  General damages according to proof;

6      2.  Exemplary damages;

7      3.  Sums incurred and to be incurred for services of

8 hospitals, physicians, surgeons, nurses and other professional

9 services, ambulance service, x-rays and other medical supplies

10 and services;

11      4.  Interest provided by law including, but not limited

12 to, <u>California Civil Code</u> § 3291;

13      5.  Attorney fees under <u>Welfare & Institutions Code</u>

14 §15657(a);

15      6.  Costs of suit; and,

16      7.  Such further relief as the Court deems just and

17 proper.

18 <u>As to the Eighth Cause of Action:</u>

19      1.  General damages in an amount according to proof;

20      2.  Sums incurred and to be incurred for services of

21 hospitals, physicians, surgeons, nurses and other professional

22 services, ambulance service, x-rays and other medical supplies

23 and services;

24      3.  Interest provided by law including, but not limited

25 to, <u>California Civil Code</u> §3291;

26      4.  Costs of suit; and,

27 ///

28

---

1        5.   Such further relief as the Court deems just and

2   proper.

3   Dated: January 11, 2008

4                                   BERNARD R. LAFER
                                    Attorney for Plaintiffs
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Complaint for Damages

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

STREET ADDRESS:     330 West Broadway
MAILING ADDRESS:    330 West Broadway
CITY AND ZIP CODE:  San Diego, CA 92101
BRANCH NAME:        Central
TELEPHONE NUMBER:   (619) 685-6022

PLAINTIFF(S) / PETITIONER(S):    Franziska I. Collier, individually and as Administrator of the Estate of Edgar T. Collier, Deceased

DEFENDANT(S) / RESPONDENT(S): Paradise Hills Convalescent Center et.al.

FRANZISKA I. COLLIER, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF EDGAR T. COLLIER,

| **NOTICE OF CASE ASSIGNMENT** | CASE NUMBER: 37-2007-00075145-CU-MM-CTL |
|---|---|

Judge: Charles R. Hayes                          Department: C-66

**COMPLAINT/PETITION FILED:** 09/17/2007

### CASES ASSIGNED TO THE PROBATE DIVISION ARE NOT REQUIRED TO COMPLY WITH THE CIVIL REQUIREMENTS LISTED BELOW

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT).

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

**TIME STANDARDS:** The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time. General civil consists of all cases except: Small claims appeals, petitions, and unlawful detainers.

**COMPLAINTS:** Complaints must be served on all named defendants, and a CERTIFICATE OF SERVICE (SDSC CIV-345) filed within 60 days of filing. This is a mandatory document and may not be substituted by the filing of any other document.

**DEFENDANT'S APPEARANCE:** Defendant must generally appear within 30 days of service of the complaint. (Plaintiff may stipulate to no more than a 15 day extension which must be in writing and filed with the Court.)

**DEFAULT:** If the defendant has not generally appeared and no extension has been granted, the plaintiff must request default within 45 days of the filing of the Certificate of Service.

THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO LITIGATION, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. MEDIATION SERVICES ARE AVAILABLE UNDER THE DISPUTE RESOLUTION PROGRAMS ACT AND OTHER PROVIDERS. SEE ADR INFORMATION PACKET AND STIPULATION.

YOU MAY ALSO BE ORDERED TO PARTICIPATE IN ARBITRATION PURSUANT TO CCP 1141.10 AT THE CASE MANAGEMENT CONFERENCE. THE FEE FOR THESE SERVICES WILL BE PAID BY THE COURT IF ALL PARTIES HAVE APPEARED IN THE CASE AND THE COURT ORDERS THE CASE TO ARBITRATION PURSUANT TO CCP 1141.10. THE CASE MANAGEMENT CONFERENCE WILL BE CANCELLED IF YOU FILE FORM SDSC CIV-359 PRIOR TO THAT HEARING

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | FOR COURT USE ONLY |
|---|---|
| STREET ADDRESS: 330 West Broadway<br>MAILING ADDRESS: 330 West Broadway<br>CITY, STATE, & ZIP CODE: San Diego, CA 92101-3827<br>BRANCH NAME: Central | |

**PLAINTIFF(S):** Franziska I. Collier, individually and as Administrator of the Estate of Edgar T. Collier, Deceased

**DEFENDANT(S):** Paradise Hills Convalescent Center et.al.

**SHORT TITLE:** FRANZISKA I. COLLIER, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF EDGAR T. COLLIER, DECEASED VS. PARADI

| STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION PROCESS<br>(CRC 3.221) | CASE NUMBER:<br>37-2007-00075145-CU-MM-CTL |
|---|---|

Judge: Charles R. Hayes                                    Department: C-66

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution process. Selection of any of these options will not delay any case management time-lines.

☐ Court-Referred Mediation Program                ☐ Court-Ordered Nonbinding Arbitration

☐ Private Neutral Evaluation                      ☐ Court-Ordered Binding Arbitration (Stipulated)

☐ Private Mini-Trial                              ☐ Private Reference to General Referee

☐ Private Summary Jury Trial                      ☐ Private Reference to Judge

☐ Private Settlement Conference with Private Neutral   ☐ Private Binding Arbitration

☐ Other (specify): _____

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: (Name) _____

_____

_____

Alternate: (mediation & arbitration only) _____

Date: _____          Date: _____

_____          _____
Name of Plaintiff                            Name of Defendant

_____          _____
Signature                                    Signature

_____          _____
Name of Plaintiff's Attorney                 Name of Defendant's Attorney

_____          _____
Signature                                    Signature

(Attach another sheet if additional names are necessary). It is the duty of the parties to notify the court of any settlement pursuant to California Rules of Court, 3.1385. Upon notification of the settlement the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court and all un-served, non-appearing or actions by names parties are dismissed.

**IT IS SO ORDERED.**

Dated: 09/17/2007                          _____
                                            JUDGE OF THE SUPERIOR COURT

SDSC CIV-359 (Rev 01-07)        **STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION**        Page: 1

3

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

CASE NUMBER: 37-2007-00075145-CU-MM-CTL    CASE TITLE: Franziska I. Collier, individually and as Administrator of the E

## NOTICE TO LITIGANTS/ADR INFORMATION PACKAGE

You are required to serve a copy of this Notice to Litigants/ADR Information Package and a copy of the blank Stipulation to Alternative Dispute Resolution Process (received from the Civil Business Office at the time of filing) with a copy of the Summons and Complaint on all defendants in accordance with San Diego Superior Court Rule 2.1.5, Division II and CRC Rule 201.9.

## ADR POLICY

It is the policy of the San Diego Superior Court to strongly support the use of Alternative Dispute Resolution ("ADR") in all general civil cases. The court has long recognized the value of early case management intervention and the use of alternative dispute resolution options for amenable and eligible cases. The use of ADR will be discussed at all Case Management Conferences. It is the court's expectation that litigants will utilize some form of ADR – i.e. the court's mediation or arbitration programs or other available private ADR options as a mechanism for case settlement before trial

## ADR OPTIONS

1) **CIVIL MEDIATION PROGRAM:** The San Diego Superior Court Civil Mediation Program is designed to assist parties with the early resolution of their dispute. All general civil independent calendar cases, including construction defect, complex and eminent domain cases are eligible to participant in the program. Limited civil collection cases are not eligible at this time. San Diego Superior Court Local Rule 2.31, Division II addresses this program specifically. Mediation is a non- binding process in which a trained mediator 1) facilitates communication between disputants; and 2) assists parties in reaching a mutually acceptable resolution of all or part of their dispute. In this process, the mediator carefully explores not only the relevant evidence and law, but also the parties' underlying interests, needs and priorities. The mediator is not the decision-maker and will not resolve the dispute – the parties do. Mediation is a flexible, informal and confidential process that is less stressful than a formalized trial. It can also save time and money, allow for greater client participation and allow for more flexibility in creating a resolution.

**Assignment to Mediation, Cost and Timelines:** Parties may stipulate to mediation at any time up to the CMC or may stipulate to mediation at the CMC. Mediator fees and expenses are split equally by the parties, unless otherwise agreed. Mediators on the court's approved panel have agreed to the court's payment schedule for county-referred mediation: $150.00 per hour for each of the first two hours and their individual rate per hour thereafter. Parties may select any mediator, however, the court maintains a panel of court-approved mediators who have satisfied panel requirements and who must adhere to ethical standards. All court-approved mediator fees and other policies are listed in the Mediator Directory at each court location to assist parties with selection. **Discovery:** Parties do not need to conduct full discovery in the case before mediation is considered, utilized or referred. **Attendance at Mediation:** Trial counsel, parties and all persons with full authority to settle the case must personally attend the mediation, unless excused by the court for good cause.

2) **JUDICIAL ARBITRATION:** Judicial Arbitration is a binding or non-binding process where an arbitrator applies the law to the facts of the case and issues an award. The goal of judicial arbitration is to provide parties with an adjudication that is earlier, faster, less formal and less expensive than trial. The arbitrator's award may either become the judgment in the case if all parties accept or if no trial de novo is requested within the required time. Either party may reject the award and request a trial de novo before the assigned judge if the arbitration was non-binding. If a trial de novo is requested, the trial will usually be scheduled within a year of the filing date.

**Assignment to Arbitration, Cost and Timelines:** Parties may stipulate to binding or non-binding judicial arbitration or the judge may order the matter to arbitration at the case management conference, held approximately 150 days after filing, if a case is valued at under $50,000 and is "at issue". The court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience. In addition, if parties select an arbitrator from the court's panel, the court will pay the arbitrator's fees. Superior Court

**3) SETTLEMENT CONFERENCES:** The goal of a settlement conference is to assist the parties in their efforts to negotiate a settlement of all or part of the dispute. Parties may, at any time, request a settlement conference before the judge assigned to their case; request another assigned judge or a pro tem to act as settlement officer; or may privately utilize the services of a retired judge. The court may also order a case to a mandatory settlement conference prior to trial before the court's assigned Settlement Conference judge.

**4) OTHER VOLUNTARY ADR:** Parties may voluntarily stipulate to private ADR options outside the court system including private binding arbitration, private early neutral evaluation or private judging at any time by completing the "Stipulation to Alternative Dispute Resolution Process" which is included in this ADR package. Parties may also utilize mediation services offered by programs that are partially funded by the county's Dispute Resolution Programs Act. These services are available at no cost or on a sliding scale based on need. For a list of approved DRPA providers, please contact the County's DRPA program office at (619) 238-2400.

**ADDITIONAL ADR INFORMATION:** For more information about the Civil Mediation Program, please contact the Civil Mediation Department at (619) 515-8908. For more information about the Judicial Arbitration Program, please contact the Arbitration Office at (619) 531-3818. For more information about Settlement Conferences, please contact the Independent Calendar department to which your case is assigned. Please note that staff can only discuss ADR options and cannot give legal advice.

2nd AMENDED

# SUMMONS
## (CITACION JUDICIAL)

**SUM-100**

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
PARADISE HILLS CONVALESCENT CENTER, a business
entity, form unknown; DR. GAYNSKI; DR. C. ARAMBULO;
KAISER FOUNDATION HOSPITALS; SOUTHERN CALIFORNIA
PERMANENTE MEDICAL GROUP; KAISER FOUNDATION HEALTH
PLAN, INC.; and DOES 1 through 100, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
FRANZISKA I. COLLIER, individually, and as
Administrator of the Estate of EDGAR T. COLLIER,
Deceased; KEA JADE COLLIER, a Minor, by her Guardian
Ad Litem MICHAEL HYDE

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

FILED
CIVIL BUSINESS OFFICE 19

08 APR -3 AM 9:42

CLERK SUPERIOR COURT
SAN DIEGO COUNTY, CA

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* | CASE NUMBER: *(Número del Caso):* 37-2007-00075145-CU-MM-CT |
|---|---|

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN DIEGO
330 West Broadway
San Diego, CA 92101
Central Division

RECEIVED
MARSHAL'S DIVISION
PASADENA
2008 MAY -2 34

FILED

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
BERNARD R. LAFER, ESQ. #122645          619-298-1969     619-298-7784
7801 Mission Center Court
Suite 430
San Diego, CA 92108

| DATE: **APR 0 3 2008** *(Fecha)* | Clerk, by **B. Orihuela** *(Secretario)* , Deputy *(Adjunto)* |
|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

[SEAL]

Accepted on behalf
of SCPMG by M
PAUL DEXTER
date 5/13/08
time 1:22 p.m.

3. ☒ on behalf of *(specify):* Southern California Permanent Med Group
   under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☒ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☒ by personal delivery on *(date):* 5/13/08

| Form Adopted for Mandatory Use Judicial Council of California SUM-100 [Rev. January 1, 2004] | SUMMONS | Legal Solutions Plus | Code of Civil Procedure §§ 412.20, 465 |
|---|---|---|---|

Page 1 of 1

2516

1 | BERNARD R. LAFER, ESQ. SBN 122645
2 | 7801 Mission Center Court
   | Suite 430
   | San Diego, CA  92108
3 | Tel: (619) 298-1969
   | Fax: (619) 298-7784
4 |

F I L E D
Clerk of the Superior Court

APR 0 3 2008

By: D. LIM, Deputy

5 | Attorney for Plaintiffs
   | FRANZISKA I. COLLIER and
6 | KEA JADE COLLIER, a Minor

7 |

8 |              SUPERIOR COURT OF CALIFORNIA

9 |                  COUNTY OF SAN DIEGO

10 |

| | |
|---|---|
| FRANZISKA I. COLLIER, individually, and as Administrator of the Estate of Edgar T. Collier, Deceased; KEA JADE COLLIER, a Minor, by her Guardian Ad Litem MICHAEL HYDE, | CASE NO: 37-2007-00075145-CU-MM-CTL **SECOND AMENDED** COMPLAINT FOR DAMAGES: MEDICAL NEGLIGENCE/ |
| Plaintiffs, | WRONGFUL DEATH; BREACH OF FIDUCIARY DUTY; VIOLATION OF STATUTE; |
| v. | BREACH OF CONTRACT; |
| PARADISE HILLS CONVALESCENT CENTER, a business entity, form unknown; DR. GAYNSKI; DR. C. ARAMBULO; KAISER FOUNDATION HOSPITALS; SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP; KAISER FOUNDATION HEALTH PLAN, INC.; and DOES 1 through 100, inclusive, | BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENT HIRING, TRAINING, AND SUPERVISION; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS |
| Defendants. | [W&I Code §15610, et seq.] (Elder Abuse) |

23 |      Plaintiffs FRANZISKA I. COLLIER, individually, and as

24 | Administrator of the Estate of Edgar T. Collier, Deceased, and

25 | KEA JADE COLLIER, a Minor by her Guardian Ad Litem MICHAEL

26 | HYDE, allege as follows:

27 |                  GENERAL ALLEGATIONS

28 |      1.  Plaintiff FRANZISKA I. COLLIER, at all times

---

1

Complaint for Damages

1   mentioned herein is, and was, the wife of Decedent Edgar T.

2   Collier, a resident of the City and County of San Diego, State

3   of California, Parent of KEA JADE COLLIER, a Minor, and

4   Administrator of the Estate of EDGAR T. COLLIER, Deceased.

5   **MICHAEL HYDE is guardian ad litem of KEA JADE COLLIER, a Minor.**

6       2.  At all relevant times mentioned herein, Decedent

7   Edgar T. Collier was over the age of 65 and at the time of his

8   death, was 66 years of age.

9       3.  At all times herein mentioned, Defendant PARADISE

10  HILLS CONVALESCENT CENTER, ("CENTER") a business entity, form

11  unknown, was and is in the business of providing long-term care

12  as a 24-hour health facility as defined in section 1250(c) of

13  the <u>Health & Safety Code</u>, and was at all times mentioned doing

14  business in the City and County of San Diego, in the State of

15  California.

16      4.  Upon information and belief, and at all times

17  mentioned, Defendants CENTER and DOES 1 through 100, were

18  licensed and unlicensed health care providers, rendering health

19  care as a skilled nursing facility, and in the capacities of

20  Director of Nursing, Medical Director, Administrator, or

21  otherwise, to patients at CENTER, including Edgar T. Collier,

22  deceased.

23      5.  At all times herein mentioned, Defendants KAISER

24  FOUNDATION HOSPITALS, SOUTHERN CALIFORNIA PERMANENTE MEDICAL

25  GROUP, and KAISER FOUNDATION HEALTH PLAN, INC., ("KAISER") were

26  inter-related health care providers licensed by the State of

27  California to provide health care, and during all relevant

28

2

Complaint for Damages

1    times mentioned herein were so engaged in San Diego,

2    California.

3        6.  At all times mentioned, Defendants KAISER and DOES 1

4    through 100, were licensed and unlicensed health care providers

5    rendering health care as a skilled hospital facility, and in

6    the capacities of Medical Director, Administrator, or

7    otherwise, to patients at CENTER, including Edgar T. Collier,

8    deceased.

9        7.  At all times herein mentioned, Defendant GAYNSKI,

10   first name unknown, was a physician licensed by the State of

11   California to practice medicine and was engaged in the practice

12   of medicine in San Diego, California.

13       8.  At all times herein mentioned, Defendant C.

14   ARAMBULO, first name unknown, was a physician licensed by the

15   State of California to practice medicine and was engaged in the

16   practice of medicine in San Diego, California.

17       9.  Plaintiffs are ignorant of the true names and

18   capacities of Defendants sued herein as DOES 1 through 100,

19   inclusive, and therefore sue those Defendants by these

20   fictitious names.  Plaintiffs will amend this complaint to

21   allege their true names and capacities when ascertained.

22       10.  Plaintiffs are informed and believe, and thereon

23   allege, that each of the Defendants fictitiously named is

24   responsible in some manner for the acts hereinafter alleged,

25   and that Plaintiffs' damages, as set forth herein, were

26   proximately caused by the acts of these Defendants, and each of

27   them, as set forth herein.

28

1      11.  Plaintiffs further allege, on information and

2   belief, that at all times herein mentioned, DOES 1 through 100,

3   inclusive, were the agents and employees of the named

4   Defendants, and each of them, and in doing the things herein-

5   after mentioned were acting within the scope of their authority

6   as such agents and employees and with the permission and

7   consent of their respective principals and employers.

8      12.  On or about July 15, 2006, Edgar T. Collier became

9   a resident patient of CENTER and remained at that facility

10  through and including July 20, 2006, and at all times relevant,

11  was in the care and custody of Defendants.  Edgar T. Collier

12  was 66 at his death on July 20, 2006, and was 65 or older at

13  all times relevant to this action.  Accordingly, under the

14  provisions of <u>Welfare & Institutions Code</u> section 15610.27,

15  while a patient at CENTER, he was at all times mentioned an

16  "elder."  At all times herein mentioned, Plaintiff FRANZISKA

17  observed the conditions under which Decedent suffered, and paid

18  money to Defendants for his care and treatment.

19                     FIRST CAUSE OF ACTION

20  <u>(Medical Negligence/Wrongful Death - Against CENTER & ARAMBULO)</u>

21     13.  Plaintiffs repeat the allegations contained in

22  paragraphs 1 through 12 of this Complaint and incorporate them

23  herein as if set forth in full.

24     14.  Beginning on July 15, 2006 and until July 20, 2006,

25  Decedent was a resident patient of CENTER.  Defendants CENTER,

26  DR. ARAMBULO, and DOES 1 through 100, and each of them, under-

27  took the care, treatment and examination of the Decedent, and

28

1  were entrusted with his care, maintenance, hygiene, nutrition,
2  health and overall well being.

3      15.  At the time and place aforesaid, these Defendants
4  so negligently, carelessly, recklessly, and unlawfully super-
5  vised, treated, handled, and cared for Decedent as to directly
6  and proximately cause him to develop serious sores over his
7  body and other serious injuries.  As a direct result of said
8  injuries, Edgar T. Collier died on July 20, 2006.

9      16.  At all times mentioned herein and prior thereto,
10  CENTER and DOES 1-100, were negligent in failing to ascertain
11  the competence of their medical staff, including but not
12  limited to, ARAMBULO, through careful selection and review.
13  Said Defendants were also negligent in failing to carefully
14  evaluate the quality of the medical treatment being rendered on
15  their premises and/or by their contracting and/or employed
16  physicians and medical or physician groups prior to July 15,
17  2006 and thereafter. Such negligence created an unreasonable
18  risk of harm to patients, including Edgar T. Collier, thereby
19  causing or contributing to his death on July 20, 2006.

20      17.  At said time and place, as aforesaid, Defendants,
21  and each of them, so negligently, carelessly, recklessly,
22  wantonly, and unlawfully treated, provided medical care,
23  information, monitoring, examination, surgery, diagnosis and
24  other medical services, so as to directly and proximately cause
25  death to Decedent.  Defendants and each of them specifically
26  failed to diagnose Decedent's condition as a staph infection
27  and informed Plaintiff FRANZISKA that his continuing diarrhea
28

Complaint for Damages

1    was simply a side effect of the antibiotics he had been given.

2    Their failure to diagnose and properly treat the staph

3    infection resulted in Edgar Collier's death.

4         18.   As a direct and proximate result of the conduct of

5    the Defendants, and each of them, and of the death of Edgar T.

6    Collier, FRANZISKA and her minor child KEA JADE COLLIER have

7    been deprived of the love, companionship, comfort, affection,

8    society, solace and moral support of said Decedent and have

9    been caused the loss of future services, earnings and

10   protection of said husband and father, to their great loss and

11   damage in an amount to be shown according to proof.

12        19.   As a direct and proximate result of the conduct of

13   CENTER, ARAMBULO and DOES 1-100 and each of them, and the

14   resulting death, as aforesaid, Plaintiff FRANZISKA I. COLLIER,

15   has been compelled to incur funeral/burial expenses as well as

16   other special damages, all to her damage, in an amount to be

17   shown according to proof.

18                      SECOND CAUSE OF ACTION

19        (Breach of Fiduciary Duty - Against All Defendants)

20        20.   Plaintiffs repeat the allegations contained in

21   paragraphs 1 through 19 of this Complaint and incorporate them

22   herein as if set forth in full.

23        21.   In contracting with Defendants CENTER, KAISER,

24   GAYNSKI, ARAMBULO and DOES 1 through 100, Defendants had a

25   fiduciary duty to Decedent to ensure that he received reason-

26   able, necessary and competent health care.

27        22.   Plaintiffs are informed and believe, and thereon

28

---

6

Complaint for Damages

1    allege, that Defendants and DOES 1-100, and each of them,

2    breached the above-mentioned fiduciary duty in that they made

3    decisions regarding Decedent's medical care and treatment

4    because of their own economic interests and contrary to his

5    best interests, in that Decedent was denied reasonable,

6    necessary and appropriate services, thereby proximately and

7    directly causing the injuries and damages set forth below.

8         23.  As a direct and proximate result of the negligence,

9    carelessness, recklessness, wantonness, and unlawfulness of the

10   Defendants and each of them, and the resulting death, injuries

11   and damages, as aforesaid, Decedent sustained severe and

12   serious injury to his person, all to his damage in a sum within

13   the jurisdiction of this court and to be shown according to

14   proof.

15        24.  As a direct and proximate result of the conduct of

16   the Defendants, and each of them, and of the death of Edgar T.

17   Collier, Plaintiffs have been deprived of the love, companion-

18   ship, comfort, affection, society, solace and moral support of

19   said decedent and have been caused the loss of future services,

20   earnings and protection of said husband and father, to their

21   great loss and damage in an amount to be shown according to

22   proof.

23        25.  As a direct and proximate result of the breach of

24   contract by Defendants, and each of them, and the resulting

25   death, as aforesaid, FRANZISKA has been compelled to incur

26   funeral/burial expenses as well as other special damages, all

27   to the damage of the Plaintiffs, in an amount to be shown

28

1  according to proof.

2                    THIRD CAUSE OF ACTION

3         (Violation of Statute - Against All Defendants)

4         26.  Plaintiffs repeat the allegations contained in

5  paragraphs 1 through 25 of this Complaint and incorporate them

6  herein as if set forth in full.

7         27.  Decedent had been a patient of KAISER and under the

8  care and treatment of GAYNSKI from July 4, 2006 through July

9  15th, when he was transferred to CENTER for nursing and

10  convalescent services.

11        28. Since Collier was a resident and patient of CENTER,

12  ARAMBULO, and the DOE Defendants, and prior to July 15, 2006

13  had been under the care, supervision, and treatment of KAISER,

14  GAYNSKI, and the DOE Defendants, each of these Defendants had a

15  duty under federal and state regulations (which were designed

16  for the protection and benefit of resident patients like

17  Collier) to provide for his care, comfort and safety.  Without

18  limiting the generality of the foregoing, Defendants had a duty

19  to, among other things:

20        a. follow, implement and adhere to all physician orders;

21        b. monitor and record Collier's condition, and to report

22  meaningful changes therein to the attending physician;

23        c. establish and implement a patient care plan for Collier

24  based upon and including without limitation an ongoing process

25  of identifying his care needs;

26        d. examine and diagnose Collier's medical condition;

27        e. accord to Collier an individual's dignity and respect,

28

1   and not to subject him to abuse or neglect;

2       f. properly and accurately administer medication;

3       g. maintain nursing and other staffing at levels adequate

4   to meet his needs;

5       h. provide Collier with good nutrition and with necessary

6   fluids for hydration;

7       i. answer Collier's requests for assistance;

8       j. provide competent nursing and other staffing who

9   understood and spoke English; and

10      k. perform these services and administer tests in a timely

11  manner.

12      29. During the period of his residence at CENTER, and

13  under his care and treatment by KAISER and its medical

14  personnel, and up to and including his death on July 20, 2006,

15  Defendants, and each of them, breached their duties to Collier.

16  These breaches were intentional and in reckless disregard for

17  the probability that severe injury would result from their

18  failure to carefully adhere to their duties. Defendants knew or

19  should have known that there was a probability that injury

20  would result from the failure to adhere to their duties. In

21  particular, and without limiting the generality of the

22  foregoing, Defendants, and each of them, intentionally (and

23  with deliberate indifference to Collier's health and safety)

24  failed to provide the services aforementioned in paragraph 28.

25  Defendants' conduct, as aforesaid, constitutes physical abuse

26  as defined in <u>Welfare and Institutions Code</u> section 15610.63(d)

27  and (f), and/or neglect as defined in <u>Welfare and Institutions</u>

28

1  Code section 15610.57.

2      30. In doing the things herein alleged, all of the

3  Defendants and DOES 1 through 100, and each of them, acted

4  recklessly and were grossly negligent.

5      31. By reason of the foregoing, Defendants violated

6  California statutes, including but not limited to Welfare and

7  Institutions Code sections 15610.57 and 15610.63(d) and (f).

8      32.  As a direct and proximate result of the Defendants'

9  violation of statute, as aforesaid, Collier sustained severe

10 and serious injury to his person which resulted in death,

11 including, but not limited to, severe emotional distress, all

12 to Plaintiffs' and Collier's damage in a sum within the

13 jurisdiction of this court and to be shown according to proof.

14     33.  By reason of the foregoing, FRANZISKA and Collier

15 were required to employ the services of hospitals, physicians,

16 surgeons, nurses and other professional services, and were

17 compelled to incur expenses for ambulance service, medicines,

18 X-rays, and other medical supplies and services.

19                    FOURTH CAUSE OF ACTION

20          (Breach of Contract - Against All Defendants)

21     34.  Plaintiffs incorporate by reference each and every

22 allegation contained in paragraphs 1 through 33, inclusive, as

23 though fully set forth herein.

24     35.  Plaintiffs are informed and believe, and thereon

25 allege, through all relevant times herein mentioned, there

26 existed written agreements for the provision of health care

27 services between Defendants and DOES 1-100. Said agreement

28

---

1  provided, among other things, that Defendants were obligated to

2  make decisions concerning the nature and extent of Collier's

3  medical care and treatment.  Said contract further provided

4  that Defendants, and each of them, were to ensure that Collier

5  was provided with reasonable, necessary and appropriate medical

6  care by Defendants and DOES 1 through 100 in a timely manner.

7      36.  Plaintiffs are informed and believe that at all

8  times herein mentioned, FRANZISKA and Decedent acted and dealt

9  with Defendants in good faith and performed all of their

10 obligations under the subject agreement.

11     37. FRANZISKA is entitled to restitution of all funds

12 paid to Defendants on Decedent's behalf.

13     38.  Plaintiffs are entitled to attorney fees under the

14 provisions of <u>Code of Civil Procedure</u> section 1021.5 and

15 <u>Welfare & Institutions Code</u> section 15657(a).

16                    FIFTH CAUSE OF ACTION

17   <u>(Breach of Covenant of Good Faith and Fair Dealing -</u>
                    <u>Against All Defendants)</u>
18

19     39.  Plaintiffs incorporate by reference each and every

20 allegation contained in paragraphs 1 through 38, inclusive, as

21 though fully set forth herein.

22     40.  Pursuant to the agreement referenced above, there

23 existed at relevant times herein mentioned a Covenant of Good

24 Faith and Fair Dealing between Plaintiffs, Decedent, and all

25 Defendants, as Plaintiffs were intended beneficiaries of the

26 contracts with Defendants, and were third-party beneficiaries

27 of the contracts between those parties.

28     41.  Plaintiffs are informed and believe, and thereon

---

Complaint for Damages

1    allege, that Defendants, and each of them, breached the

2    covenant of good faith and fair dealing in that they made

3    decisions regarding Collier's medical care and treatment

4    because of their own economic interests and contrary to his

5    best interests, in that Decedent was denied reasonable,

6    necessary and appropriate services, thereby proximately and

7    directly causing his death, as well as the injuries and damages

8    set forth herein.

9         42.   As a direct and proximate result of the breach of

10   the covenant of good faith and fair dealing of the Defendants

11   and each of them, Collier sustained severe and serious injury

12   resulting in his death, all to Plaintiffs' damage in an amount

13   within the jurisdiction of this court and to be shown according

14   to proof.

15        43.  As a direct and proximate result of the conduct of

16   the Defendants, and each of them, and of the death of Collier,

17   Plaintiffs have been deprived of the love, companionship,

18   comfort, affection, society, solace and moral support of said

19   decedent and the loss of his future services, earnings and

20   protection, to their great loss and damage in an amount to be

21   shown according to proof.

22                    SIXTH CAUSE OF ACTION

23   (Negligent Hiring, Training, and Supervision of Health Care
                    Personnel - Against CENTER)
24

25        44.   Plaintiffs incorporate by reference each and every

26   allegation contained in paragraphs 1 through 43, inclusive, as

27   though fully set forth herein.

28        45.   Defendants CENTER and DOES 1-100 have a duty of due

1    care in the hiring, training, and supervision of its employees.
2    Defendants have a further duty of due care to investigate the
3    background of their employees, especially in light of the
4    particular risk or hazard that the breach of that duty poses to
5    elders within Defendants' care. Defendants breached their duty
6    in that, among other things:

7        a. they knew or had reason to know that various DOES 1-100
8    were incompetent and unfit employees;

9        b. they knew or had reason to know that various DOES 1-
10   100, because of their qualities, were likely to harm patients
11   under their care;

12       c. they knew or had reason to know that various DOES 1-
13   100, were incompetent as employees because of their reckless or
14   vicious dispositions;

15       d. they failed to exercise due care in the interviewing,
16   selection, training and supervision of various DOES 1-100, such
17   that the employment necessarily brought them in contact with
18   patients, including Collier, in the performance of their
19   duties;

20       e. they knew or had reason to know that various DOES 1-100
21   had a history of or propensity to abuse elders and would in
22   fact engage in such abuse if brought in contact with elderly
23   patients.  Despite the foregoing, Defendants CENTER and DOES 1-
24   100 negligently, recklessly and carelessly permitted unquali-
25   fied health care personnel, to have contact with Collier in the
26   course of their employment, including personnel who did not
27   comprehend or speak English.

28

---

13
Complaint for Damages

46.    As a direct and proximate result of the acts of
Defendants, as aforesaid, Collier sustained severe and serious
injury to his person, and Plaintiffs sustained severe emotional
distress and other damages, all to their respective damage in
an amount within the jurisdiction of this court and to be shown
according to proof.

47.    By reason of the foregoing, FRANZISKA and Collier
have been required to employ the services of hospitals,
physicians, surgeons, nurses and other professional services,
and were compelled to incur expenses for ambulance service,
medicines, X-rays, and other medical supplies and services.

SEVENTH CAUSE OF ACTION

(Intentional Infliction of Emotional Distress -
Against All Defendants)

48.    Plaintiffs hereby incorporate by reference
paragraphs 1 through 47 of this Complaint as though fully set
forth herein.

49.    Defendants' conduct was intentional and malicious
and done for the purpose of causing Plaintiffs and Collier to
suffer mental anguish, and emotional and physical distress.
Defendants' conduct in confirming and ratifying that conduct
was done with knowledge that their emotional and physical
distress would thereby increase, and was done with wanton and
reckless disregard of the consequences to Plaintiffs and
Collier.

50.    As the proximate result of the aforementioned acts,
Plaintiffs and Collier suffered severe emotional and mental
distress, including but not limited to frustration, depression,

1  nervousness, and anxiety and have thereby incurred general and

2  exemplary damages in an amount to be determined at trial.

3  EIGHTH CAUSE OF ACTION

4  (Negligent Infliction of Emotional Distress - Against All Defendants)

5

6  51.  Plaintiffs hereby incorporate by reference

7  paragraphs 1 through 50 of this Complaint as though fully set

8  forth herein.

9  52.  Defendants, and each of them, knew that their acts

10  and those of their employees would cause Plaintiffs and Collier

11  severe emotional distress, and had the duty of exercising

12  reasonable care so that their acts would not cause them such

13  distress.

14  53.  In violation of said duty, Defendants, and each of

15  them, failed to exercise reasonable care, and as a proximate

16  result of their breach of duty as aforementioned, caused

17  outrageous and severe emotional distress to Plaintiffs and

18  Collier.

19  54.  Wherefore, Plaintiffs demand compensatory damages

20  from Defendants and each of them for damages for emotional

21  distress on behalf of Plaintiffs in an amount to be determined

22  at trial.

23  WHEREFORE, Plaintiffs demand judgment against Defendants,

24  and each of them, as follows:

25  As to the First Cause of Action:

26  1.  General damages according to proof;

27  2.  Sums incurred and to be incurred for services of

28  hospitals, physicians, surgeons, nurses and other professional

1  services, ambulance service, x-rays and other medical supplies

2  and services;

3      3.  Special damages, according to proof, not limited to

4  medical, hospital, and related expenses;

5      4.  Funeral and burial expenses;

6      5.  Damages for loss of love, companionship, comfort,

7  affection, society, solace and moral support;

8      6.  Loss of income incurred and to be incurred according

9  to proof;

10      7.  Interest provided by law including, but not limited

11  to, California *Civil Code*, Section 3291;

12      8.  Costs of suit; and

13      9.  Such other and further relief as the court deems just

14  and proper.

15  As to the Second Cause of Action:

16      1.  General damages according to proof;

17      2.  Sums incurred and to be incurred for services of

18  hospitals, physicians, surgeons, nurses and other professional

19  services, ambulance service, x-rays and other medical supplies

20  and services;

21      3. Funeral and burial expenses;

22      4. Loss of income incurred and to be incurred according to

23  proof;

24      5. Interest provided by law including, but not limited to,

25  California *Civil Code*, Section 3291;

26      6. Costs of suit; and

27      7. Such other and further relief as the court deems just

28

1  and proper.

2  As to the Third Cause of Action:

3      1.  General damages in an amount according to proof;

4      2.  Sums incurred for services of hospitals, physicians,

5  surgeons, nurses and other medical supplies and services;

6      3.  Treble damages pursuant to Civil Code §3345;

7      4.  Interest provided by law including, but not limited

8  to, California Civil Code § 3291;

9      5.  Damages equal to the profit realized from Defendants'

10  conduct, as alleged, and for prejudgment interest thereon

11  according to law;

12      6.  Attorney fees under Welfare & Institutions Code

13  §15657(a);

14      7.  Costs of suit; and

15      8.  Such further relief as the Court deems just and

16  proper.

17  As to the Fourth Cause of Action:

18      1.  General damages according to proof;

19      2.  Sums incurred and to be incurred for services to

20  hospitals, physicians, surgeons, nurses and other professional

21  services, ambulance service, x-rays and other medical supplies

22  and services;

23      3. Funeral and burial expenses;

24      4. Loss of income incurred and to be incurred according to

25  proof;

26      5. For interest provided by law including, but not limited

27  to, California Civil Code, Section 3291;

28

---

17
Complaint for Damages

6. Costs of suit; and,

7. Such further relief as the Court deems just and proper.

As to the Fifth Cause of Action:

1.  General damages in an amount according to proof;

2.  Sums incurred and to be incurred for services of hospitals, physicians, surgeons, nurses and other professional services, ambulance service, x-rays and other medical supplies and services;

3. Funeral and burial expenses;

4. Damages for loss of love, companionship, comfort, affection, society, solace and moral support;

5. Loss of income incurred and to be incurred according to proof;

6. Interest provided by law including, but not limited to, California *Civil Code*, Section 3291;

7. Costs of suit; and,

8. For such other and further relief as the court deems just and proper.

As to the Sixth Cause of Action:

1. General damages in an amount according to proof;

2. Sums incurred and to be incurred for services of hospitals, physicians, surgeons, nurses and other professional services, ambulance service, x-rays and other medical supplies and services;

3.  Interest provided by law including, but not limited to, California Civil Code § 3291;.

4. Costs of suit; and,

5. Such further relief as the Court deems just and proper.

As to the Seventh Cause of Action:

1. General damages according to proof;

2. Exemplary damages;

3. Sums incurred and to be incurred for services of hospitals, physicians, surgeons, nurses and other professional services, ambulance service, x-rays and other medical supplies and services;

4. Interest provided by law including, but not limited to, California Civil Code § 3291;

5. Attorney fees under Welfare & Institutions Code §15657(a);

6. Costs of suit; and,

7. Such further relief as the Court deems just and proper.

As to the Eighth Cause of Action:

1. General damages in an amount according to proof;

2. Sums incurred and to be incurred for services of hospitals, physicians, surgeons, nurses and other professional services, ambulance service, x-rays and other medical supplies and services;

3. Interest provided by law including, but not limited to, California Civil Code §3291;

4. Costs of suit; and,

///

1        5.   Such further relief as the Court deems just and

2   proper.

3   Dated: January 11, 2008

4                                    _____
                                     BERNARD R. LAFER
5                                    Attorney for Plaintiffs

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

20
Complaint for Damages

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**
STREET ADDRESS:     330 West Broadway
MAILING ADDRESS:    330 West Broadway
CITY AND ZIP CODE:  San Diego, CA 92101
BRANCH NAME:        Central
TELEPHONE NUMBER:   (619) 685-6022

PLAINTIFF(S) / PETITIONER(S):    Franziska I. Collier, individually and as Administrator of the Estate of Edgar T. Collier, Deceased

DEFENDANT(S) / RESPONDENT(S):   Paradise Hills Convalescent Center et.al.

FRANZISKA I. COLLIER, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF EDGAR T. COLLIER,

| **NOTICE OF CASE ASSIGNMENT** | CASE NUMBER:<br>37-2007-00075145-CU-MM-CTL |
|---|---|

Judge: Charles R. Hayes                              Department: C-66

**COMPLAINT/PETITION FILED:** 09/17/2007

### CASES ASSIGNED TO THE PROBATE DIVISION ARE NOT REQUIRED TO COMPLY WITH THE CIVIL REQUIREMENTS LISTED BELOW

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT).

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

**TIME STANDARDS:** The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time. General civil consists of all cases except: Small claims appeals, petitions, and unlawful detainers.

**COMPLAINTS:** Complaints must be served on all named defendants, and a CERTIFICATE OF SERVICE (SDSC CIV-345) filed within 60 days of filing. This is a mandatory document and may not be substituted by the filing of any other document.

**DEFENDANT'S APPEARANCE:** Defendant must generally appear within 30 days of service of the complaint. (Plaintiff may stipulate to no more than a 15 day extension which must be in writing and filed with the Court.)

**DEFAULT:** If the defendant has not generally appeared and no extension has been granted, the plaintiff must request default within 45 days of the filing of the Certificate of Service.

THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO LITIGATION, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. MEDIATION SERVICES ARE AVAILABLE UNDER THE DISPUTE RESOLUTION PROGRAMS ACT AND OTHER PROVIDERS. SEE ADR INFORMATION PACKET AND STIPULATION.

YOU MAY ALSO BE ORDERED TO PARTICIPATE IN ARBITRATION PURSUANT TO CCP 1141.10 AT THE CASE MANAGEMENT CONFERENCE. THE FEE FOR THESE SERVICES WILL BE PAID BY THE COURT IF ALL PARTIES HAVE APPEARED IN THE CASE AND THE COURT ORDERS THE CASE TO ARBITRATION PURSUANT TO CCP 1141.10. THE CASE MANAGEMENT CONFERENCE WILL BE CANCELLED IF YOU FILE FORM SDSC CIV-359 PRIOR TO THAT HEARING

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | FOR COURT USE ONLY |
|---|---|
| STREET ADDRESS: 330 West Broadway | |
| MAILING ADDRESS: 330 West Broadway | |
| CITY, STATE, & ZIP CODE: San Diego, CA 92101-3827 | |
| BRANCH NAME: Central | |

| PLAINTIFF(S): Franziska I. Collier, individually and as Administrator of the Estate of Edgar T. Collier, Deceased |
|---|
| DEFENDANT(S): Paradise Hills Convalescent Center et.al. |
| SHORT TITLE: FRANZISKA I. COLLIER, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF EDGAR T. COLLIER, DECEASED VS. PARADIS |

| STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION PROCESS (CRC 3.221) | CASE NUMBER: 37-2007-00075145-CU-MM-CTL |
|---|---|

Judge: Charles R. Hayes                                                     Department: C-66

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution process. Selection of any of these options will not delay any case management time-lines.

☐ Court-Referred Mediation Program                    ☐ Court-Ordered Nonbinding Arbitration

☐ Private Neutral Evaluation                          ☐ Court-Ordered Binding Arbitration (Stipulated)

☐ Private Mini-Trial                                  ☐ Private Reference to General Referee

☐ Private Summary Jury Trial                          ☐ Private Reference to Judge

☐ Private Settlement Conference with Private Neutral  ☐ Private Binding Arbitration

☐ Other (specify): _____

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: (Name) _____

_____

_____

Alternate: (mediation & arbitration only) _____

Date: _____        Date: _____

_____        _____
Name of Plaintiff                                Name of Defendant

_____        _____
Signature                                        Signature

_____        _____
Name of Plaintiff's Attorney                     Name of Defendant's Attorney

_____        _____
Signature                                        Signature

(Attach another sheet if additional names are necessary). It is the duty of the parties to notify the court of any settlement pursuant to California Rules of Court, 3.1385. Upon notification of the settlement the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court and all un-served, non-appearing or actions by names parties are dismissed.

**IT IS SO ORDERED.**

Dated: 09/17/2007                               _____
                                                 JUDGE OF THE SUPERIOR COURT

SDSC CIV-359 (Rev 01-07)        **STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION**        Page: 1

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

CASE NUMBER: 37-2007-00075145-CU-MM-CTL    CASE TITLE: Franziska I. Collier, individually and as Administrator of the E

## NOTICE TO LITIGANTS/ADR INFORMATION PACKAGE

You are required to serve a copy of this Notice to Litigants/ADR Information Package and a copy of the blank Stipulation to Alternative Dispute Resolution Process (received from the Civil Business Office at the time of filing) with a copy of the Summons and Complaint on all defendants in accordance with San Diego Superior Court Rule 2.1.5, Division II and CRC Rule 201.9.

## ADR POLICY

It is the policy of the San Diego Superior Court to strongly support the use of Alternative Dispute Resolution ("ADR") in all general civil cases. The court has long recognized the value of early case management intervention and the use of alternative dispute resolution options for amenable and eligible cases. The use of ADR will be discussed at all Case Management Conferences. It is the court's expectation that litigants will utilize some form of ADR – i.e. the court's mediation or arbitration programs or other available private ADR options as a mechanism for case settlement before trial

## ADR OPTIONS

**1) CIVIL MEDIATION PROGRAM:** The San Diego Superior Court Civil Mediation Program is designed to assist parties with the early resolution of their dispute. All general civil independent calendar cases, including construction defect, complex and eminent domain cases are eligible to participant in the program. Limited civil collection cases are not eligible at this time. San Diego Superior Court Local Rule 2.31, Division II addresses this program specifically. Mediation is a non-binding process in which a trained mediator 1) facilitates communication between disputants, and 2) assists parties in reaching a mutually acceptable resolution of all or part of their dispute. In this process, the mediator carefully explores not only the relevant evidence and law, but also the parties' underlying interests, needs and priorities. The mediator is not the decision-maker and will not resolve the dispute – the parties do. Mediation is a flexible, informal and confidential process that is less stressful than a formalized trial. It can also save time and money, allow for greater client participation and allow for more flexibility in creating a resolution.

**Assignment to Mediation, Cost and Timelines:** Parties may stipulate to mediation at any time up to the CMC or may stipulate to mediation at the CMC. Mediator fees and expenses are split equally by the parties, unless otherwise agreed. Mediators on the court's approved panel have agreed to the court's payment schedule for county-referred mediation: $150.00 per hour for each of the first two hours and their individual rate per hour thereafter. Parties may select any mediator, however, the court maintains a panel of court-approved mediators who have satisfied panel requirements and who must adhere to ethical standards. All court-approved mediator fees and other policies are listed in the Mediator Directory at each court location to assist parties with selection. **Discovery:** Parties do not need to conduct full discovery in the case before mediation is considered, utilized or referred. **Attendance at Mediation:** Trial counsel, parties and all persons with full authority to settle the case must personally attend the mediation, unless excused by the court for good cause.

**2) JUDICIAL ARBITRATION:** Judicial Arbitration is a binding or non-binding process where an arbitrator applies the law to the facts of the case and issues an award. The goal of judicial arbitration is to provide parties with an adjudication that is earlier, faster, less formal and less expensive than trial. The arbitrator's award may either become the judgment in the case if all parties accept or if no trial de novo is requested within the required time. Either party may reject the award and request a trial de novo before the assigned judge if the arbitration was non-binding. If a trial de novo is requested, the trial will usually be scheduled within a year of the filing date.

**Assignment to Arbitration, Cost and Timelines:** Parties may stipulate to binding or non-binding judicial arbitration or the judge may order the matter to arbitration at the case management conference, held approximately 150 days after filing, if a case is valued at under $50,000 and is "at issue". The court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience. In addition, if parties select an arbitrator from the court's panel, the court will pay the arbitrator's fees. Superior Court

**3) SETTLEMENT CONFERENCES:** The goal of a settlement conference is to assist the parties in their efforts to negotiate a settlement of all or part of the dispute. Parties may, at any time, request a settlement conference before the judge assigned to their case; request another assigned judge or a pro tem to act as settlement officer; or may privately utilize the services of a retired judge. The court may also order a case to a mandatory settlement conference prior to trial before the court's assigned Settlement Conference judge.

**4) OTHER VOLUNTARY ADR:** Parties may voluntarily stipulate to private ADR options outside the court system including private binding arbitration, private early neutral evaluation or private judging at any time by completing the "Stipulation to Alternative Dispute Resolution Process" which is included in this ADR package. Parties may also utilize mediation services offered by programs that are partially funded by the county's Dispute Resolution Programs Act. These services are available at no cost or on a sliding scale based on need. For a list of approved DRPA providers, please contact the County's DRPA program office at (619) 238-2400.

**ADDITIONAL ADR INFORMATION:** For more information about the Civil Mediation Program, please contact the Civil Mediation Department at (619) 515-8908. For more information about the Judicial Arbitration Program, please contact the Arbitration Office at (619) 531-3818. For more information about Settlement Conferences, please contact the Independent Calendar department to which your case is assigned. Please note that staff can only discuss ADR options and cannot give legal advice.

2nd AMENDED

## SUMMONS
### (CITACION JUDICIAL)

**SUM-100**

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
PARADISE HILLS CONVALESCENT CENTER, a business
entity, form unknown; DR. GAYNSKI; DR. C. ARAMBULO;
KAISER FOUNDATION HOSPITALS; SOUTHERN CALIFORNIA
PERMANENTE MEDICAL GROUP; Kaiser FOUNDATION HEALTH
PLAN, INC.; and DOES 1 through 100, inclusive

CIVIL ... FILED
... OFFICE 19

08 APR -3 AM 9:42

CLE... ...R COURT
RECEIVED COUNTY, CA

MAY 16 2008

DAVID J. LERMAN, M.D.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
FRANZISKA I. COLLIER, individually, and as
Administrator of the Estate of EDGAR T. COLLIER,
Deceased; KEA JADE COLLIER, a Minor, by her Guardian
Ad Litem MICHAEL HYDE

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is: | CASE NUMBER: |
| (El nombre y dirección de la corte es): | (Número del Caso): 37-2007-00075145-CU-MM-CT |

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN DIEGO
330 West Broadway
San Diego, CA 92101
Central Division

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
BERNARD R. LAFER, ESQ. #122645          619-298-1969     619-298-7784
7801 Mission Center Court
Suite 430
San Diego, CA  92108

DATE:                                        Clerk, by    **B. Orihuela**                  , Deputy
(Fecha)  **APR 03 2008**                     (Secretario)                              (Adjunto)

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).

**NOTICE TO THE PERSON SERVED:** You are served
1. □ as an individual defendant.
2. □ as the person sued under the fictitious name of *(specify):*

3. □ on behalf of *(specify):*

   under:  □ CCP 416.10 (corporation)          □ CCP 416.60 (minor)
           □ CCP 416.20 (defunct corporation)   □ CCP 416.70 (conservatee)
           □ CCP 416.40 (association or partnership)  □ CCP 416.90 (authorized person)
           □ other *(specify):*
4. □ by personal delivery on *(date):*

[SEAL]

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Legal Solutions Plus

Code of Civil Procedure §§ 412.20 465

Page 1 of 1

2576



**CORPORATION SERVICE COMPANY®**

# Notice of Service of Process

MIW / ALL
Transmittal Number: 5780542
Date Processed: 05/15/2008

| | |
|---|---|
| Primary Contact: | Jenelle Flewellen<br>Kaiser Foundation Hospitals<br>One Kaiser Plaza<br>Floor 19L<br>Oakland, CA 94612-3610 |
| Copy of transmittal only provided to: | Tricia Neesen<br>Barbara Frazier<br>GAIL PERRIN<br>Sally Hitchcock |

| | |
|---|---|
| Entity: | Kaiser Foundation Hospitals<br>Entity ID Number  0460125 |
| Entity Served: | Kaiser Foundation Hospitals |
| Title of Action: | Franziska I. Collier vs. Paradise Hills Convalescent Center |
| Document(s) Type: | Summons/Complaint |
| Nature of Action: | Wrongful Death |
| Court: | San Diego Superior Court, California |
| Case Number: | 37-2007-00075145-CU-MM-CT |
| Jurisdiction Served: | California |
| Date Served on CSC: | 05/15/2008 |
| Answer or Appearance Due: | 30 Days |
| Originally Served On: | CSC |
| How Served: | Personal Service |
| Plaintiff's Attorney: | Bernard R. Lafer<br>619-298-1969 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
*CSC is SAS70 Type II certified for its Litigation Management System.*
2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882  |  sop@cscinfo.com

1  BERNARD R. LAFER, ESQ. SBN 122645
   7801 Mission Center Court
2  Suite 430
   San Diego, CA  92108
3  Tel: (619) 298-1969
   Fax: (619) 298-7784
4
                                    F I    L    E D
5  Attorney for Plaintiffs          Clerk of the Superior Court
   FRANZISKA I. COLLIER and
6  KEA JADE COLLIER, a Minor        APR 0 3 2008

7                                   By: D. LIM, Deputy

8               SUPERIOR COURT OF CALIFORNIA

9                  COUNTY OF SAN DIEGO

10

11 FRANZISKA I. COLLIER, individually,)  CASE NO: 37-2007-
   and as Administrator of the Estate )  00075145-CU-MM-CTL
12 of Edgar T. Collier, Deceased;     )
13 KEA JADE COLLIER, a Minor, by her  )  SECOND AMENDED
   Guardian Ad Litem MICHAEL HYDE,    )  COMPLAINT FOR DAMAGES:
14                                     )  MEDICAL NEGLIGENCE/
                                       )  WRONGFUL DEATH; BREACH
15                Plaintiffs,          )  OF FIDUCIARY DUTY;
     v.                                )  VIOLATION OF STATUTE;
16                                     )  BREACH OF CONTRACT;
   PARADISE HILLS CONVALESCENT        )  BREACH OF COVENANT OF
17 CENTER, a business entity,         )  GOOD FAITH AND FAIR
   form unknown; DR. GAYNSKI;        )  DEALING; NEGLIGENT
18 DR. C. ARAMBULO; KAISER           )  HIRING, TRAINING, AND
   FOUNDATION HOSPITALS; SOUTHERN    )  SUPERVISION; INTENTIONAL
19 CALIFORNIA PERMANENTE MEDICAL     )  INFLICTION OF EMOTIONAL
   GROUP; KAISER FOUNDATION HEALTH   )  DISTRESS; NEGLIGENT
20 PLAN, INC.; and DOES 1 through    )  INFLICTION OF EMOTIONAL
   100, inclusive,                   )  DISTRESS
21                                     )
                Defendants.          )  [W&I Code §15610, et seq.]
22 _____)     (Elder Abuse)

23      Plaintiffs FRANZISKA I. COLLIER, individually, and as

24 Administrator of the Estate of Edgar T. Collier, Deceased, and

25 KEA JADE COLLIER, a Minor by her Guardian Ad Litem MICHAEL

26 HYDE, allege as follows:

27               GENERAL ALLEGATIONS

28      1.  Plaintiff FRANZISKA I. COLLIER, at all times

                         1
                Complaint for Damages

1  mentioned herein is, and was, the wife of Decedent Edgar T.

2  Collier, a resident of the City and County of San Diego, State

3  of California, Parent of KEA JADE COLLIER, a Minor, and

4  Administrator of the Estate of EDGAR T. COLLIER, Deceased.

5  **MICHAEL HYDE is guardian ad litem of KEA JADE COLLIER, a Minor.**

6       2.  At all relevant times mentioned herein, Decedent

7  Edgar T. Collier was over the age of 65 and at the time of his

8  death, was 66 years of age.

9       3.  At all times herein mentioned, Defendant PARADISE

10  HILLS CONVALESCENT CENTER, ("CENTER") a business entity, form

11  unknown, was and is in the business of providing long-term care

12  as a 24-hour health facility as defined in section 1250(c) of

13  the Health & Safety Code, and was at all times mentioned doing

14  business in the City and County of San Diego, in the State of

15  California.

16       4.  Upon information and belief, and at all times

17  mentioned, Defendants CENTER and DOES 1 through 100, were

18  licensed and unlicensed health care providers, rendering health

19  care as a skilled nursing facility, and in the capacities of

20  Director of Nursing, Medical Director, Administrator, or

21  otherwise, to patients at CENTER, including Edgar T. Collier,

22  deceased.

23       5.  At all times herein mentioned, Defendants KAISER

24  FOUNDATION HOSPITALS, SOUTHERN CALIFORNIA PERMANENTE MEDICAL

25  GROUP, and KAISER FOUNDATION HEALTH PLAN, INC., ("KAISER") were

26  inter-related health care providers licensed by the State of

27  California to provide health care, and during all relevant

28

1    times mentioned herein were so engaged in San Diego,

2    California.

3        6.    At all times mentioned, Defendants KAISER and DOES 1

4    through 100, were licensed and unlicensed health care providers

5    rendering health care as a skilled hospital facility, and in

6    the capacities of Medical Director, Administrator, or

7    otherwise, to patients at CENTER, including Edgar T. Collier,

8    deceased.

9        7.    At all times herein mentioned, Defendant GAYNSKI,

10    first name unknown, was a physician licensed by the State of

11    California to practice medicine and was engaged in the practice

12    of medicine in San Diego, California.

13        8.    At all times herein mentioned, Defendant C.

14    ARAMBULO, first name unknown, was a physician licensed by the

15    State of California to practice medicine and was engaged in the

16    practice of medicine in San Diego, California.

17        9.    Plaintiffs are ignorant of the true names and

18    capacities of Defendants sued herein as DOES 1 through 100,

19    inclusive, and therefore sue those Defendants by these

20    fictitious names.  Plaintiffs will amend this complaint to

21    allege their true names and capacities when ascertained.

22        10.   Plaintiffs are informed and believe, and thereon

23    allege, that each of the Defendants fictitiously named is

24    responsible in some manner for the acts hereinafter alleged,

25    and that Plaintiffs' damages, as set forth herein, were

26    proximately caused by the acts of these Defendants, and each of

27    them, as set forth herein.

28

1     11.  Plaintiffs further allege, on information and

2  belief, that at all times herein mentioned, DOES 1 through 100,

3  inclusive, were the agents and employees of the named

4  Defendants, and each of them, and in doing the things herein-

5  after mentioned were acting within the scope of their authority

6  as such agents and employees and with the permission and

7  consent of their respective principals and employers.

8     12.  On or about July 15, 2006, Edgar T. Collier became

9  a resident patient of CENTER and remained at that facility

10  through and including July 20, 2006, and at all times relevant,

11  was in the care and custody of Defendants.  Edgar T. Collier

12  was 66 at his death on July 20, 2006, and was 65 or older at

13  all times relevant to this action.  Accordingly, under the

14  provisions of Welfare & Institutions Code section 15610.27,

15  while a patient at CENTER, he was at all times mentioned an

16  "elder."  At all times herein mentioned, Plaintiff FRANZISKA

17  observed the conditions under which Decedent suffered, and paid

18  money to Defendants for his care and treatment.

19          FIRST CAUSE OF ACTION

20  (Medical Negligence/Wrongful Death - Against CENTER & ARAMBULO)

21     13.  Plaintiffs repeat the allegations contained in

22  paragraphs 1 through 12 of this Complaint and incorporate them

23  herein as if set forth in full.

24     14.  Beginning on July 15, 2006 and until July 20, 2006,

25  Decedent was a resident patient of CENTER.  Defendants CENTER,

26  DR. ARAMBULO, and DOES 1 through 100, and each of them, under-

27  took the care, treatment and examination of the Decedent, and

28

1  were entrusted with his care, maintenance, hygiene, nutrition,
2  health and overall well being.
3      15.  At the time and place aforesaid, these Defendants
4  so negligently, carelessly, recklessly, and unlawfully super-
5  vised, treated, handled, and cared for Decedent as to directly
6  and proximately cause him to develop serious sores over his
7  body and other serious injuries.  As a direct result of said
8  injuries, Edgar T. Collier died on July 20, 2006.
9      16.  At all times mentioned herein and prior thereto,
10 CENTER and DOES 1-100, were negligent in failing to ascertain
11 the competence of their medical staff, including but not
12 limited to, ARAMBULO, through careful selection and review.
13 Said Defendants were also negligent in failing to carefully
14 evaluate the quality of the medical treatment being rendered on
15 their premises and/or by their contracting and/or employed
16 physicians and medical or physician groups prior to July 15,
17 2006 and thereafter. Such negligence created an unreasonable
18 risk of harm to patients, including Edgar T. Collier, thereby
19 causing or contributing to his death on July 20, 2006.
20      17.  At said time and place, as aforesaid, Defendants,
21 and each of them, so negligently, carelessly, recklessly,
22 wantonly, and unlawfully treated, provided medical care,
23 information, monitoring, examination, surgery, diagnosis and
24 other medical services, so as to directly and proximately cause
25 death to Decedent.  Defendants and each of them specifically
26 failed to diagnose Decedent's condition as a staph infection
27 and informed Plaintiff FRANZISKA that his continuing diarrhea
28

1  was simply a side effect of the antibiotics he had been given.

2  Their failure to diagnose and properly treat the staph

3  infection resulted in Edgar Collier's death.

4    18.  As a direct and proximate result of the conduct of

5  the Defendants, and each of them, and of the death of Edgar T.

6  Collier, FRANZISKA and her minor child KEA JADE COLLIER have

7  been deprived of the love, companionship, comfort, affection,

8  society, solace and moral support of said Decedent and have

9  been caused the loss of future services, earnings and

10 protection of said husband and father, to their great loss and

11 damage in an amount to be shown according to proof.

12   19.  As a direct and proximate result of the conduct of

13 CENTER, ARAMBULO and DOES 1-100 and each of them, and the

14 resulting death, as aforesaid, Plaintiff FRANZISKA I. COLLIER,

15 has been compelled to incur funeral/burial expenses as well as

16 other special damages, all to her damage, in an amount to be

17 shown according to proof.

18                    SECOND CAUSE OF ACTION

19   (Breach of Fiduciary Duty - Against All Defendants)

20   20.  Plaintiffs repeat the allegations contained in

21 paragraphs 1 through 19 of this Complaint and incorporate them

22 herein as if set forth in full.

23   21.  In contracting with Defendants CENTER, KAISER,

24 GAYNSKI, ARAMBULO and DOES 1 through 100, Defendants had a

25 fiduciary duty to Decedent to ensure that he received reason-

26 able, necessary and competent health care.

27   22.  Plaintiffs are informed and believe, and thereon

28

---

Complaint for Damages

1    allege, that Defendants and DOES 1-100, and each of them,
2    breached the above-mentioned fiduciary duty in that they made
3    decisions regarding Decedent's medical care and treatment
4    because of their own economic interests and contrary to his
5    best interests, in that Decedent was denied reasonable,
6    necessary and appropriate services, thereby proximately and
7    directly causing the injuries and damages set forth below.
8         23.  As a direct and proximate result of the negligence,
9    carelessness, recklessness, wantonness, and unlawfulness of the
10   Defendants and each of them, and the resulting death, injuries
11   and damages, as aforesaid, Decedent sustained severe and
12   serious injury to his person, all to his damage in a sum within
13   the jurisdiction of this court and to be shown according to
14   proof.
15        24.  As a direct and proximate result of the conduct of
16   the Defendants, and each of them, and of the death of Edgar T.
17   Collier, Plaintiffs have been deprived of the love, companion-
18   ship, comfort, affection, society, solace and moral support of
19   said decedent and have been caused the loss of future services,
20   earnings and protection of said husband and father, to their
21   great loss and damage in an amount to be shown according to
22   proof.
23        25.  As a direct and proximate result of the breach of
24   contract by Defendants, and each of them, and the resulting
25   death, as aforesaid, FRANZISKA has been compelled to incur
26   funeral/burial expenses as well as other special damages, all
27   to the damage of the Plaintiffs, in an amount to be shown
28

---

1  according to proof.

2  THIRD CAUSE OF ACTION

3  (Violation of Statute - Against All Defendants)

4  26.  Plaintiffs repeat the allegations contained in

5  paragraphs 1 through 25 of this Complaint and incorporate them

6  herein as if set forth in full.

7  27.  Decedent had been a patient of KAISER and under the

8  care and treatment of GAYNSKI from July 4, 2006 through July

9  15th, when he was transferred to CENTER for nursing and

10  convalescent services.

11  28. Since Collier was a resident and patient of CENTER,

12  ARAMBULO, and the DOE Defendants, and prior to July 15, 2006

13  had been under the care, supervision, and treatment of KAISER,

14  GAYNSKI, and the DOE Defendants, each of these Defendants had a

15  duty under federal and state regulations (which were designed

16  for the protection and benefit of resident patients like

17  Collier) to provide for his care, comfort and safety.  Without

18  limiting the generality of the foregoing, Defendants had a duty

19  to, among other things:

20  a. follow, implement and adhere to all physician orders;

21  b. monitor and record Collier's condition, and to report

22  meaningful changes therein to the attending physician;

23  c. establish and implement a patient care plan for Collier

24  based upon and including without limitation an ongoing process

25  of identifying his care needs;

26  d. examine and diagnose Collier's medical condition;

27  e. accord to Collier an individual's dignity and respect,

28

1   and not to subject him to abuse or neglect;

2   f. properly and accurately administer medication;

3   g. maintain nursing and other staffing at levels adequate
4   to meet his needs;

5   h. provide Collier with good nutrition and with necessary
6   fluids for hydration;

7   i. answer Collier's requests for assistance;

8   j. provide competent nursing and other staffing who
9   understood and spoke English; and

10  k. perform these services and administer tests in a timely
11  manner.

12      29. During the period of his residence at CENTER, and
13  under his care and treatment by KAISER and its medical
14  personnel, and up to and including his death on July 20, 2006,
15  Defendants, and each of them, breached their duties to Collier.
16  These breaches were intentional and in reckless disregard for
17  the probability that severe injury would result from their
18  failure to carefully adhere to their duties. Defendants knew or
19  should have known that there was a probability that injury
20  would result from the failure to adhere to their duties. In
21  particular, and without limiting the generality of the
22  foregoing, Defendants, and each of them, intentionally (and
23  with deliberate indifference to Collier's health and safety)
24  failed to provide the services aforementioned in paragraph 28.
25  Defendants' conduct, as aforesaid, constitutes physical abuse
26  as defined in Welfare and Institutions Code section 15610.63(d)
27  and (f), and/or neglect as defined in Welfare and Institutions

28

1    Code section 15610.57.

2        30.  In doing the things herein alleged, all of the

3    Defendants and DOES 1 through 100, and each of them, acted

4    recklessly and were grossly negligent.

5        31.  By reason of the foregoing, Defendants violated

6    California statutes, including but not limited to Welfare and

7    Institutions Code sections 15610.57 and 15610.63(d) and (f).

8        32.  As a direct and proximate result of the Defendants'

9    violation of statute, as aforesaid, Collier sustained severe

10   and serious injury to his person which resulted in death,

11   including, but not limited to, severe emotional distress, all

12   to Plaintiffs' and Collier's damage in a sum within the

13   jurisdiction of this court and to be shown according to proof.

14       33.  By reason of the foregoing, FRANZISKA and Collier

15   were required to employ the services of hospitals, physicians,

16   surgeons, nurses and other professional services, and were

17   compelled to incur expenses for ambulance service, medicines,

18   X-rays, and other medical supplies and services.

19                   FOURTH CAUSE OF ACTION

20        (Breach of Contract - Against All Defendants)

21       34.  Plaintiffs incorporate by reference each and every

22   allegation contained in paragraphs 1 through 33, inclusive, as

23   though fully set forth herein.

24       35.  Plaintiffs are informed and believe, and thereon

25   allege, through all relevant times herein mentioned, there

26   existed written agreements for the provision of health care

27   services between Defendants and DOES 1-100. Said agreement

28

1  provided, among other things, that Defendants were obligated to
2  make decisions concerning the nature and extent of Collier's
3  medical care and treatment.  Said contract further provided
4  that Defendants, and each of them, were to ensure that Collier
5  was provided with reasonable, necessary and appropriate medical
6  care by Defendants and DOES 1 through 100 in a timely manner.
7       36.  Plaintiffs are informed and believe that at all
8  times herein mentioned, FRANZISKA and Decedent acted and dealt
9  with Defendants in good faith and performed all of their
10  obligations under the subject agreement.
11      37. FRANZISKA is entitled to restitution of all funds
12  paid to Defendants on Decedent's behalf.
13      38.  Plaintiffs are entitled to attorney fees under the
14  provisions of Code of Civil Procedure section 1021.5 and
15  Welfare & Institutions Code section 15657(a).
16                    FIFTH CAUSE OF ACTION
17     (Breach of Covenant of Good Faith and Fair Dealing -
18                  Against All Defendants)
19      39.  Plaintiffs incorporate by reference each and every
20  allegation contained in paragraphs 1 through 38, inclusive, as
21  though fully set forth herein.
22      40.  Pursuant to the agreement referenced above, there
23  existed at relevant times herein mentioned a Covenant of Good
24  Faith and Fair Dealing between Plaintiffs, Decedent, and all
25  Defendants, as Plaintiffs were intended beneficiaries of the
26  contracts with Defendants, and were third-party beneficiaries
27  of the contracts between those parties.
28      41.  Plaintiffs are informed and believe, and thereon

---

1    allege, that Defendants, and each of them, breached the

2    covenant of good faith and fair dealing in that they made

3    decisions regarding Collier's medical care and treatment

4    because of their own economic interests and contrary to his

5    best interests, in that Decedent was denied reasonable,

6    necessary and appropriate services, thereby proximately and

7    directly causing his death, as well as the injuries and damages

8    set forth herein.

9        42.   As a direct and proximate result of the breach of

10   the covenant of good faith and fair dealing of the Defendants

11   and each of them, Collier sustained severe and serious injury

12   resulting in his death, all to Plaintiffs' damage in an amount

13   within the jurisdiction of this court and to be shown according

14   to proof.

15       43.   As a direct and proximate result of the conduct of

16   the Defendants, and each of them, and of the death of Collier,

17   Plaintiffs have been deprived of the love, companionship,

18   comfort, affection, society, solace and moral support of said

19   decedent and the loss of his future services, earnings and

20   protection, to their great loss and damage in an amount to be

21   shown according to proof.

22                       SIXTH CAUSE OF ACTION

23   (Negligent Hiring, Training, and Supervision of Health Care

24                    Personnel - Against CENTER)

25       44.   Plaintiffs incorporate by reference each and every

26   allegation contained in paragraphs 1 through 43, inclusive, as

27   though fully set forth herein.

28       45.   Defendants CENTER and DOES 1-100 have a duty of due

---

Complaint for Damages

1  care in the hiring, training, and supervision of its employees.
2  Defendants have a further duty of due care to investigate the
3  background of their employees, especially in light of the
4  particular risk or hazard that the breach of that duty poses to
5  elders within Defendants' care. Defendants breached their duty
6  in that, among other things:

7      a. they knew or had reason to know that various DOES 1-100
8  were incompetent and unfit employees;

9      b. they knew or had reason to know that various DOES 1-
10 100, because of their qualities, were likely to harm patients
11 under their care;

12     c. they knew or had reason to know that various DOES 1-
13 100, were incompetent as employees because of their reckless or
14 vicious dispositions;

15     d. they failed to exercise due care in the interviewing,
16 selection, training and supervision of various DOES 1-100, such
17 that the employment necessarily brought them in contact with
18 patients, including Collier, in the performance of their
19 duties;

20     e. they knew or had reason to know that various DOES 1-100
21 had a history of or propensity to abuse elders and would in
22 fact engage in such abuse if brought in contact with elderly
23 patients.  Despite the foregoing, Defendants CENTER and DOES 1-
24 100 negligently, recklessly and carelessly permitted unquali-
25 fied health care personnel, to have contact with Collier in the
26 course of their employment, including personnel who did not
27 comprehend or speak English.

28

1    46.    As a direct and proximate result of the acts of

2 Defendants, as aforesaid, Collier sustained severe and serious

3 injury to his person, and Plaintiffs sustained severe emotional

4 distress and other damages, all to their respective damage in

5 an amount within the jurisdiction of this court and to be shown

6 according to proof.

7    47.    By reason of the foregoing, FRANZISKA and Collier

8 have been required to employ the services of hospitals,

9 physicians, surgeons, nurses and other professional services,

10 and were compelled to incur expenses for ambulance service,

11 medicines, X-rays, and other medical supplies and services.

12                    SEVENTH CAUSE OF ACTION

13        (Intentional Infliction of Emotional Distress -
                    Against All Defendants)
14

15    48.    Plaintiffs hereby incorporate by reference

16 paragraphs 1 through 47 of this Complaint as though fully set

17 forth herein.

18    49.    Defendants' conduct was intentional and malicious

19 and done for the purpose of causing Plaintiffs and Collier to

20 suffer mental anguish, and emotional and physical distress.

21 Defendants' conduct in confirming and ratifying that conduct

22 was done with knowledge that their emotional and physical

23 distress would thereby increase, and was done with wanton and

24 reckless disregard of the consequences to Plaintiffs and

25 Collier.

26    50.    As the proximate result of the aforementioned acts,

27 Plaintiffs and Collier suffered severe emotional and mental

28 distress, including but not limited to frustration, depression,

1  nervousness, and anxiety and have thereby incurred general and

2  exemplary damages in an amount to be determined at trial.

3                    EIGHTH CAUSE OF ACTION

4       (Negligent Infliction of Emotional Distress -
                     Against All Defendants)

5

6       51.  Plaintiffs hereby incorporate by reference

7  paragraphs 1 through 50 of this Complaint as though fully set

8  forth herein.

9       52.  Defendants, and each of them, knew that their acts

10 and those of their employees would cause Plaintiffs and Collier

11 severe emotional distress, and had the duty of exercising

12 reasonable care so that their acts would not cause them such

13 distress.

14      53.  In violation of said duty, Defendants, and each of

15 them, failed to exercise reasonable care, and as a proximate

16 result of their breach of duty as aforementioned, caused

17 outrageous and severe emotional distress to Plaintiffs and

18 Collier.

19      54.  Wherefore, Plaintiffs demand compensatory damages

20 from Defendants and each of them for damages for emotional

21 distress on behalf of Plaintiffs in an amount to be determined

22 at trial.

23      WHEREFORE, Plaintiffs demand judgment against Defendants,

24 and each of them, as follows:

25 As to the First Cause of Action:

26      1.  General damages according to proof;

27      2.  Sums incurred and to be incurred for services of

28 hospitals, physicians, surgeons, nurses and other professional

---

1  services, ambulance service, x-rays and other medical supplies

2  and services;

3      3.  Special damages, according to proof, not limited to

4  medical, hospital, and related expenses;

5      4.  Funeral and burial expenses;

6      5.  Damages for loss of love, companionship, comfort,

7  affection, society, solace and moral support;

8      6.  Loss of income incurred and to be incurred according

9  to proof;

10     7.  Interest provided by law including, but not limited

11  to, California *Civil Code*, Section 3291;

12     8.  Costs of suit; and

13     9.  Such other and further relief as the court deems just

14  and proper.

15  As to the Second Cause of Action:

16     1.  General damages according to proof;

17     2.  Sums incurred and to be incurred for services of

18  hospitals, physicians, surgeons, nurses and other professional

19  services, ambulance service, x-rays and other medical supplies

20  and services;

21     3. Funeral and burial expenses;

22     4. Loss of income incurred and to be incurred according to

23  proof;

24     5. Interest provided by law including, but not limited to,

25  California *Civil Code*, Section 3291;

26     6. Costs of suit; and

27     7. Such other and further relief as the court deems just

28

1  and proper.

2  As to the Third Cause of Action:

3      1.   General damages in an amount according to proof;

4      2.   Sums incurred for services of hospitals, physicians,

5  surgeons, nurses and other medical supplies and services;

6      3.   Treble damages pursuant to Civil Code §3345;

7      4.   Interest provided by law including, but not limited

8  to, California Civil Code § 3291;

9      5.   Damages equal to the profit realized from Defendants'

10 conduct, as alleged, and for prejudgment interest thereon

11 according to law;

12     6.   Attorney fees under Welfare & Institutions Code

13 §15657(a);

14     7.   Costs of suit; and

15     8.   Such further relief as the Court deems just and

16 proper.

17 As to the Fourth Cause of Action:

18     1.   General damages according to proof;

19     2.   Sums incurred and to be incurred for services to

20 hospitals, physicians, surgeons, nurses and other professional

21 services, ambulance service, x-rays and other medical supplies

22 and services;

23     3.   Funeral and burial expenses;

24     4.   Loss of income incurred and to be incurred according to

25 proof;

26     5.   For interest provided by law including, but not limited

27 to, California Civil Code, Section 3291;

28

---

17

Complaint for Damages

1    6. Costs of suit; and,

2    7. Such further relief as the Court deems just and

3  proper.

4  As to the Fifth Cause of Action:

5    1.  General damages in an amount according to proof;

6    2.  Sums incurred and to be incurred for services of

7  hospitals, physicians, surgeons, nurses and other professional

8  services, ambulance service, x-rays and other medical supplies

9  and services;

10    3. Funeral and burial expenses;

11    4. Damages for loss of love, companionship, comfort,

12  affection, society, solace and moral support;

13    5. Loss of income incurred and to be incurred according to

14  proof;

15    6. Interest provided by law including, but not limited to,

16  California *Civil Code*, Section 3291;

17    7. Costs of suit; and,

18    8. For such other and further relief as the court deems

19  just and proper.

20  As to the Sixth Cause of Action:

21    1. General damages in an amount according to proof;

22    2. Sums incurred and to be incurred for services of

23  hospitals, physicians, surgeons, nurses and other professional

24  services, ambulance service, x-rays and other medical supplies

25  and services;

26    3.  Interest provided by law including, but not limited

27  to, California Civil Code § 3291;

28

---

1       4. Costs of suit; and,

2       5. Such further relief as the Court deems just and

3 proper.

4 As to the Seventh Cause of Action:

5       1.  General damages according to proof;

6       2.  Exemplary damages;

7       3.  Sums incurred and to be incurred for services of

8 hospitals, physicians, surgeons, nurses and other professional

9 services, ambulance service, x-rays and other medical supplies

10 and services;

11      4.  Interest provided by law including, but not limited

12 to, California Civil Code § 3291;

13      5.  Attorney fees under Welfare & Institutions Code

14 §15657(a);

15      6.  Costs of suit; and,

16      7.  Such further relief as the Court deems just and

17 proper.

18 As to the Eighth Cause of Action:

19      1.  General damages in an amount according to proof;

20      2.  Sums incurred and to be incurred for services of

21 hospitals, physicians, surgeons, nurses and other professional

22 services, ambulance service, x-rays and other medical supplies

23 and services;

24      3.  Interest provided by law including, but not limited

25 to, California Civil Code §3291;

26      4.  Costs of suit; and,

27 ///

28

---

1      5.   Such further relief as the Court deems just and

2  proper.

3  Dated: January 11, 2008

_____

4                                    BERNARD R. LAFER
                                     Attorney for Plaintiffs

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
STREET ADDRESS:    330 West Broadway
MAILING ADDRESS:    330 West Broadway
CITY AND ZIP CODE:    San Diego, CA 92101
BRANCH NAME:    Central
TELEPHONE NUMBER: (619) 685-6022

PLAINTIFF(S) / PETITIONER(S):    Franziska I. Collier, individually and as Administrator of the Estate of Edgar T. Collier, Deceased

DEFENDANT(S) / RESPONDENT(S): Paradise Hills Convalescent Center et.al.

FRANZISKA I. COLLIER, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF EDGAR T. COLLIER,

| NOTICE OF CASE ASSIGNMENT | CASE NUMBER: |
| | 37-2007-00075145-CU-MM-CTL |

Judge:  Charles R. Hayes                          Department: C-66

**COMPLAINT/PETITION FILED: 09/17/2007**

### CASES ASSIGNED TO THE PROBATE DIVISION ARE NOT REQUIRED TO COMPLY WITH THE CIVIL REQUIREMENTS LISTED BELOW

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT).

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

**TIME STANDARDS:** The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time. General civil consists of all cases except: Small claims appeals, petitions, and unlawful detainers.

**COMPLAINTS:** Complaints must be served on all named defendants, and a CERTIFICATE OF SERVICE (SDSC CIV-345) filed within 60 days of filing. This is a mandatory document and may not be substituted by the filing of any other document.

**DEFENDANT'S APPEARANCE:** Defendant must generally appear within 30 days of service of the complaint. (Plaintiff may stipulate to no more than a 15 day extension which must be in writing and filed with the Court.)

**DEFAULT:** If the defendant has not generally appeared and no extension has been granted, the plaintiff must request default within 45 days of the filing of the Certificate of Service.

THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO LITIGATION, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. MEDIATION SERVICES ARE AVAILABLE UNDER THE DISPUTE RESOLUTION PROGRAMS ACT AND OTHER PROVIDERS. SEE ADR INFORMATION PACKET AND STIPULATION.

YOU MAY ALSO BE ORDERED TO PARTICIPATE IN ARBITRATION PURSUANT TO CCP 1141.10 AT THE CASE MANAGEMENT CONFERENCE. THE FEE FOR THESE SERVICES WILL BE PAID BY THE COURT IF ALL PARTIES HAVE APPEARED IN THE CASE AND THE COURT ORDERS THE CASE TO ARBITRATION PURSUANT TO CCP 1141.10. THE CASE MANAGEMENT CONFERENCE WILL BE CANCELLED IF YOU FILE FORM SDSC CIV-359 PRIOR TO THAT HEARING

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SAN DIEGO | FOR COURT USE ONLY |
|---|---|
| STREET ADDRESS:        330 West Broadway | |
| MAILING ADDRESS:      330 West Broadway | |
| CITY, STATE, & ZIP CODE: San Diego, CA  92101-3827 | |
| BRANCH NAME:           Central | |

| PLAINTIFF(S):  Franziska I. Collier, individually and as Administrator of the Estate of Edgar T. Collier, Deceased |
|---|
| DEFENDANT(S): Paradise Hills Convalescent Center et.al. |
| SHORT TITLE:   FRANZISKA I. COLLIER, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF EDGAR T. COLLIER, DECEASED VS. PARADIS |

| STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION PROCESS (CRC 3.221) | CASE NUMBER: 37-2007-00075145-CU-MM-CTL |
|---|---|

Judge: Charles R. Hayes                                                    Department: C-66

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative  dispute resolution process. Selection of any of these options will not delay any case management time-lines.

☐ Court-Referred Mediation Program            ☐ Court-Ordered Nonbinding Arbitration

☐ Private Neutral Evaluation                       ☐ Court-Ordered Binding Arbitration (Stipulated)

☐ Private Mini-Trial                                    ☐ Private Reference to General Referee

☐ Private Summary Jury Trial                       ☐ Private Reference to Judge

☐ Private Settlement Conference with Private Neutral    ☐ Private Binding Arbitration

☐ Other (specify): _____

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: (Name)    _____

_____

_____

Alternate: (mediation & arbitration only)    _____

Date: _____            Date: _____

Name of Plaintiff _____            Name of Defendant _____

Signature _____           Signature _____

Name of Plaintiff's Attorney _____           Name of Defendant's Attorney _____

Signature _____           Signature _____

(Attach another sheet if additional names are necessary). It is the duty of the parties to notify the court of any settlement pursuant to California Rules of Court, 3.1385. Upon notification of the settlement the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court and all un-served, non-appearing or actions by names parties are dismissed.

IT IS SO ORDERED.

Dated:  09/17/2007                            _____

                                                JUDGE OF THE SUPERIOR COURT

3

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

CASE NUMBER: 37-2007-00075145-CU-MM-CTL      CASE TITLE: Franziska I. Collier, individually and as Administrator of the E

## NOTICE TO LITIGANTS/ADR INFORMATION PACKAGE

You are required to serve a copy of this Notice to Litigants/ADR Information Package and a copy of the blank Stipulation to Alternative Dispute Resolution Process (received from the Civil Business Office at the time of filing) with a copy of the Summons and Complaint on all defendants in accordance with San Diego Superior Court Rule 2.1.5, Division II and CRC Rule 201.9.

### ADR POLICY

It is the policy of the San Diego Superior Court to strongly support the use of Alternative Dispute Resolution ("ADR") in all general civil cases. The court has long recognized the value of early case management intervention and the use of alternative dispute resolution options for amenable and eligible cases. The use of ADR will be discussed at all Case Management Conferences. It is the court's expectation that litigants will utilize some form of ADR – i.e. the court's mediation or arbitration programs or other available private ADR options as a mechanism for case settlement before trial

### ADR OPTIONS

1) **CIVIL MEDIATION PROGRAM:** The San Diego Superior Court Civil Mediation Program is designed to assist parties with the early resolution of their dispute. All general civil independent calendar cases, including construction defect, complex and eminent domain cases are eligible to participant in the program. Limited civil collection cases are not eligible at this time. San Diego Superior Court Local Rule 2.31, Division II addresses this program specifically. Mediation is a non- binding process in which a trained mediator 1) facilitates communication between disputants, and 2) assists parties in reaching a mutually acceptable resolution of all or part of their dispute. In this process, the mediator carefully explores not only the relevant evidence and law, but also the parties' underlying interests, needs and priorities. The mediator is not the decision-maker and will not resolve the dispute – the parties do. Mediation is a flexible, informal and confidential process that is less stressful than a formalized trial. It can also save time and money, allow for greater client participation and allow for more flexibility in creating a resolution.

**Assignment to Mediation, Cost and Timelines:** Parties may stipulate to mediation at any time up to the CMC or may stipulate to mediation at the CMC. Mediator fees and expenses are split equally by the parties, unless otherwise agreed. Mediators on the court's approved panel have agreed to the court's payment schedule for county-referred mediation: $150.00 per hour for each of the first two hours and their individual rate per hour thereafter. Parties may select any mediator, however, the court maintains a panel of court-approved mediators who have satisfied panel requirements and who must adhere to ethical standards. All court-approved mediator fees and other policies are listed in the Mediator Directory at each court location to assist parties with selection. **Discovery:** Parties do not need to conduct full discovery in the case before mediation is considered, utilized or referred. **Attendance at Mediation:** Trial counsel, parties and all persons with full authority to settle the case must personally attend the mediation, unless excused by the court for good cause.

2) **JUDICIAL ARBITRATION:** Judicial Arbitration is a binding or non-binding process where an arbitrator applies the law to the facts of the case and issues an award. The goal of judicial arbitration is to provide parties with an adjudication that is earlier, faster, less formal and less expensive than trial. The arbitrator's award may either become the judgment in the case if all parties accept or if no trial de novo is requested within the required time. Either party may reject the award and request a trial de novo before the assigned judge if the arbitration was non-binding. If a trial de novo is requested, the trial will usually be scheduled within a year of the filing date.

**Assignment to Arbitration, Cost and Timelines:** Parties may stipulate to binding or non-binding judicial arbitration or the judge may order the matter to arbitration at the case management conference, held approximately 150 days after filing, if a case is valued at under $50,000 and is "at issue". The court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience. In addition, if parties select an arbitrator from the court's panel, the court will pay the arbitrator's fees. Superior Court

**3) SETTLEMENT CONFERENCES:** The goal of a settlement conference is to assist the parties in their efforts to negotiate a settlement of all or part of the dispute. Parties may, at any time, request a settlement conference before the judge assigned to their case; request another assigned judge or a pro tem to act as settlement officer; or may privately utilize the services of a retired judge. The court may also order a case to a mandatory settlement conference prior to trial before the court's assigned Settlement Conference judge.

**4) OTHER VOLUNTARY ADR:** Parties may voluntarily stipulate to private ADR options outside the court system including private binding arbitration, private early neutral evaluation or private judging at any time by completing the "Stipulation to Alternative Dispute Resolution Process" which is included in this ADR package. Parties may also utilize mediation services offered by programs that are partially funded by the county's Dispute Resolution Programs Act. These services are available at no cost or on a sliding scale based on need. For a list of approved DRPA providers, please contact the County's DRPA program office at (619) 238-2400.

**ADDITIONAL ADR INFORMATION:** For more information about the Civil Mediation Program, please contact the Civil Mediation Department at (619) 515-8908. For more information about the Judicial Arbitration Program, please contact the Arbitration Office at (619) 531-3818. For more information about Settlement Conferences, please contact the Independent Calendar department to which your case is assigned. Please note that staff can only discuss ADR options and cannot give legal advice.

2nd AMENDED

## SUMMONS
### (CITACION JUDICIAL)

**SUM-100**

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
PARADISE HILLS CONVALESCENT CENTER, a business
entity, form unknown; DR. GAYNSKI; DR. C. ARAMBULO;
KAISER FOUNDATION HOSPITALS; SOUTHERN CALIFORNIA
PERMANENTE MEDICAL GROUP; KAISER FOUNDATION HEALTH
PLAN, INC; and DOES 1 through 100, inclusive

CIVIL

08 APR -3 AM 9: 42

CLK RECEIVED
SAN DIEGO COUNTY, CA

MAY 16 2008

DAVID J. LERMAN, M.D.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTA DEMANDANDO EL DEMANDANTE):*
FRANZISKA I. COLLIER, individually, and as
Administrator of the Estate of EDGAR T. COLLIER,
Deceased; KEA JADE COLLIER, a Minor, by her Guardian
Ad Litem MICHAEL HYDE

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF SAN DIEGO<br>330 West Broadway<br>San Diego, CA 92101<br>Central Division | CASE NUMBER:<br>*(Número del Caso):*<br>37-2007-00075145-CU-MM-CT |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
BERNARD R. LAFER, ESQ. #122645            619-298-1969      619-298-7784
7801 Mission Center Court
Suite 430
San Diego, CA 92108

DATE:                                              Clerk, by  **B. Orihuela**                    , Deputy
*(Fecha)* **APR 03 2008**              *(Secretario)*                                   *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. [ ]  as an individual defendant.
2. [ ]  as the person sued under the fictitious name of *(specify):*

3. [ ]  on behalf of *(specify):*

   under: [ ] CCP 416.10 (corporation)       [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)  [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
          [ ] other *(specify):*
4. [ ]  by personal delivery on *(date):*

CAL'D 5/21/06 MA

RESPONSE 6/13/06   2576

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Page 1 of 1

Code of Civil Procedure §§ 412.20, 485

Legal Solutions Plus



**CORPORATION SERVICE COMPANY®**

# Notice of Service of Process

MIW / ALL
Transmittal Number: 5780587
Date Processed: 05/15/2008

| | |
|---|---|
| Primary Contact: | Jenelle Flewellen<br>Kaiser Foundation Hospitals<br>One Kaiser Plaza<br>Floor 19L<br>Oakland, CA 94612-3610 |
| Copy of transmittal only provided to: | Sally Hitchcock<br>GAIL PERRIN<br>Tricia Neesen<br>Barbara Frazier |

| | |
|---|---|
| Entity: | Kaiser Foundation Health Plan, Inc.<br>Entity ID Number 0460146 |
| Entity Served: | Kaiser Foundation Health Plan, Inc. |
| Title of Action: | Franziska I. Collier vs. Paradise Hills Convalescent Center |
| Document(s) Type: | Summons and Amended Complaint |
| Nature of Action: | Wrongful Death |
| Court: | San Diego Superior Court, California |
| Case Number: | 37-2007-00075145-CU-MM-CT |
| Jurisdiction Served: | California |
| Date Served on CSC: | 05/15/2008 |
| Answer or Appearance Due: | 30 Days |
| Originally Served On: | CSC |
| How Served: | Personal Service |
| Plaintiff's Attorney: | Bernard R. Lafer<br>619-298-1969 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

*CSC is SAS70 Type II certified for its Litigation Management System.*

2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscinfo.com

1  BERNARD R. LAFER, ESQ. SBN 122645
   7801 Mission Center Court
2  Suite 430
   San Diego, CA  92108
3  Tel: (619) 298-1969
   Fax: (619) 298-7784

4                                          F I L E D
                                    Clerk of the Superior Court
5  Attorney for Plaintiffs
   FRANZISKA I. COLLIER and                APR 0 3 2008
6  KEA JADE COLLIER, a Minor
                                        By: D. LIM, Deputy
7

8                SUPERIOR COURT OF CALIFORNIA

9                   COUNTY OF SAN DIEGO

10

11 FRANZISKA I. COLLIER, individually,)   CASE NO: 37-2007-
   and as Administrator of the Estate )   00075145-CU-MM-CTL
12 of Edgar T. Collier, Deceased;     )
   KEA JADE COLLIER, a Minor, by her  )   **SECOND AMENDED**
13 Guardian Ad Litem MICHAEL HYDE,    )   COMPLAINT FOR DAMAGES:
                                      )   MEDICAL NEGLIGENCE/
14                                    )   WRONGFUL DEATH; BREACH
                                      )   OF FIDUCIARY DUTY;
15            Plaintiffs,             )   VIOLATION OF STATUTE;
      v.                              )   BREACH OF CONTRACT;
16                                    )   BREACH OF COVENANT OF
   PARADISE HILLS CONVALESCENT        )   GOOD FAITH AND FAIR
17 CENTER, a business entity,         )   DEALING; NEGLIGENT
   form unknown; DR. GAYNSKI;         )   HIRING, TRAINING, AND
18 DR. C. ARAMBULO; KAISER            )   SUPERVISION; INTENTIONAL
   FOUNDATION HOSPITALS; SOUTHERN     )   INFLICTION OF EMOTIONAL
19 CALIFORNIA PERMANENTE MEDICAL      )   DISTRESS; NEGLIGENT
   GROUP; KAISER FOUNDATION HEALTH    )   INFLICTION OF EMOTIONAL
20 PLAN, INC.; and DOES 1 through     )   DISTRESS
   100, inclusive,                    )
21                                    )
              Defendants.             )   [W&I Code §15610, et seq.]
22 _____   )      (Elder Abuse)

23      Plaintiffs FRANZISKA I. COLLIER, individually, and as

24 Administrator of the Estate of Edgar T. Collier, Deceased, and

25 KEA JADE COLLIER, a Minor by her Guardian Ad Litem MICHAEL

26 HYDE, allege as follows:

27                   GENERAL ALLEGATIONS

28      1.  Plaintiff FRANZISKA I. COLLIER, at all times

                              1
                    Complaint for Damages

1  mentioned herein is, and was, the wife of Decedent Edgar T.

2  Collier, a resident of the City and County of San Diego, State

3  of California, Parent of KEA JADE COLLIER, a Minor, and

4  Administrator of the Estate of EDGAR T. COLLIER, Deceased.

5  **MICHAEL HYDE is guardian ad litem of KEA JADE COLLIER, a Minor.**

6      2.  At all relevant times mentioned herein, Decedent

7  Edgar T. Collier was over the age of 65 and at the time of his

8  death, was 66 years of age.

9      3.  At all times herein mentioned, Defendant PARADISE

10 HILLS CONVALESCENT CENTER, ("CENTER") a business entity, form

11 unknown, was and is in the business of providing long-term care

12 as a 24-hour health facility as defined in section 1250(c) of

13 the Health & Safety Code, and was at all times mentioned doing

14 business in the City and County of San Diego, in the State of

15 California.

16      4.  Upon information and belief, and at all times

17 mentioned, Defendants CENTER and DOES 1 through 100, were

18 licensed and unlicensed health care providers, rendering health

19 care as a skilled nursing facility, and in the capacities of

20 Director of Nursing, Medical Director, Administrator, or

21 otherwise, to patients at CENTER, including Edgar T. Collier,

22 deceased.

23      5.  At all times herein mentioned, Defendants KAISER

24 FOUNDATION HOSPITALS, SOUTHERN CALIFORNIA PERMANENTE MEDICAL

25 GROUP, and KAISER FOUNDATION HEALTH PLAN, INC., ("KAISER") were

26 inter-related health care providers licensed by the State of

27 California to provide health care, and during all relevant

28

times mentioned herein were so engaged in San Diego, California.

6. At all times mentioned, Defendants KAISER and DOES 1 through 100, were licensed and unlicensed health care providers rendering health care as a skilled hospital facility, and in the capacities of Medical Director, Administrator, or otherwise, to patients at CENTER, including Edgar T. Collier, deceased.

7. At all times herein mentioned, Defendant GAYNSKI, first name unknown, was a physician licensed by the State of California to practice medicine and was engaged in the practice of medicine in San Diego, California.

8. At all times herein mentioned, Defendant C. ARAMBULO, first name unknown, was a physician licensed by the State of California to practice medicine and was engaged in the practice of medicine in San Diego, California.

9. Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 100, inclusive, and therefore sue those Defendants by these fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained.

10. Plaintiffs are informed and believe, and thereon allege, that each of the Defendants fictitiously named is responsible in some manner for the acts hereinafter alleged, and that Plaintiffs' damages, as set forth herein, were proximately caused by the acts of these Defendants, and each of them, as set forth herein.

1       11.   Plaintiffs further allege, on information and

2   belief, that at all times herein mentioned, DOES 1 through 100,

3   inclusive, were the agents and employees of the named

4   Defendants, and each of them, and in doing the things herein-

5   after mentioned were acting within the scope of their authority

6   as such agents and employees and with the permission and

7   consent of their respective principals and employers.

8       12.   On or about July 15, 2006, Edgar T. Collier became

9   a resident patient of CENTER and remained at that facility

10  through and including July 20, 2006, and at all times relevant,

11  was in the care and custody of Defendants.  Edgar T. Collier

12  was 66 at his death on July 20, 2006, and was 65 or older at

13  all times relevant to this action.  Accordingly, under the

14  provisions of Welfare & Institutions Code section 15610.27,

15  while a patient at CENTER, he was at all times mentioned an

16  "elder."  At all times herein mentioned, Plaintiff FRANZISKA

17  observed the conditions under which Decedent suffered, and paid

18  money to Defendants for his care and treatment.

19             FIRST CAUSE OF ACTION

20  (Medical Negligence/Wrongful Death - Against CENTER & ARAMBULO)

21       13:   Plaintiffs repeat the allegations contained in

22  paragraphs 1 through 12 of this Complaint and incorporate them

23  herein as if set forth in full.

24       14.   Beginning on July 15, 2006 and until July 20, 2006,

25  Decedent was a resident patient of CENTER.  Defendants CENTER,

26  DR. ARAMBULO, and DOES 1 through 100, and each of them, under-

27  took the care, treatment and examination of the Decedent, and

28

4
Complaint for Damages

1 were entrusted with his care, maintenance, hygiene, nutrition,
2 health and overall well being.

3     15. At the time and place aforesaid, these Defendants
4 so negligently, carelessly, recklessly, and unlawfully super-
5 vised, treated, handled, and cared for Decedent as to directly
6 and proximately cause him to develop serious sores over his
7 body and other serious injuries. As a direct result of said
8 injuries, Edgar T. Collier died on July 20, 2006.

9     16. At all times mentioned herein and prior thereto,
10 CENTER and DOES 1-100, were negligent in failing to ascertain
11 the competence of their medical staff, including but not
12 limited to, ARAMBULO, through careful selection and review.
13 Said Defendants were also negligent in failing to carefully
14 evaluate the quality of the medical treatment being rendered on
15 their premises and/or by their contracting and/or employed
16 physicians and medical or physician groups prior to July 15,
17 2006 and thereafter. Such negligence created an unreasonable
18 risk of harm to patients, including Edgar T. Collier, thereby
19 causing or contributing to his death on July 20, 2006.

20     17. At said time and place, as aforesaid, Defendants,
21 and each of them, so negligently, carelessly, recklessly,
22 wantonly, and unlawfully treated, provided medical care,
23 information, monitoring, examination, surgery, diagnosis and
24 other medical services, so as to directly and proximately cause
25 death to Decedent. Defendants and each of them specifically
26 failed to diagnose Decedent's condition as a staph infection
27 and informed Plaintiff FRANZISKA that his continuing diarrhea
28

---

5

Complaint for Damages

1    was simply a side effect of the antibiotics he had been given.

2    Their failure to diagnose and properly treat the staph

3    infection resulted in Edgar Collier's death.

4        18.  As a direct and proximate result of the conduct of

5    the Defendants, and each of them, and of the death of Edgar T.

6    Collier, FRANZISKA and her minor child KEA JADE COLLIER have

7    been deprived of the love, companionship, comfort, affection,

8    society, solace and moral support of said Decedent and have

9    been caused the loss of future services, earnings and

10   protection of said husband and father, to their great loss and

11   damage in an amount to be shown according to proof.

12       19.  As a direct and proximate result of the conduct of

13   CENTER, ARAMBULO and DOES 1-100 and each of them, and the

14   resulting death, as aforesaid, Plaintiff FRANZISKA I. COLLIER,

15   has been compelled to incur funeral/burial expenses as well as

16   other special damages, all to her damage, in an amount to be

17   shown according to proof.

18   SECOND CAUSE OF ACTION

19   (Breach of Fiduciary Duty - Against All Defendants)

20       20.  Plaintiffs repeat the allegations contained in

21   paragraphs 1 through 19 of this Complaint and incorporate them

22   herein as if set forth in full.

23       21.  In contracting with Defendants CENTER, KAISER,

24   GAYNSKI, ARAMBULO and DOES 1 through 100, Defendants had a

25   fiduciary duty to Decedent to ensure that he received reason-

26   able, necessary and competent health care.

27       22.  Plaintiffs are informed and believe, and thereon

28

1  allege, that Defendants and DOES 1-100, and each of them,

2  breached the above-mentioned fiduciary duty in that they made

3  decisions regarding Decedent's medical care and treatment

4  because of their own economic interests and contrary to his

5  best interests, in that Decedent was denied reasonable,

6  necessary and appropriate services, thereby proximately and

7  directly causing the injuries and damages set forth below.

8      23.  As a direct and proximate result of the negligence,

9  carelessness, recklessness, wantonness, and unlawfulness of the

10  Defendants and each of them, and the resulting death, injuries

11  and damages, as aforesaid, Decedent sustained severe and

12  serious injury to his person, all to his damage in a sum within

13.  the jurisdiction of this court and to be shown according to

14  proof.

15      24.  As a direct and proximate result of the conduct of

16  the Defendants, and each of them, and of the death of Edgar T.

17  Collier, Plaintiffs have been deprived of the love, companion-

18  ship, comfort, affection, society, solace and moral support of

19  said decedent and have been caused the loss of future services,

20  earnings and protection of said husband and father, to their

21  great loss and damage in an amount to be shown according to

22  proof.

23      25.  As a direct and proximate result of the breach of

24  contract by Defendants, and each of them, and the resulting

25  death, as aforesaid, FRANZISKA has been compelled to incur

26  funeral/burial expenses as well as other special damages, all

27  to the damage of the Plaintiffs, in an amount to be shown

28

---

1  according to proof.

2  THIRD CAUSE OF ACTION

3  (Violation of Statute - Against All Defendants)

4  26.  Plaintiffs repeat the allegations contained in

5  paragraphs 1 through 25 of this Complaint and incorporate them

6  herein as if set forth in full.

7  27.  Decedent had been a patient of KAISER and under the

8  care and treatment of GAYNSKI from July 4, 2006 through July

9  15th, when he was transferred to CENTER for nursing and

10  convalescent services.

11  28. Since Collier was a resident and patient of CENTER,

12  ARAMBULO, and the DOE Defendants, and prior to July 15, 2006

13  had been under the care, supervision, and treatment of KAISER,

14  GAYNSKI, and the DOE Defendants, each of these Defendants had a

15  duty under federal and state regulations (which were designed

16  for the protection and benefit of resident patients like

17  Collier) to provide for his care, comfort and safety.  Without

18  limiting the generality of the foregoing, Defendants had a duty

19  to, among other things:

20  a. follow, implement and adhere to all physician orders;

21  b. monitor and record Collier's condition, and to report

22  meaningful changes therein to the attending physician;

23  c. establish and implement a patient care plan for Collier

24  based upon and including without limitation an ongoing process

25  of identifying his care needs;

26  d. examine and diagnose Collier's medical condition;

27  e. accord to Collier an individual's dignity and respect,

28

8
Complaint for Damages

1  and not to subject him to abuse or neglect;

2      f. properly and accurately administer medication;

3      g. maintain nursing and other staffing at levels adequate

4  to meet his needs;

5      h. provide Collier with good nutrition and with necessary

6  fluids for hydration;

7      .i. answer Collier's requests for assistance;

8      j. provide competent nursing and other staffing who

9  understood and spoke English; and

10     k. perform these services and administer tests in a timely

11  manner.

12      29. During the period of his residence at CENTER, and

13  under his care and treatment by KAISER and its medical

14  personnel, and up to and including his death on July 20, 2006,

15  Defendants, and each of them, breached their duties to Collier.

16  These breaches were intentional and in reckless disregard for

17  the probability that severe injury would result from their

18  failure to carefully adhere to their duties. Defendants knew or

19  should have known that there was a probability that injury

20  would result from the failure to adhere to their duties. In

21  particular, and without limiting the generality of the

22  foregoing, Defendants, and each of them, intentionally (and

23  with deliberate indifference to Collier's health and safety)

24  failed to provide the services aforementioned in paragraph 28.

25  Defendants' conduct, as aforesaid, constitutes physical abuse

26  as defined in <u>Welfare and Institutions Code</u> section 15610.63(d)

27  and (f), and/or neglect as defined in <u>Welfare and Institutions</u>

28

1    Code section 15610.57.

2        30. In doing the things herein alleged, all of the

3    Defendants and DOES 1 through 100, and each of them, acted

4    recklessly and were grossly negligent.

5        31. By reason of the foregoing, Defendants violated

6    California statutes, including but not limited to Welfare and

7    Institutions Code sections 15610.57 and 15610.63(d) and (f).

8        32.  As a direct and proximate result of the Defendants'

9    violation of statute, as aforesaid, Collier sustained severe

10   and serious injury to his person which resulted in death,

11   including, but not limited to, severe emotional distress, all

12   to Plaintiffs' and Collier's damage in a sum within the

13   jurisdiction of this court and to be shown according to proof.

14       33.  By reason of the foregoing, FRANZISKA and Collier

15   were required to employ the services of hospitals, physicians,

16   surgeons, nurses and other professional services, and were

17   compelled to incur expenses for ambulance service, medicines,

18   X-rays, and other medical supplies and services.

19                    FOURTH CAUSE OF ACTION

20          (Breach of Contract - Against All Defendants)

21       34.  Plaintiffs incorporate by reference each and every

22   allegation contained in paragraphs 1 through 33, inclusive, as

23   though fully set forth herein.

24       35.  Plaintiffs are informed and believe, and thereon

25   allege, through all relevant times herein mentioned, there

26   existed written agreements for the provision of health care

27   services between Defendants and DOES 1-100. Said agreement

28

1  provided, among other things, that Defendants were obligated to
2  make decisions concerning the nature and extent of Collier's
3  medical care and treatment.  Said contract further provided
4  that Defendants, and each of them, were to ensure that Collier
5  was provided with reasonable, necessary and appropriate medical
6  care by Defendants and DOES 1 through 100 in a timely manner.

7      36.  Plaintiffs are informed and believe that at all
8  times herein mentioned, FRANZISKA and Decedent acted and dealt
9  with Defendants in good faith and performed all of their
10 obligations under the subject agreement.

11     37. FRANZISKA is entitled to restitution of all funds
12 paid to Defendants on Decedent's behalf.

13     38.  Plaintiffs are entitled to attorney fees under the
14 provisions of Code of Civil Procedure section 1021.5 and
15 Welfare & Institutions Code section 15657.(a).

16                   FIFTH CAUSE OF ACTION

17     (Breach of Covenant of Good Faith and Fair Dealing -
18                   Against All Defendants)

19     39.  Plaintiffs incorporate by reference each and every
20 allegation contained in paragraphs 1 through 38, inclusive, as
21 though fully set forth herein.

22     40.  Pursuant to the agreement referenced above, there
23 existed at relevant times herein mentioned a Covenant of Good
24 Faith and Fair Dealing between Plaintiffs, Decedent, and all
25 Defendants, as Plaintiffs were intended beneficiaries of the
26 contracts with Defendants, and were third-party beneficiaries
27 of the contracts between those parties.

28     41.  Plaintiffs are informed and believe, and thereon

1  allege, that Defendants, and each of them, breached the
2  covenant of good faith and fair dealing in that they made
3  decisions regarding Collier's medical care and treatment
4  because of their own economic interests and contrary to his
5  best interests, in that Decedent was denied reasonable,
6  necessary and appropriate services, thereby proximately and
7  directly causing his death, as well as the injuries and damages
8  set forth herein.

9      42.  As a direct and proximate result of the breach of
10 the covenant of good faith and fair dealing of the Defendants
11 and each of them, Collier sustained severe and serious injury
12 resulting in his death, all to Plaintiffs' damage in an amount
13 within the jurisdiction of this court and to be shown according
14 to proof.

15     43.  As a direct and proximate result of the conduct of
16 the Defendants, and each of them, and of the death of Collier,
17 Plaintiffs have been deprived of the love, companionship,
18 comfort, affection, society, solace and moral support of said
19 decedent and the loss of his future services, earnings and
20 protection, to their great loss and damage in an amount to be
21 shown according to proof.

22              SIXTH CAUSE OF ACTION

23 (Negligent Hiring, Training, and Supervision of Health Care
24                Personnel - Against CENTER)

25     44.  Plaintiffs incorporate by reference each and every
26 allegation contained in paragraphs 1 through 43, inclusive, as
27 though fully set forth herein.

28     45.  Defendants CENTER and DOES 1-100 have a duty of due.

---

1  care in the hiring, training, and supervision of its employees.
2  Defendants have a further duty of due care to investigate the
3  background of their employees, especially in light of the
4  particular risk or hazard that the breach of that duty poses to
5  elders within Defendants' care. Defendants breached their duty
6  in that, among other things:

7      a. they knew or had reason to know that various DOES 1-100
8  were incompetent and unfit employees;

9      b. they knew or had reason to know that various DOES 1-
10  100, because of their qualities, were likely to harm patients
11  under their care;

12      c. they knew or had reason to know that various DOES 1-
13  100, were incompetent as employees because of their reckless or
14  vicious dispositions;

15      d. they failed to exercise due care in the interviewing,
16  selection, training and supervision of various DOES 1-100, such
17  that the employment necessarily brought them in contact with
18  patients, including Collier, in the performance of their
19  duties;

20      e. they knew or had reason to know that various DOES 1-100
21  had a history of or propensity to abuse elders and would in
22  fact engage in such abuse if brought in contact with elderly
23  patients.  Despite the foregoing, Defendants CENTER and DOES 1-
24  100 negligently, recklessly and carelessly permitted unquali-
25  fied health care personnel, to have contact with Collier in the
26  course of their employment, including personnel who did not
27  comprehend or speak English.

28

---

46. As a direct and proximate result of the acts of Defendants, as aforesaid, Collier sustained severe and serious injury to his person, and Plaintiffs sustained severe emotional distress and other damages, all to their respective damage in an amount within the jurisdiction of this court and to be shown according to proof.

47. By reason of the foregoing, FRANZISKA and Collier have been required to employ the services of hospitals, physicians, surgeons, nurses and other professional services, and were compelled to incur expenses for ambulance service, medicines, X-rays, and other medical supplies and services.

SEVENTH CAUSE OF ACTION

(Intentional Infliction of Emotional Distress -
Against All Defendants)

48. Plaintiffs hereby incorporate by reference paragraphs 1 through 47 of this Complaint as though fully set forth herein.

49. Defendants' conduct was intentional and malicious and done for the purpose of causing Plaintiffs and Collier to suffer mental anguish, and emotional and physical distress. Defendants' conduct in confirming and ratifying that conduct was done with knowledge that their emotional and physical distress would thereby increase, and was done with wanton and reckless disregard of the consequences to Plaintiffs and Collier.

50. As the proximate result of the aforementioned acts, Plaintiffs and Collier suffered severe emotional and mental distress, including but not limited to frustration, depression,

14
Complaint for Damages

nervousness, and anxiety and have thereby incurred general and
exemplary damages in an amount to be determined at trial.

### EIGHTH CAUSE OF ACTION

#### (Negligent Infliction of Emotional Distress - Against All Defendants)

51.   Plaintiffs hereby incorporate by reference
paragraphs 1 through 50 of this Complaint as though fully set
forth herein.

52.   Defendants, and each of them, knew that their acts
and those of their employees would cause Plaintiffs and Collier
severe emotional distress, and had the duty of exercising
reasonable care so that their acts would not cause them such
distress.

53.   In violation of said duty, Defendants, and each of
them, failed to exercise reasonable care, and as a proximate
result of their breach of duty as aforementioned, caused
outrageous and severe emotional distress to Plaintiffs and
Collier.

54.   Wherefore, Plaintiffs demand compensatory damages
from Defendants and each of them for damages for emotional
distress on behalf of Plaintiffs in an amount to be determined
at trial.

WHEREFORE, Plaintiffs demand judgment against Defendants,
and each of them, as follows:

As to the First Cause of Action:

1.   General damages according to proof;

2.   Sums incurred and to be incurred for services of
hospitals, physicians, surgeons, nurses and other professional

services, ambulance service, x-rays and other medical supplies and services;

3.  Special damages, according to proof, not limited to medical, hospital, and related expenses;

4.  Funeral and burial expenses;

5.  Damages for loss of love, companionship, comfort, affection, society, solace and moral support;

6.  Loss of income incurred and to be incurred according to proof;

7.  Interest provided by law including, but not limited to, California *Civil Code*, Section 3291;

8.  Costs of suit; and

9.  Such other and further relief as the court deems just and proper.

As to the Second Cause of Action:

1.  General damages according to proof;

2.  Sums incurred and to be incurred for services of hospitals, physicians, surgeons, nurses and other professional services, ambulance service, x-rays and other medical supplies and services;

3.  Funeral and burial expenses;

4.  Loss of income incurred and to be incurred according to proof;

5.  Interest provided by law including, but not limited to, California *Civil Code*, Section 3291;

6.  Costs of suit; and

7.  Such other and further relief as the court deems just

Complaint for Damages

1  and proper.

2  As to the Third Cause of Action:

3      1.   General damages in an amount according to proof;

4      2.   Sums incurred for services of hospitals, physicians,

5  surgeons, nurses and other medical supplies and services;

6      3.   Treble damages pursuant to Civil Code §3345;

7      4.   Interest provided by law including, but not limited

8  to, California Civil Code § 3291;

9      5.   Damages equal to the profit realized from Defendants'

10 conduct, as alleged, and for prejudgment interest thereon

11 according to law;

12     6.   Attorney fees under Welfare & Institutions Code

13 §15657(a);

14     7.   Costs of suit; and

15     8.   Such further relief as the Court deems just and

16 proper.

17 As to the Fourth Cause of Action:

18     1.   General damages according to proof;

19     2.   Sums incurred and to be incurred for services to

20 hospitals, physicians, surgeons, nurses and other professional

21 services, ambulance service, x-rays and other medical supplies

22 and services;

23     3. Funeral and burial expenses;

24     4. Loss of income incurred and to be incurred according to

25 proof;

26     5. For interest provided by law including, but not limited

27 to, California Civil Code, Section 3291;

28

---

17

Complaint for Damages

6. Costs of suit; and,

7. Such further relief as the Court deems just and proper.

As to the Fifth Cause of Action:

1. General damages in an amount according to proof;

2. Sums incurred and to be incurred for services of hospitals, physicians, surgeons, nurses and other professional services, ambulance service, x-rays and other medical supplies and services;

3. Funeral and burial expenses;

4. Damages for loss of love, companionship, comfort, affection, society, solace and moral support;

5. Loss of income incurred and to be incurred according to proof;

6. Interest provided by law including, but not limited to, California *Civil Code*, Section 3291;

7. Costs of suit; and,

8. For such other and further relief as the court deems just and proper.

As to the Sixth Cause of Action:

1. General damages in an amount according to proof;

2. Sums incurred and to be incurred for services of hospitals, physicians, surgeons, nurses and other professional services, ambulance service, x-rays and other medical supplies and services;

3. Interest provided by law including, but not limited to, California Civil Code § 3291;

4. Costs of suit; and,

5. Such further relief as the Court deems just and proper.

As to the Seventh Cause of Action:

1. General damages according to proof;

2. Exemplary damages;

3. Sums incurred and to be incurred for services of hospitals, physicians, surgeons, nurses and other professional services, ambulance service, x-rays and other medical supplies and services;

4. Interest provided by law including, but not limited to, California Civil Code § 3291;

5. Attorney fees under Welfare & Institutions Code §15657(a);

6. Costs of suit; and,

7. Such further relief as the Court deems just and proper.

As to the Eighth Cause of Action:

1. General damages in an amount according to proof;

2. Sums incurred and to be incurred for services of hospitals, physicians, surgeons, nurses and other professional services, ambulance service, x-rays and other medical supplies and services;

3. Interest provided by law including, but not limited to, California Civil Code §3291;

4. Costs of suit; and,

///

1        5.   Such further relief as the Court deems just and

2    proper.

3    Dated: January 11, 2008

4                                    _____
                                     BERNARD R. LAFER
5                                    Attorney for Plaintiffs

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    20
                          Complaint for Damages

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**<br>STREET ADDRESS:      330 West Broadway<br>MAILING ADDRESS:    330 West Broadway<br>CITY AND ZIP CODE:   San Diego, CA 92101<br>BRANCH NAME:        Central<br>TELEPHONE NUMBER:  (619) 685-6022 | |

PLAINTIFF(S) / PETITIONER(S):       Franziska I. Collier, Individually and as Administrator of the Estate of Edgar T. Collier, Deceased

DEFENDANT(S) / RESPONDENT(S): Paradise Hills Convalescent Center et.al.

FRANZISKA I. COLLIER, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF EDGAR T. COLLIER,

| **NOTICE OF CASE ASSIGNMENT** | CASE NUMBER:<br>37-2007-00075145-CU-MM-CTL |
|---|---|

Judge: Charles R. Hayes                                        Department: C-66

**COMPLAINT/PETITION FILED:** 09/17/2007

### CASES ASSIGNED TO THE PROBATE DIVISION ARE NOT REQUIRED TO COMPLY WITH THE CIVIL REQUIREMENTS LISTED BELOW

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT).

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

**TIME STANDARDS:** The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time. General civil consists of all cases except: Small claims appeals, petitions, and unlawful detainers.

**COMPLAINTS:** Complaints must be served on all named defendants, and a CERTIFICATE OF SERVICE (SDSC CIV-345) filed within 60 days of filing. This is a mandatory document and may not be substituted by the filing of any other document.

**DEFENDANT'S APPEARANCE:** Defendant must generally appear within 30 days of service of the complaint. (Plaintiff may stipulate to no more than a 15 day extension which must be in writing and filed with the Court.)

**DEFAULT:** If the defendant has not generally appeared and no extension has been granted, the plaintiff must request default within 45 days of the filing of the Certificate of Service.

THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO LITIGATION, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. MEDIATION SERVICES ARE AVAILABLE UNDER THE DISPUTE RESOLUTION PROGRAMS ACT AND OTHER PROVIDERS. SEE ADR INFORMATION PACKET AND STIPULATION.

YOU MAY ALSO BE ORDERED TO PARTICIPATE IN ARBITRATION PURSUANT TO CCP 1141.10 AT THE CASE MANAGEMENT CONFERENCE. THE FEE FOR THESE SERVICES WILL BE PAID BY THE COURT IF ALL PARTIES HAVE APPEARED IN THE CASE AND THE COURT ORDERS THE CASE TO ARBITRATION PURSUANT TO CCP 1141.10. THE CASE MANAGEMENT CONFERENCE WILL BE CANCELLED IF YOU FILE FORM SDSC CIV-359 PRIOR TO THAT HEARING

**NOTICE OF CASE ASSIGNMENT**

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | FOR COURT USE ONLY |
|---|---|
| STREET ADDRESS: 330 West Broadway | |
| MAILING ADDRESS: 330 West Broadway | |
| CITY, STATE, & ZIP CODE: San Diego, CA 92101-3827 | |
| BRANCH NAME: Central | |

PLAINTIFF(S):    Franziska I. Collier, individually and as Administrator of the Estate of Edgar T. Collier, Deceased

DEFENDANT(S): Paradise Hills Convalescent Center et.al.

SHORT TITLE:    FRANZISKA I. COLLIER, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF EDGAR T. COLLIER, DECEASED VS. PARADIS

| STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION PROCESS (CRC 3.221) | CASE NUMBER: 37-2007-00075145-CU-MM-CTL |
|---|---|

Judge: Charles R. Hayes                                         Department: C-66

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution process. Selection of any of these options will not delay any case management time-lines.

☐ Court-Referred Mediation Program                   ☐ Court-Ordered Nonbinding Arbitration

☐ Private Neutral Evaluation                         ☐ Court-Ordered Binding Arbitration (Stipulated)

☐ Private Mini-Trial                                 ☐ Private Reference to General Referee

☐ Private Summary Jury Trial                         ☐ Private Reference to Judge

☐ Private Settlement Conference with Private Neutral ☐ Private Binding Arbitration

☐ Other (specify): _____

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: (Name) _____

_____

_____

Alternate: (mediation & arbitration only) _____

Date: _____                Date: _____

Name of Plaintiff                             Name of Defendant

Signature                                     Signature

Name of Plaintiff's Attorney                  Name of Defendant's Attorney

Signature                                     Signature

(Attach another sheet if additional names are necessary). It is the duty of the parties to notify the court of any settlement pursuant to California Rules of Court, 3.1385. Upon notification of the settlement the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court and all un-served, non-appearing or actions by names parties are dismissed.

**IT IS SO ORDERED.**

Dated: 09/17/2007                             _____

                                              JUDGE OF THE SUPERIOR COURT

**STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION**    Page: 1

3

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

CASE NUMBER: 37-2007-00075145-CU-MM-CTL     CASE TITLE: Franziska I. Collier, individually and as Administrator of the E

### NOTICE TO LITIGANTS/ADR INFORMATION PACKAGE

You are required to serve a copy of this Notice to Litigants/ADR Information Package and a copy of the blank Stipulation to Alternative Dispute Resolution Process (received from the Civil Business Office at the time of filing) with a copy of the Summons and Complaint on all defendants in accordance with San Diego Superior Court Rule 2.1.5, Division II and CRC Rule 201.9.

### ADR POLICY

It is the policy of the San Diego Superior Court to strongly support the use of Alternative Dispute Resolution ("ADR") in all general civil cases. The court has long recognized the value of early case management intervention and the use of alternative dispute resolution options for amenable and eligible cases. The use of ADR will be discussed at all Case Management Conferences. It is the court's expectation that litigants will utilize some form of ADR – i.e. the court's mediation or arbitration programs or other available private ADR options as a mechanism for case settlement before trial

### ADR OPTIONS

**1) CIVIL MEDIATION PROGRAM:** The San Diego Superior Court Civil Mediation Program is designed to assist parties with the early resolution of their dispute. All general civil Independent calendar cases, including construction defect, complex and eminent domain cases are eligible to participant in the program. Limited civil collection cases are not eligible at this time. San Diego Superior Court Local Rule 2.31, Division II addresses this program specifically. Mediation is a non- binding process in which a trained mediator 1) facilitates communication between disputants, and 2) assists parties in reaching a mutually acceptable resolution of all or part of their dispute. In this process, the mediator carefully explores not only the relevant evidence and law, but also the parties' underlying interests, needs and priorities. The mediator is not the decision-maker and will not resolve the dispute – the parties do. Mediation is a flexible, informal and confidential process that is less stressful than a formalized trial. It can also save time and money, allow for greater client participation and allow for more flexibility in creating a resolution.

**Assignment to Mediation, Cost and Timelines:** Parties may stipulate to mediation at any time up to the CMC or may stipulate to mediation at the CMC. Mediator fees and expenses are split equally by the parties, unless otherwise agreed. Mediators on the court's approved panel have agreed to the court's payment schedule for county-referred mediation: $150.00 per hour for each of the first two hours and their individual rate per hour thereafter. Parties may select any mediator, however, the court maintains a panel of court-approved mediators who have satisfied panel requirements and who must adhere to ethical standards. All court-approved mediator fees and other policies are listed in the Mediator Directory at each court location to assist parties with selection. **Discovery:** Parties do not need to conduct full discovery in the case before mediation is considered, utilized or referred. **Attendance at Mediation:** Trial counsel, parties and all persons with full authority to settle the case must personally attend the mediation, unless excused by the court for good cause.

**2) JUDICIAL ARBITRATION:** Judicial Arbitration is a binding or non-binding process where an arbitrator applies the law to the facts of the case and issues an award. The goal of judicial arbitration is to provide parties with an adjudication that is earlier, faster, less formal and less expensive than trial. The arbitrator's award may either become the judgment in the case if all parties accept or if no trial de novo is requested within the required time. Either party may reject the award and request a trial de novo before the assigned judge if the arbitration was non-binding. If a trial de novo is requested, the trial will usually be scheduled within a year of the filing date.

**Assignment to Arbitration, Cost and Timelines:** Parties may stipulate to binding or non-binding judicial arbitration or the judge may order the matter to arbitration at the case management conference, held approximately 150 days after filing, if a case is valued at under $50,000 and is "at issue". The court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience. In addition, if parties select an arbitrator from the court's panel, the court will pay the arbitrator's fees. Superior Court

**3) SETTLEMENT CONFERENCES:** The goal of a settlement conference is to assist the parties in their efforts to negotiate a settlement of all or part of the dispute. Parties may, at any time, request a settlement conference before the judge assigned to their case; request another assigned judge or a pro tem to act as settlement officer; or may privately utilize the services of a retired judge. The court may also order a case to a mandatory settlement conference prior to trial before the court's assigned Settlement Conference judge.

**4) OTHER VOLUNTARY ADR:** Parties may voluntarily stipulate to private ADR options outside the court system including private binding arbitration, private early neutral evaluation or private judging at any time by completing the "Stipulation to Alternative Dispute Resolution Process" which is included in this ADR package. Parties may also utilize mediation services offered by programs that are partially funded by the county's Dispute Resolution Programs Act. These services are available at no cost or on a sliding scale based on need. For a list of approved DRPA providers, please contact the County's DRPA program office at (619) 238-2400.

**ADDITIONAL ADR INFORMATION:** For more information about the Civil Mediation Program, please contact the Civil Mediation Department at (619) 515-8908. For more information about the Judicial Arbitration Program, please contact the Arbitration Office at (619) 531-3818. For more information about Settlement Conferences, please contact the Independent Calendar department to which your case is assigned. Please note that staff can only discuss ADR options and cannot give legal advice.

# Kaiser Foundation Health Plan, Inc. California Region

 **KAISER PERMANENTE₀**    <u>my.kaiserpermanente.org/federalemployees</u>    **2006**

A Health Maintenance Organization (High and Standard Options)

**Serving:** *Northern and Southern California service areas*

**Enrollment in this plan is limited. You must live or work in our geographic service areas to enroll. See page 8 for requirements.**





*This Plan has excellent accreditation from the NCQA.*
*See the 2006 Guide for more information on accreditation.*

**Enrollment codes for this Plan:**

| Northern California High Option | Southern California High Option |
|---|---|
| • 591 Self Only | • 621 Self Only |
| • 592 Self and Family | • 622 Self and Family |

| Standard Option | Standard Option |
|---|---|
| • 594 Self Only | • 624 Self Only |
| • 595 Self and Family | • 625 Self and Family |

> **Special Notice:**
>
> The Plan has reassigned the Tulare County ZIP codes of 93238 and 93261 to the Northern California Code 59. Formerly these Tulare County ZIP codes were under the Southern California Code 62.





**RI 73-003**



# Notice of the United States Office of Personnel Management's
## Privacy Practices

**THIS NOTICE DESCRIBES HOW MEDICAL INFORMATION ABOUT YOU MAY BE USED AND DISCLOSED AND HOW YOU CAN GET ACCESS TO THIS INFORMATION. PLEASE REVIEW IT CAREFULLY.**

By law, the United States Office of Personnel Management (OPM), which administers the Federal Employees Health Benefits (FEHB) Program, is required to protect the privacy of your personal medical information. OPM is also required to give you this notice to tell you how OPM may use and give out ("disclose") your personal medical information held by OPM.

OPM **will** use and give out your personal medical information:

- To you or someone who has the legal right to act for you (your personal representative),

- To the Secretary of the Department of Health and Human Services, if necessary, to make sure your privacy is protected,

- To law enforcement officials when investigating and/or prosecuting alleged or civil or criminal actions, and

- Where required by law.

OPM **has the right** to use and give out your personal medical information to administer the FEHB Program. For example:

- To communicate with your FEHB health plan when you or someone you have authorized to act on your behalf asks for our assistance regarding a benefit or customer service issue.

- To review, make a decision, or litigate your disputed claim.

- For OPM and the Government Accountability Office when conducting audits.

OPM **may** use or give out your personal medical information for the following purposes under limited circumstances:

- For Government health care oversight activities (such as fraud and abuse investigations),

- For research studies that meet all privacy law requirements (such as for medical research or education), and

- To avoid a serious and imminent threat to health or safety.

- By law, OPM must have your written permission (an "authorization") to use or give out your personal medical information for any purpose that is not set out in this notice. You may take back ("revoke") your written permission at any time, except if OPM has already acted based on your permission.

By law, you **have the right** to:

- See and get a copy of your personal medical information held by OPM.

- Amend any of your personal medical information created by OPM if you believe that it is wrong or if information is missing, and OPM agrees. If OPM disagrees, you may have a statement of your disagreement added to your personal medical information.

- Get a listing of those getting your personal medical information from OPM in the past 6 years. The listing will not cover your personal medical information that was given to you or your personal representative, any information that you authorized OPM to release, or that was given out for law enforcement purposes or to pay for your health care or a disputed claim.

- Ask OPM to communicate with you in a different manner or at a different place (for example, by sending materials to a P.O. Box instead of your home address).

- Ask OPM to limit how your personal medical information is used or given out. However, OPM may not be able to agree to your request if the information is used to conduct operations in the manner described above.

- Get a separate paper copy of this notice.

For more information on exercising your rights set out in this notice, look at www.opm.gov/insure on the Web. You may also call 202-606-0745 and ask for OPM's FEHB Program privacy official for this purpose.

If you believe OPM has violated your privacy rights set out in this notice, you may file a complaint with OPM at the following address:

Privacy Complaints
United States Office of Personnel Management
P.O. Box 707
Washington, DC 20004-0707

Filing a complaint will not affect your benefits under the FEHB Program. You also may file a complaint with the Secretary of the United States Department of Health and Human Services.

By law, OPM is required to follow the terms in this privacy notice. OPM has the right to change the way your personal medical information is used and given out. If OPM makes any changes, you will get a new notice by mail within 60 days of the change. The privacy practices listed in this notice are effective April 14, 2003.

---

# Important Notice from Kaiser Foundation Health Plan, Inc., About

# Our Prescription Drug Coverage and Medicare

OPM has determined that Kaiser Foundation Health Plan, Inc., prescription drug coverage is, on average, comparable to Medicare Part D prescription drug coverage; thus you do not need to enroll in a Medicare Part D Prescription Drug Plan (PDP) and pay extra for prescription drug benefits. If you decide to enroll in Medicare Part D later, you will not have a penalty for late enrollment as long as you keep your FEHB coverage.

However, if you choose to enroll in a Medicare Part D PDP, you can keep your Kaiser Foundation Health Plan, Inc., FEHB coverage, but you still need to follow the rules in this brochure for us to cover your care. We will only cover your prescription if it is written by a Plan provider and obtained at a Plan pharmacy or through our Plan mail service delivery program, except in an emergency or urgent care situation.

Remember: If you are an annuitant and you terminate your FEHB coverage, you may not re-enroll in the FEHB Program.

---

## Please be advised

- If you lose or drop your FEHB coverage, you will have to pay a higher Part D premium if you go without equivalent prescription drug coverage for a period of 63 days or longer. If you later decide to enroll in Medicare Part D, your premium will increase at least 1 percent per month for each month you did not have equivalent prescription drug coverage. For example, if you go 19 months without Medicare Part D prescription drug coverage, your premium will always be at least 19 percent higher than what most other people pay. You may also have to wait until the next open enrollment period to enroll in Medicare Part D.

  ### Medicare's Low Income Benefits

  *For people with limited income and resources, extra help paying for a Medicare prescription drug plan is available. Information regarding this program is available through the Social Security Administration (SSA) online at www.socialsecurity.gov, or call the SSA at 1-800-772-1213 (TTY 1-800-325-0778).*

You can get more information about Medicare prescription drug plans and the coverage offered in your area from these places:

- Visit www.medicare.gov for personalized help,

- Call 1-800-MEDICARE (1-800-633-4227). TTY users should call 1-877-486-2048.

# Table of Contents

Introduction ..................................................................................................................... 3

Plain Language ............................................................................................................... 3

Stop Health Care Fraud! ................................................................................................ 4

Preventing medical mistakes ......................................................................................... 5

Section 1. Facts about this HMO plan .......................................................................... 7

    General features of our High and Standard Options ...................................................... 7
    How we pay providers ................................................................................................... 7
    Your Rights .................................................................................................................... 7
    Service Area ................................................................................................................... 8

Section 2. How we change for 2006 ............................................................................. 10

    Changes to the High and Standard Options ................................................................. 10
    Changes to the High Option Only ................................................................................ 10
    Changes to the Standard Option Only .......................................................................... 10

Section 3. How you get care .......................................................................................... 11

    Identification cards ........................................................................................................ 11
    Where you get covered care .......................................................................................... 11
    • Plan providers ............................................................................................................ 11
    • Plan facilities ............................................................................................................. 11
    What you must do to get covered care .......................................................................... 12
    • Primary care ............................................................................................................... 12
    • Specialty care ............................................................................................................. 12
    • Hospital care .............................................................................................................. 13
    • Circumstances beyond our control ............................................................................. 13
    • Services requiring our prior approval ......................................................................... 13

Section 4. Your costs for covered services .................................................................. 14

    Copayments .................................................................................................................. 14
    Deductible ..................................................................................................................... 14
    Coinsurance .................................................................................................................. 14
    Fees when you fail to make your copayment ................................................................ 14
    Your catastrophic protection out-of-pocket maximum ................................................ 14

High and Standard Option Benefits .............................................................................. 15

Section 5. High and Standard Option Benefits Overview ............................................ 17

Section 6. General exclusions—things we don't cover ................................................ 53

Section 7. Filing a claim for covered services ............................................................. 54

Section 8. The disputed claims process ........................................................................ 55

**Section 9. Coordinating benefits with other coverage** ........................................................................ **57**

When you have other health coverage ........................................................................................... 57
What is Medicare? ........................................................................................................................... 57
- Should I enroll in Medicare? ................................................................................................. 57
- The Original Medicare Plan (Part A or Part B) .................................................................... 58
- Medicare Advantage (Part C) ............................................................................................... 58
- Medicare prescription drug coverage (Part D) ..................................................................... 59
TRICARE and CHAMPVA ............................................................................................................ 61
Workers' Compensation .................................................................................................................. 61
Medicaid .......................................................................................................................................... 61
When other Government agencies are responsible for your care ................................................... 61
When others are responsible for your injuries ............................................................................... 61

**Section 10. Definitions of terms we use in this brochure** ....................................................................... **62**

**Section 11. FEHB Facts** ........................................................................................................................... **64**

Coverage information ...................................................................................................................... 64
- No pre-existing condition limitation ...................................................................................... 64
- Where you can get information about enrolling in the FEHB Program ................................. 64
- Types of coverage available for you and your family ........................................................... 64
- Children's Equity Act ............................................................................................................ 65
- When benefits and premiums start ........................................................................................ 65
- When you retire ...................................................................................................................... 65
When you lose benefits .................................................................................................................... 66
- When FEHB coverage ends ................................................................................................... 66
- Spouse equity coverage .......................................................................................................... 66
- Temporary Continuation of Coverage (TCC) ....................................................................... 66
- Converting to individual coverage ........................................................................................ 66
- Getting a Certificate of Group Health Plan Coverage .......................................................... 67

**Section 12. Two Federal Programs complement FEHB benefits** ............................................................ **68**

The Federal Flexible Spending Account Program—FSAFEDS .................................................... 68
The Federal Long Term Care Insurance Program—FLTCIP ........................................................ 72

**Index** ........................................................................................................................................................... **73**

**Summary of benefits for Kaiser Foundation Health Plan, Inc., California Region  High Option—2006** .................... **74**

**Summary of benefits for Kaiser Foundation Health Plan, Inc., California Region Standard Option—2006** ............. **75**

**2006 Rate Information for Kaiser Foundation Health Plan, Inc., California Region** .................................. **76**

# Introduction

This brochure describes the benefits of Kaiser Foundation Health Plan, Inc.—California Region, under our contract (CS1044) with the United States Office of Personnel Management, as authorized by the Federal Employees Health Benefits law. The California Region's administrative offices are:

Kaiser Foundation Health Plan, Inc.

1950 Franklin St., Oakland, CA 94612 (Northern California)

393 E. Walnut St., Pasadena, CA 91188 (Southern California)

This brochure is the official statement of benefits. No oral statement can modify or otherwise affect the benefits, limitations, and exclusions of this brochure. It is your responsibility to be informed about your health benefits.

If you are enrolled in this Plan, you are entitled to the benefits described in this brochure. If you are enrolled in Self and Family coverage, each eligible family member is also entitled to these benefits. You do not have a right to benefits that were available before January 1, 2006, unless those benefits are also shown in this brochure.

OPM negotiates benefits and rates with each plan annually. Benefit changes are effective January 1, 2006, and changes are summarized on page 74 and 75. Rates are shown on the back cover of this brochure.

# Plain Language

All FEHB brochures are written in plain language to make them responsive, accessible, and understandable to the public. For instance,

- Except for necessary technical terms, we use common words. For instance, "you" means the enrollee or family member; "we" means *Kaiser Foundation Health Plan, Inc., California Region.*

- We limit acronyms to ones you know. FEHB is the Federal Employees Health Benefits Program. OPM is the United States Office of Personnel Management. If we use others, we tell you what they mean first.

- Our brochure and other FEHB plans' brochures have the same format and similar descriptions to help you compare plans.

If you have comments or suggestions about how to improve the structure of this brochure, let OPM know. Visit OPM's "Rate Us" feedback area at www.opm.gov/insure or e-mail OPM at fehbwebcomments@opm.gov. You may also write to OPM at the U.S. Office of Personnel Management, Insurance Service Programs, Program Planning & Evaluation Group, 1900 E Street, NW, Washington, DC 20415-3650.

## Stop Health Care Fraud!

Fraud increases the cost of health care for everyone and increases your Federal Employees Health Benefits (FEHB) Program premium.

OPM's Office of the Inspector General investigates all allegations of fraud, waste, and abuse in the FEHB Program regardless of the agency that employs you or from which you retired.

**Protect Yourself From Fraud** – Here are some things that you can do to prevent fraud:

- Be wary of giving your plan identification (ID) number over the telephone or to people you do not know, except to your doctor, other provider, or authorized plan or OPM representative.

- Let only the appropriate medical professionals review your medical record or recommend services.

- Avoid using health care providers who say that an item or service is not usually covered, but they know how to bill us to get it paid.

- Carefully review explanations of benefits (EOBs) that you receive from us.

- Do not ask your doctor to make false entries on certificates, bills or records in order to get us to pay for an item or service.

- If you suspect that a provider has charged you for services you did not receive, billed you twice for the same service, or misrepresented any information, do the following:

  Call the provider and ask for an explanation. There may be an error.

  If the provider does not resolve the matter, call our Member Service Call Center at **1-800-464-4000** and explain the situation.

  If we do not resolve the issue:

> **CALL — THE HEALTH CARE FRAUD HOTLINE**
> **202-418-3300**
> **OR WRITE TO:**
>
> **United States Office of Personnel Management**
> **Office of the Inspector General Fraud Hotline**
> **1900 E Street NW Room 6400**
> **Washington, DC 20415-1100**

- Do not maintain, as a family member on your policy:

  Your former spouse after a divorce decree or annulment is final (even if a court order stipulates otherwise); or

  Your child over age 22 (unless he/she is disabled and incapable of self-support).

- If you have any questions about the eligibility of a dependent, check with your personnel office if you are employed, with your retirement office (such as OPM) if you are retired, or with the National Finance Center if you are enrolled under Temporary Continuation of Coverage.

- You can be prosecuted for fraud and your agency may take action against you if you falsify a claim to obtain FEHB benefits or try to obtain services for someone who is not an eligible family member or who is no longer enrolled in the Plan.

# Preventing medical mistakes

An influential report from the Institute of Medicine estimates that up to 98,000 Americans die every year from medical mistakes in hospitals alone. That's about 3,230 preventable deaths in the FEHB Program a year. While death is the most tragic outcome, medical mistakes cause other problems such as permanent disabilities, extended hospital stays, longer recoveries, and even additional treatments. By asking questions, learning more and understanding your risks, you can improve the safety of your own health care, and that of your family members. Take these simple steps:

1. **Ask questions if you have doubts or concerns.**

   - Ask questions and make sure you understand the answers.

   - Choose a doctor with whom you feel comfortable talking.

   - Take a relative or friend with you to help you ask questions and understand answers.

2. **Keep and bring a list of all the medicines you take.**

   - Bring the actual medicines or give your doctor and pharmacist a list of all the medicines that you take, including non-prescription (over-the-counter) medicines.

   - Tell them about any drug allergies you have.

   - Ask about any risks or side effects of the medication and what to avoid while taking it. Be sure to write down what your doctor or pharmacist says.

   - Make sure your medicine is what the doctor ordered. Ask the pharmacist about your medicine if it looks different than you expected.

   - Read the label and patient package insert when you get your medicine, including all warnings and instructions.

   - Know how to use your medicine. Especially note the times and conditions when your medicine should and should not be taken.

3. **Get the results of any test or procedure.**

   - Ask when and how you will get the results of tests or procedures.

   - Don't assume the results are fine if you do not get them when expected, be it in person, by phone, or by mail.

   - Call your doctor and ask for your results.

   - Ask what the results mean for your care.

4. **Talk to your doctor about which hospital is best for your health needs.**

   - Ask your doctor about which hospital has the best care and results for your condition if you have more than one hospital to choose from to get the health care you need.

   - Be sure you understand the instructions you get about follow-up care when you leave the hospital.

*(continues on next page)*

**Preventing medical mistakes** *(continued)*

5.  **Make sure you understand what will happen if you need surgery.**

    - Make sure you, your doctor, and your surgeon all agree on exactly what will be done during the operation.

    - Ask your doctor, "Who will manage my care when I am in the hospital?"

    - Ask your surgeon:

        Exactly what will you be doing?

        About how long will it take?

        What will happen after surgery?

        How can I expect to feel during recovery?

    - Tell the surgeon, anesthesiologist, and nurses about any allergies, bad reaction to anesthesia, and any medications you are taking.

Want more information on patient safety?

▶ www.ahrq.gov/consumer/pathqpack.html. The Agency for Healthcare Research and Quality makes available a wide-ranging list of topics not only to inform consumers about patient safety but to help choose quality health care providers and improve the quality of care you receive.

▶ www.npsf.org. The National Patient Safety Foundation has information on how to ensure safer health care for you and your family.

▶ www.talkaboutrx.org/consumer.html. The National Council on Patient Information and Education is dedicated to improving communication about the safe, appropriate use of medicines.

▶ www.leapfroggroup.org. The Leapfrog Group is active in promoting safe practices in hospital care.

▶ www.ahqa.org. The American Health Quality Association represents organizations and health care professionals working to improve patient safety.

▶ www.quic.gov/report. Find out what federal agencies are doing to identify threats to patient safety and help prevent mistakes in the nation's health care delivery system.

# Section 1. Facts about this HMO plan

Kaiser Foundation Health Plan, Inc., (Health Plan) is a health maintenance organization (HMO). We require you to see specific physicians, hospitals, and other providers that contract with us. Our Plan providers coordinate your health care services. We are solely responsible for the selection of Plan providers in your area. Contact us for a copy of our most recent provider directory. We emphasize preventive care such as routine office visits, physical exams, well-baby care, and immunizations, in addition to treatment for illness and injury. Our providers follow generally accepted medical practice when prescribing any course of treatment. We give you a choice of enrollment in a High Option or Standard Option.

When you receive services from Plan providers, you will not have to submit claim forms or pay bills. You only pay the copayments and coinsurance described in this brochure. When you receive emergency services or services covered under the travel benefit from non-Plan providers, you may have to submit claim forms.

**You should join an HMO because you prefer the plan's benefits, not because a particular provider is available. You cannot change plans because a provider leaves our Plan. We cannot guarantee that any one physician, hospital, or other provider will be available and/or remain under contract with us.**

## General features of our High and Standard Options

## How we pay providers

We contract with individual physicians, medical groups, and hospitals to provide the benefits in this brochure. These Plan providers accept a negotiated payment from us, and you will only be responsible for your copayments or coinsurance.

## Your Rights

OPM requires that all FEHB Plans provide certain information to their FEHB members. You may get information about us, our networks, providers, and facilities. OPM's FEHB Web site at (www.opm.gov/insure) lists the specific types of information that we must make available to you. Some of the required information is listed below.

We are a health maintenance organization that has provided health care services to Californians for more than 60 years. Kaiser Foundation Health Plan, Inc., is a California not-for-profit organization. This Plan is part of the Kaiser Permanente Medical Care Program, a group of not-for-profit organizations and contracting medical groups that serve over 8 million members nationwide. The Permanente Medical Group, Inc. (a for-profit California corporation) operates Plan medical offices throughout Northern California. The Southern California Permanente Medical Group (a for-profit California partnership) operates Plan medical offices throughout Southern California.

If you want more information about us, call **1-800-464-4000**, or write to 1950 Franklin St., Oakland, CA, 94612 or 393 E. Walnut St., Pasadena, CA 91188. You may visit our Web site at my.kaiserpermanente.org/federalemployees which lists the specific types of information that we must make available to you.

## Service Area

To enroll in this Plan, you must live or work in our service area. This is where our providers practice. Our service area counties are:

**Northern California counties:**

Alameda, Contra Costa, Marin, Sacramento, San Francisco, San Joaquin, San Mateo, Solano, and Stanislaus are within our service area.

Portions of the following counties, as indicated by the ZIP codes below, are also within the service area:

Amador County:
95640, 95669

El Dorado County:
95613-14, 95619, 95623, 95633-35, 95651, 95664, 95667, 95672, 95682, 95762

Fresno County:
93242, 93602, 93606-07, 93609, 93611-13, 93616, 93618, 93624-27, 93630-31, 93646, 93648-52, 93654, 93656-57, 93660, 93662, 93667-68, 93675, 93701-12, 93714-18, 93720-22, 93724-29, 93740-41, 93744-45, 93747, 93750, 93755, 93760-62, 93764-65, 93771-80, 93782, 93784, 93786, 93790-94, 93844, 93888

Kings County:
93230-32, 93242, 93631, 93656

Madera County:
93601-02, 93604, 93614, 93623, 93626, 93637-39, 93643-45, 93653, 93669, 93720

Mariposa County:
93601, 93623, 93653

Napa County:
94503, 94508, 94515, 94558-59, 94562, 94567*, 94573-74, 94576, 94581, 94585, 94589-90, 94599, 95476

* The Knoxville community, which lies within Pope Valley ZIP code 94567, is not within the service area.

Placer County:
95602-04, 95626, 95648, 95650, 95658, 95661, 95663, 95668, 95677-78, 95681, 95692, 95703, 95722, 95736, 95746-47, 95765

Santa Clara County:
94022-24, 94035, 94039-43, 94085-90, 94301-06, 94309-10, 94550, 95002, 95008-09, 95011, 95013-15, 95020-21, 95026, 95030-33, 95035-38, 95042, 95044, 95046, 95050-56, 95070-71, 95101-03, 95106, 95108-42, 95148, 95150-61, 95164, 95170-73, 95190-94, 95196

Sonoma County:
94515, 94922-23, 94926-28, 94931, 94951-55, 94972, 94975, 94999, 95401-09, 95416, 95419, 95421, 95425, 95430-31, 95433, 95436, 95439, 95441-42, 95444, 95446, 95448, 95450, 95452, 95462, 95465, 95471-73, 95476, 95486-87, 95492

Sutter County:
95645, 95659, 95668, 95674, 95676, 95692, 95837

Tulare County:
93238, 93261, 93618, 93646, 93654, 93666, 93673

Yolo County:
95605, 95607, 95612, 95616-18, 95645, 95691, 95694-95, 95697-98, 95776, 95798-99

Yuba County:
95692, 95903, 95961

**Southern California counties:**

Orange and Los Angeles (except ZIP code 90704) are within our service area.

Portions of the following counties, as indicated by the ZIP codes below, are also within the service area:

| County | ZIP codes |
|---|---|
| Imperial: | 92274-75*, 93536 |
| Kern: | 93203, 93205-06, 93215-16, 93220, 93222, 93224-26, 93238, 93240-41, 93243, 93250-52, 93263, 93268, 93276, 93280, 93285, 93287, 93301-09, 93311-14, 93380-90, 93501-02, 93504-05, 93518-19, 93531, 93560-61, 93581 |
| Riverside: | 91752, 92201-03*, 92210-11*, 92220, 92223, 92230*, 92234-36*, 92240-41*, 92247-48*, 92253-55*, 92258*, 92260-64*, 92270*, 92274*, 92276*, 92282*, 92292*, 92320, 92324, 92373, 92399, 92501-09, 92513-19, 92521-22, 92530-32, 92543-46, 92548, 92551-57, 92562-64, 92567, 92570-72, 92581-87, 92595-96, 92599, 92860, 92877-83 |
| San Bernardino: | 91701, 91708-10, 91729-30, 91737, 91739, 91743, 91758, 91761-64, 91766, 91784-86, 91798, 92252*, 92256*, 92268*, 92277-78*, 92284-86*, 92305, 92307-08, 92313-18, 92321-22, 92324-26, 92329, 92333-37, 92339-41, 92345-46, 92350, 92352, 92354, 92357-59, 92369, 92371-78, 92382, 92385-86, 92391-95, 92397, 92399, 92401-08, 92410-15, 92418, 92420, 92423-24, 92427, 92880 |
| San Diego: | 91901-03, 91908-17, 91921, 91931-33, 91935, 91941-47, 91950-51, 91962-63, 91976-80, 91990, 92007-09, 92013-14, 92018-27, 92029-30, 92033, 92037-40, 92046, 92049, 92051-52, 92054-58, 92064-65, 92067-69, 92071-72, 92074-75, 92078-79, 92081, 92082-85, 92090-93, 92096, 92101-24, 92126-40, 92142-43, 92145, 92147, 92149-50, 92152-55, 92158-79, 92182, 92184, 92186-87, 92190-99 |
| Ventura: | 90265, 91304, 91307, 91311, 91319-20, 91358-62, 91377, 93001-07*, 93009*, 93010-12, 93015-16, 93020-21, 93022, 93030-36, 93040, 93041-44*, 93060-61*, 93062-66, 93093-94, 93099 |

\* Subscribers residing in Coachella Valley and western Ventura County ZIP codes are required to select a primary care plan physician (affiliated physician).

Ordinarily, you must receive your care from physicians, hospitals, and other providers who contract with us. However, we are part of the Kaiser Permanente Medical Care Program, and if you are visiting another Kaiser Permanente service area, you can receive virtually all of the benefits of this Plan at any other Kaiser Permanente facility, including our mail order prescription program. You must pay the charges or copayments imposed by the Kaiser Permanente Plan you are visiting, with the exception of mail order prescriptions, which are administered by your home Plan. See Section 5(g), *Special features,* for more details. We also pay for certain follow-up services or continuing care services while you are traveling outside the service area, as described in Section 5(g); and for emergency care obtained from any non-Plan provider, as described in Section 5(d). We will not pay for any other health care services.

If you or a covered family member move outside of our service area, you can enroll in another plan. If your dependents live out of the area (for example, if your child goes to college in another state), you should consider enrolling in a fee-for-service plan or an HMO that has agreements with affiliates in other areas. If you or a family member move, you do not have to wait until Open Season to change plans. Contact your employing or retirement office.

---

## Section 2. How we change for 2006

Do not rely on these change descriptions; this Section is not an official statement of benefits. For that, go to *Section 5, Benefits Overview*. Also, we edited and clarified language throughout the brochure; any language change not shown here is a clarification that does not change benefits.

## Changes to this Plan

## Changes to the High and Standard Options

- We will cover six aphakic contact lenses per eye per calendar year at no charge for children up to age 9. See page 24 for more details.

- For Northern California federal members, we will cover special footwear for disfigurement due to disease, injury, or developmental disability. Southern California federal members already have this coverage. See page 26 for more details.

- Southern California Federal subscribers currently enrolled under enrollment code 62 residing in Tulare County ZIP codes 93238 and 93261 that wish to enroll in the Northern California enrollment code 59 for contract year 2006 must make a positive election into enrollment code 59 during open season. Southern California Federal subscribers will not be automatically transferred to the Northern California enrollment code 59. See page 9 for more details.

## Changes to the High Option Only

- In Northern California, your share of the non-Postal premium will increase by 7.3 % for Self Only or 10.9 % for Self and Family. See page 76 for more details.

- In Southern California, your share of the non-Postal premium will increase by 5.9 % for Self Only or 5.9 % for Self and Family. See page 76 for more details.

- We increased the copayment for individual health education from $0 to $15 per office visit. See page 29 for more details.

## Changes to the Standard Option Only

- In Northern California, your share of the non-Postal premium will increase by 1.8 % for Self Only or 1.8 % for Self and Family. See page 76 for more details.

- In Southern California, your share of the non-Postal premium will increase by 2.1 % for Self Only or 2.1 % for Self and Family. See page 76 for more details.



## Section 3. How you get care

**Identification cards**

We will send you an identification (ID) card when you enroll. You should carry your ID card with you at all times. You must show it whenever you receive services from a Plan provider, or fill a prescription at a Plan pharmacy. Until you receive your ID card, use your copy of the Health Benefits Election Form, SF-2809, your health benefits enrollment confirmation (for annuitants), or your electronic enrollment system (such as Employee Express) confirmation letter.

If you do not receive your ID card within 30 days after the effective date of your enrollment, or if you need replacement cards, call us at our Member Service Call Center at **1-800-464-4000**. You may also request replacement cards through our Web site at my.kaiserpermanente.org/federalemployees.

**Where you get covered care**

You get covered care from "Plan providers" and "Plan facilities." You will only pay copayments and/or coinsurance, and you will not have to file claims.

**• Plan providers**

Plan providers are physicians and other health care professionals in our service area that we contract with to provide covered services to our members. Health Plan contracts with The Permanente Medical Group, Inc., (Medical Group), the Southern California Permanente Medical Group (Medical Group), and independent multi-specialty groups of physicians to provide or arrange all necessary physician care for Plan members. Medical care is provided through physicians, nurse practitioners, and other skilled medical personnel working as medical teams at Kaiser Permanente facilities. We credential Plan providers according to national standards. Specialists in most major specialties are available as part of the medical teams for consultation and treatment. Other necessary medical care, such as physical therapy and laboratory and X-ray services, is also available. Plan physicians also arrange any necessary specialty care.

We list Plan providers in the provider directory, which we update periodically. The list is also on our Web site: my.kaiserpermanente.org/federalemployees.

**• Plan facilities**

Plan facilities are hospitals, medical offices and other facilities in our service area that we contract with to provide covered services to our members. In Northern California, Kaiser Permanente offers comprehensive, affordable health care at 92 Plan facilities conveniently located throughout the San Francisco Bay, Sacramento, Stockton, and Fresno areas. These facilities include Medical Centers with full hospital facilities and Plan medical offices. The Southern California service area has 11 major Medical Centers and more than 90 medical offices conveniently located throughout the Southern California area.

The Plans' facility directory lists the Plans' facilities and services, with the locations and phone numbers. Directories are updated on a regular basis and are available at the time of enrollment or upon request by calling our Member Service Call Center at **1-800-464-4000**. You should use this directory to:

Receive more information about facility locations and services

Receive information about how to get established with a Plan physician

You must receive your health services at Plan facilities, except if you have an emergency, authorized referral, or out-of-area urgent care. If you are visiting another Kaiser Permanente service area, you may receive health care services at those Kaiser Permanente facilities. Under the circumstances specified in this brochure, you may receive follow-up or continuing care while you travel anywhere.

## What you must do to get covered care

It depends on the type of care you need. First, you and each family member must choose a primary care physician. This decision is important since your primary care physician provides or arranges for most of your health care.

### • Primary care

Your primary care physician can be a family practitioner, pediatrician, gynecologist, or internist. Your primary care physician will provide most of your health care, or give you a referral to see a specialist.

Please notify us of the primary care physician you choose. If you need help choosing a primary care physician, call us. You may change your primary care physician at any time. You are free to see other Plan physicians if your primary care physician is not available, and to receive care at other Kaiser Permanente facilities.

If you want to change primary care physicians or if your primary care physician leaves the Plan, call us. We will help you select a new one.

### • Specialty care

Your primary care physician will refer you to a specialist for needed care. When you receive a referral from your primary care physician, you must return to the primary care physician after the consultation, unless your primary care physician authorized a certain number of visits without additional referrals. The primary care physician must provide or authorize all follow-up care. Do not go to the specialist for return visits unless your primary care physician gives you a referral. However, you may see a gynecologist, an optometrist, or our mental health and substance abuse Plan providers without a referral.

Here are other things you should know about specialty care:

If you need to see a specialist frequently because of a chronic, complex, or serious medical condition, your primary care physician will develop a treatment plan that allows you to see your specialist for a certain number of visits without additional referrals. Your primary care physician will use our criteria when creating your treatment plan (the physician may have to get an authorization or approval beforehand).

If you are seeing a specialist when you enroll in our Plan, talk to your primary care physician. Your primary care physician will decide what treatment you need. If he or she decides to refer you to a specialist, ask if you can see your current specialist. If your current specialist does not participate with us, you must receive treatment from a specialist who does. Generally, we will not pay for you to see a specialist who does not participate with our Plan.

If you are seeing a specialist and your specialist leaves the Plan, call your primary care physician, who will arrange for you to see another specialist. You may receive services from your current specialist until we can make arrangements for you to see someone else.

(continues on next page)

- **Specialty care** *(continued)*

If you have a chronic or disabling condition and lose access to your specialist because we:

- Terminate our contract with your specialist for other than cause; or

- Drop out of the Federal Employees Health Benefits (FEHB) Program and you enroll in another FEHB plan; or

- Reduce our service area and you enroll in another FEHB plan,

You may be able to continue seeing your specialist for up to 90 days after you receive notice of the change. Contact us or, if we drop out of the Program, contact your new plan.

If you are in the second or third trimester of pregnancy and you lose access to your specialist based on the above circumstances, you can continue to see your specialist until the end of your postpartum care, even if it is beyond the 90 days.

- **Hospital care**

Your Plan primary care physician or specialist will make necessary hospital arrangements and supervise your care. This includes admission to a skilled nursing or other type of facility.

If you are in the hospital when your enrollment in our Plan begins, call our Member Service Call Center immediately at **1-800-464-4000**. If you are new to the FEHB Program, we will arrange for you to receive care.

If you changed from another FEHB plan to us, your former plan will pay for the hospital stay until:

- you are discharged, not merely moved to an alternative care center; or

- the day your benefits from your former plan run out; or

- the 92nd day after you become a member of this Plan, whichever happens first.

These provisions apply only to the hospital benefit of the hospitalized person. If your plan terminates participation in the FEHB Program in whole or in part, or if OPM orders an enrollment change, this continuation of coverage provision does not apply. In such a case, the hospitalized family member's benefits under the new plan begin on the effective date of enrollment.

- **Circumstances beyond our control**

Under certain extraordinary circumstances, such as natural disasters, we may have to delay your services or we may be unable to provide them. In that case, we will make all reasonable efforts to provide you with the necessary care.

- **Services requiring our prior approval**

Your primary care physician has authority to refer you for most services. In certain cases your primary care physician can arrange for specialty services through a process we call a referral. Your physician must write a referral for services such as bariatric surgery, neurology, orthopedics, rheumatology, endocrinology, and any service that will not be provided by Plan physicians.

If a Plan Physician determines that a referral for medical care is necessary, those arrangements will be prepared in writing and in advance of such medical care. If you receive care outside the Plan without a referral, you will be responsible for those expenses. We encourage you to participate in your medical care and discuss any questions about our referral process with your primary care physician. If your request for referral is denied, please contact our Member Service Call Center at **1-800-464-4000** or refer to Section 8 of this brochure.

## Section 4. Your costs for covered services

You must share the costs of some services. You are responsible for:

| | |
|---|---|
| **Copayments** | A copayment is a fixed amount of money you pay to the provider, facility, pharmacy, etc., when you receive services. Example: When you see your primary care physician, you pay a copayment of $15 per office visit (High Option plan) or $30 (Standard Option plan). |
| **Deductible** | We do not have a deductible. |
| **Coinsurance** | Coinsurance is the percentage of our allowance that you must pay for certain services you receive. Example: In our Plan, you pay 50% of our allowance for infertility services. |
| **Fees when you fail to make your copayment** | If we bill you for a copayment or coinsurance, we will add a $13.50 billing charge and send you a bill for the entire amount. This $13.50 billing charge will not count toward the annual out-of-pocket maximum.<br><br>Note: Affiliated physician offices and other providers and facilities may bill you an additional charge along with any unpaid copayments and coinsurance. |
| **Your catastrophic protection out-of-pocket maximum** | After your copayments and coinsurance total $1,500 per person or $3,000 per family enrollment (High Option plan) or $2,000 per person or $4,000 per family enrollment (Standard Option plan) in any calendar year, you do not have to pay any more for covered services. However, copayments or coinsurance for the following services do not count toward your catastrophic protection out-of-pocket maximum. You must continue to pay copayments or coinsurance for these services: |

- Prescription drugs

- Durable medical equipment

- Orthopedic and prosthetic devices

- Dental services

- Contraceptive devices

- Chiropractic services

- The $25 charge paid for follow-up or continuing care outside the service area

Be sure to keep accurate records of your copayments and coinsurance, since you are responsible for informing us when you reach the maximum.

## High and Standard Option Benefits

See page 10 for how our benefits changed this year. Page 74 and page 75 are a benefits summary of each option. Make sure that you review the benefits that are available under the option in which you are enrolled.

**Section 5. High and Standard Option Benefits Overview** ...................................................................................... 17

**Section 5(a). Medical services and supplies provided by physicians and other health care professionals** ...................... 18

    Diagnostic and treatment services............................................................................................................................ 18

    Lab, X-ray, and other diagnostic tests...................................................................................................................... 19

    Preventive care, adult................................................................................................................................................ 19

    Preventive care, children........................................................................................................................................... 20

    Maternity care ........................................................................................................................................................... 21

    Family planning ........................................................................................................................................................ 21

    Infertility services .................................................................................................................................................... 22

    Allergy care................................................................................................................................................................ 22

    Treatment therapies................................................................................................................................................... 23

    Physical and occupational therapies ........................................................................................................................ 23

    Speech therapy .......................................................................................................................................................... 23

    Hearing services (testing, treatment, and supplies)................................................................................................. 24

    Vision services (testing, treatment, and supplies) ................................................................................................... 24

    Foot care ................................................................................................................................................................... 24

    Orthopedic and prosthetic devices ........................................................................................................................... 25

    Durable medical equipment (DME)........................................................................................................................... 27

    Home health services ................................................................................................................................................ 28

    Chiropractic .............................................................................................................................................................. 29

    Educational classes and programs............................................................................................................................ 29

**Section 5(b). Surgical and anesthesia services provided by physicians and other health care professionals** .................... 30

    Surgical procedures................................................................................................................................................... 30

    Reconstructive surgery.............................................................................................................................................. 32

    Oral and maxillofacial surgery................................................................................................................................. 33

    Organ/tissue transplants ........................................................................................................................................... 34

    Anesthesia................................................................................................................................................................. 35

**Section 5(c). Services provided by a hospital or other facility, and ambulance services** ............................................ 36

    Inpatient hospital...................................................................................................................................................... 36

    Outpatient hospital or ambulatory surgical center .................................................................................................. 38

    Skilled nursing care benefits .................................................................................................................................... 38

    Hospice care.............................................................................................................................................................. 38

    Ambulance ................................................................................................................................................................ 39

**High and Standard Option**

Section 5(d). Emergency services/accidents .......................................................................................................................... 40

    What is a medical emergency? ....................................................................................................... 40

    What to do in case of emergency ................................................................................................... 40

    Emergency within our service area ................................................................................................ 41

    Emergency outside our service area ............................................................................................... 42

    Urgent care outside our service area .............................................................................................. 42

    Ambulance ...................................................................................................................................... 42

Section 5(e). Mental health and substance abuse benefits ....................................................................................................... 43

Section 5(f). Prescription drug benefits .................................................................................................................................... 46

    Covered medications and supplies ................................................................................................ 47

Section 5(g). Special features .................................................................................................................................................... 49

    Flexible benefits option .................................................................................................................. 49

    Services from other Kaiser Permanente Plans .............................................................................. 49

    24-hour nurse line .......................................................................................................................... 49

    Services for deaf and hearing impaired .......................................................................................... 50

    Centers of Excellence ..................................................................................................................... 50

    Travel benefit ................................................................................................................................. 50

Section 5(h). Dental benefits ..................................................................................................................................................... 51

Section 5(i). Non-FEHB benefits available to Plan members ................................................................................................... 52

Summary of benefits for the High Option of the Kaiser Foundation Health Plan, Inc., California Region—2006 ..................... 7

Summary of benefits for the High Option of the Kaiser Foundation Health Plan, Inc., California Region—2006 ................... 74

Summary of benefits for the Standard Option of the Kaiser Foundation Health Plan, Inc., California Region—2006 ............. 75

**High and Standard Option**

## Section 5. High and Standard Option Benefits Overview

This Plan offers both a High and Standard Option. Both benefit packages are described in Section 5. Make sure that you review the benefits that are available under the option in which you are enrolled.

The High and Standard Option Section 5 is divided into subsections. Please read the important things you should keep in mind at the beginning of the subsections. Also read the General exclusions in <u>Section 6</u>, they apply to the benefits in the following subsections. To obtain claim forms, claims filling advice, or more information about High and Standard Option benefits, contact us at **1-800-464-4000** or at our Web site at <u>my.kaiserpermanente.org/federalemployees.</u>

Kaiser Foundation Health Plan of California, Inc. has been a leader in offering high quality integrated health care to FEHB for more than 40 years. What differentiates Kaiser Foundation Health Plan of California, Inc. from other HMO's and helps us contain your costs is the fact that we view health care not as an industry, but as a cause. Our self-owned pharmacies mean big savings for you.

In 2004, Kaiser Permanente's HMO and Medicare Plan received "Excellent Accreditation"—the highest level of accreditation possible—from the National Committee for Quality Assurance (NCQA), an independent, non-profit organization that measures the quality of America's health care.

Today, the Health Plan offers two benefit plans to Federal members, the High and Standard Options. Both Options are designed to include preventive and acute care services provided by our Plan providers, but offer different levels of benefits and services for you to choose between to best fit your health care needs.

- **High Option**
  The High Option includes the most comprehensive benefits. Our FEHB High Option includes:
  - Office visit copayment – $15
  - Copayment on inpatient admissions – $100
  - Copayment for most adult preventive care services, including immunizations – No charge
  - Drug copayments – $10 generic, $25 brand (up to a 100-day supply)
  - Vision benefits – 25% eyewear discount
  - Chiropractic copayment – $15 for up to 20 visits per calendar year

- **Standard Option**
  We also offer a Standard Option. With the Standard Option your copayments (and coinsurance if appropriate) may be higher than for the High Option, but the biweekly premium is lower. Specific benefits of our FEHB Standard Option include:
  - Office visit copayment – $30
  - Copayment on inpatient admissions – $500
  - Copayment for most adult preventive care services – $10 (immunizations provided at no charge)
  - Drug copayments – $10 generic; $30 brand (up to a 30-day supply; up to a 100-day supply for two copayments via mail order)
  - Chiropractic copayment – $15 for up to 20 visits per calendar year

Please review this brochure carefully to learn which of our Kaiser Foundation Health Plan of California FEHB options is best for you. If you would like more information about our benefits, please contact us at **1-800-464-4000** or visit our Web site at <u>www.kaiserpermanente.org.</u>

**High and Standard Option**

## Section 5(a). Medical services and supplies provided by physicians and other health care professionals

**Important things you should keep in mind about these benefits:**

- Please remember that all benefits are subject to the definitions, limitations, and exclusions in this brochure and we cover them only when we determine they are medically necessary.

- Plan physicians must provide or arrange your care.

- We have no calendar year deductible.

- Be sure to read Section 4, *Your costs for covered services,* for valuable information about how cost-sharing works. Also read Section 9, *Coordinating benefits with other coverage.*

- Note: You will pay one-half of the individual office visit copayment for certain group office visits, rounded down to the nearest dollar.

| Benefit Description | You pay | |
| --- | --- | --- |
| Diagnostic and treatment services | High Option | Standard Option |
| Professional services of physicians and other health care professionals <br><br> • In a physician's office <br><br> • In an urgent care center <br><br> • Second opinion within Plan <br><br> • Consultations with specialists | $15 per office visit | $30 per office visit |
| During a hospital stay <br><br> • In a skilled nursing facility <br><br> • Initial examination of a newborn child covered under a family enrollment | Nothing | Nothing |
| At home | Nothing | Nothing |

**High and Standard Option**

| Lab, X-ray, and other diagnostic tests | You pay | |
|---|---|---|
| | High Option | Standard Option |
| Tests, such as: | Nothing | $10 per office visit |
| • Blood test | | |
| • Urinalysis | | |
| • Non-routine Pap tests | | |
| • Pathology test | | |
| • X-rays | | |
| • Non-routine mammograms | | |
| • Ultrasound | | |
| • Electrocardiogram and EEG | | |
| • Nuclear medicine | | |
| • MRI/CAT and PET scan | Nothing | $50 per procedure |
| • Procedures requiring licensed staff to monitor your vital signs as you regain sensation after receiving drugs to reduce sensation or to minimize discomfort. The following criteria must be met: anesthesia or procedural sedation is required and it is medically necessary that recovery time is monitored by a registered nurse or higher. | $50 per procedure | $200 per procedure |
| **Preventive care, adult** | | |
| Routine screenings, such as: | Nothing | $10 per office visit |
| • Total blood cholesterol | | |
| • Routine PAP tests | | |
| • Routine Prostate Specific Antigen (PSA) test - one annually for men age 40 and older | | |
| • Colorectal cancer screening, including: | | |
| — Fecal occult blood test | | |
| — Sigmoidoscopy screening—every five years starting at age 50 | | |
| — Double-contrast barium enema—every five years starting at age 50 | | |
| Note: You should consult with your physician to determine what is appropriate for you. | | |

*(continues on next page)*

### High and Standard Option

| Preventive care, adult (continued) | You Pay | |
|---|---|---|
| | High Option | Standard Option |
| • Colonoscopy screening—every 10 years starting at age 50 | $50 per procedure | $200 per procedure |
| • Routine mammogram—covered for women age 35 and older, as follows:<br><br>— Age 35 through 39, one during this five-year period<br><br>— Age 40 through 64, one every calendar year<br><br>— At age 65 and older, once every two consecutive calendar years<br><br>Note: In addition to routine screening, we cover mammograms when medically necessary to diagnose or to treat your illness. | Nothing | $10 per office visit |
| • Routine immunizations, including but not limited to:<br><br>• Tetanus-diphtheria (Td) booster—once every 10 years, ages 19 and over (except as provided for under childhood immunizations)<br><br>• Influenza/pneumococcal vaccines<br><br>• Hepatitis vaccinations | Nothing | Nothing |
| *Not covered: Physical exams required for obtaining or continuing employment or insurance, or travel* | *All charges* | *All charges* |
| **Preventive care, children** | | |
| • Well-child preventive care visits (23 months and younger)<br><br>• Childhood immunizations recommended by the American Academy of Pediatrics | $5 per office visit | $5 per office visit |
| • Well-child care charges for routine examinations age 24 months and older, such as:<br><br>— Eye exams to determine the need for vision correction<br><br>— Hearing tests to determine the need for hearing correction | $15 per office visit | $30 per office visit |
| *Not covered: Physical exams required for obtaining or continuing employment or insurance, or travel* | *All charges* | *All charges* |

**High and Standard Option**

| Maternity care | You pay | |
| --- | --- | --- |
| | **High Option** | **Standard Option** |
| Complete maternity (obstetrical) care, such as:<br><br>• Prenatal care<br><br>• Delivery<br><br>• First scheduled postnatal care visit<br><br>• Note: Here are some things to keep in mind:<br><br>• You may remain in the hospital up to 48 hours after a regular delivery and 96 hours after a cesarean delivery. We will extend your inpatient stay if medically necessary.<br><br>• We cover routine nursery care of the newborn during the covered portion of the mother's maternity stay. We will cover other care of an infant who requires non-routine treatment only if we cover the infant under a Self and Family enrollment.<br><br>• We pay surgeon and hospitalization services (delivery) the same as for illness and injury. See <u>Section 5(b)</u> for surgery benefits and <u>Section 5(c)</u> for hospital benefits. | $5 per office visit | $5 per office visit |
| *Not covered:*<br><br>• *Routine sonograms to determine fetal age, size or sex* | *All charges* | *All charges* |
| **Family planning** | | |
| • Voluntary sterilization (See Surgical procedures <u>Section 5(b)</u>)<br><br>• Genetic counseling<br><br>• Insertion of surgically implanted time-release contraceptive drugs or injectable contraceptive drugs<br><br>Note: The following contraceptive devices and drugs are provided at no charge: intrauterine devices (IUDs); implanted time-release contraceptive drugs and injectable contraceptive drugs. We cover oral contraceptives, cervical caps, and diaphragms under the prescription drug benefit. | $15 per office visit | $30 per office visit |
| *Not covered:*<br><br>• *Reversal of voluntary surgical sterilization* | *All charges* | *All charges* |

**High and Standard Option**

| Infertility services | High Option | Standard Option |
|---|---|---|
| Diagnosis and treatment of infertility, such as:<br><br>• Artificial insemination:<br><br>— Intravaginal insemination (IVI)<br><br>— Intracervical insemination (ICI)<br><br>— Intrauterine insemination (IUI)<br><br>Note: We cover fertility drugs under the prescription drug benefit. Please refer to Section 5(f). | 50% of our allowance | 50% of our allowance |
| *Not covered:*<br><br>*These exclusions apply to fertile as well as infertile individuals or couples:*<br><br>• *Assisted reproductive technology (ART) procedures, such as:*<br><br>— *In vitro fertilization*<br><br>— *Embryo transfer, gamete intra-fallopian transfer (GIFT), and zygote intra-fallopian transfer (ZIFT)*<br><br>• *Services and supplies related to excluded ART procedures*<br><br>• *Cost of donor sperm and donor eggs and services related to their procurement and storage* | *All charges* | *All charges* |
| **Allergy care** | | |
| • Allergy testing | $15 per office visit | $30 per office visit |
| • Allergy injections | $5 per office visit | $5 per office visit |
| • Allergy serum | Nothing | Nothing |
| *Not covered:*<br><br>• *Provocative food testing*<br><br>• *Sublingual allergy desensitization* | *All charges* | *All charges* |




**High and Standard Option**

| Treatment therapies | You pay | |
|---|---|---|
| | **High Option** | **Standard Option** |
| • Chemotherapy and radiation therapy<br><br>Note: We limit high-dose chemotherapy in association with autologous bone marrow transplants to those transplants listed under Organ/Tissue Transplants in Section 5(b). | Nothing for services provided by a non-physician provider | Nothing for services provided by a non-physician provider |
| • Intravenous (IV)/Infusion therapy—Home IV and antibiotic therapy | $15 for services provided by a physician | $30 for services provided by a physician |
| • Respiratory and inhalation therapy<br><br>• Growth hormone therapy (GHT)<br><br>Note: We cover human growth hormone under the prescription drug benefit.<br><br>• Dialysis—hemodialysis and peritoneal dialysis | $15 per office visit | $30 per office visit |
| *Not covered:*<br><br>• *Chemotherapy supported by a bone-marrow transplant or with stem cell support, for any diagnosis not listed as covered* | *All charges* | *All charges* |
| **Physical and occupational therapies** | | |
| • Physical therapy by qualified physical therapists to restore bodily function when you have a total or partial loss of bodily function due to illness or injury.<br><br>• Occupational therapy by occupational therapists to assist you in achieving and maintaining self-care and improved functioning in other activities of daily life.<br><br>• Cardiac rehabilitation following a heart transplant, bypass surgery, or a myocardial infarction.<br><br>• Multidisciplinary outpatient rehabilitation includes diagnostic and restorative services comprising a program of physical, speech, occupational, and respiratory therapy, as well as certain other items and services that are medically necessary for rehabilitation. | $15 per outpatient visit<br><br>Nothing for inpatient | $30 per outpatient visit<br><br>Nothing for inpatient |
| *Not covered:*<br><br>• *Exercise programs* | *All charges* | *All charges* |
| **Speech therapy** | | |
| • Speech therapy by speech therapists when medically necessary | $15 per outpatient visit<br><br>Nothing for inpatient | $30 per outpatient visit<br><br>Nothing for inpatient |

*2006 Kaiser Foundation Health Plan. Inc.*
*California Region*

23

*High and Standard Option Section 5(a)*

**High and Standard Option**

| Hearing service (testing, treatment, and supplies) | Kaiser High Option | Kaiser Standard Option |
|---|---|---|
| • Hearing testing | $15 per office visit | $30 per office visit |
| *Not covered:*<br><br>• *Hearing aids*<br><br>• *Hearing tests to determine the most appropriate hearing aid* | *All charges* | *All charges* |
| **Vision services (testing, treatment, and supplies)** | | |
| • Diagnosis and treatment of diseases of the eye<br><br>• Eye refractions to determine the need for vision correction and provide a prescription for eyeglasses | $15 per office visit | $30 per office visit |
| • Therapeutic contact lenses for the condition of aniridia for up to two lenses per eye per calendar year<br><br>• Up to a total of six medically necessary aphakic contact replacement lenses per eye, per calendar year to treat aphakia (absence of the crystalline lens of the eye) for children from birth through age 9 | Nothing | Nothing |
| *Not covered:*<br><br>• *Eyeglasses or contact lenses (except for the condition of aniridia or to treat aphakia)*<br><br>• *Radial keratotomy and other refractive surgery* | *All charges* | *All charges* |
| **Foot care** | | |
| • Routine foot care when you are under active treatment for a metabolic or peripheral vascular disease, such as diabetes | $15 per office visit | $30 per office visit |
| *Not covered:*<br><br>• *Cutting, trimming, or removal of corns, calluses, or the free edge of toenails, and similar routine treatment of conditions of the foot, except as stated above*<br><br>• *Treatment of weak, strained, or flat feet, or bunions or spurs; and of any instability, imbalance, or subluxation of the foot (unless the treatment is by open cutting surgery)* | *All charges* | *All charges* |

**High and Standard Option**

| Orthopedic and prosthetic devices | You pay | |
| --- | --- | --- |
| | **High Option** | **Standard Option** |
| We cover internally implanted FDA-approved devices, including but not limited to:<br><br>• Artificial joints<br><br>• Pacemakers<br><br>• Cochlear implants<br><br>• Intraocular implants following cataract removal<br><br>• Surgically implanted breast implants following a mastectomy<br><br>• Repairs and replacements resulting from normal use<br><br>Notes:<br><br>• See <u>Section 5(b)</u> for coverage of the surgery to insert the device<br><br>• We decide whether to rent or purchase the item, and choose the vendor | Nothing | Nothing |
| • We cover FDA-approved devices that are in general use and are required because of a defect in function of a permanently inoperative or malfunctioning body part, including but not limited to:<br><br>• Artificial limbs and eyes and stump hose<br><br>• Externally worn breast prostheses and surgical bras, including necessary replacements, following a mastectomy<br><br>Note: Please refer to the heading "Reconstructive surgery" in <u>Section 5(b)</u> for additional coverage information.<br><br>• Corrective orthopedic appliances for non-dental treatment of temporomandibular joint (TMJ) pain dysfunction syndrome<br><br>• Podiatric devices (including footwear) to prevent or treat diabetes-related complications when prescribed by a Plan podiatrist, physiatrist, or orthopedist<br><br>• Special footwear for foot disfigurement due to disease, injury, or developmental disability<br><br>• Enteral formula for members who require tube feeding per Medicare guidelines | 20% of our allowance | 50% of our allowance |

*(continues on next page)*

**High and Standard Option**

| Orthopedic and prosthetic devices (continued) | You pay | |
| --- | --- | --- |
| | High Option | Standard Option |
| • Ostomy and urological supplies in accord with the Plans' formulary guidelines <br><br> • Repairs and replacements resulting from normal use <br><br> Note: We decide whether to rent or purchase the item, and choose the vendor. | 20% of our allowance | 50% of our allowance |
| *Not covered:* <br><br> • *Comfort, convenience, or luxury equipment or features* <br><br> • *Heel pads and heel cups* <br><br> • *Lumbosacral supports* <br><br> • *Corsets, trusses, elastic stockings, support hose, and other supportive devices* <br><br> • *Shoes or arch supports, even if custom-made, except to treat diabetes-related complications when prescribed by a Plan podiatrist, physiatrist, or orthopedist* | *All charges* | *All charges* |

**High and Standard Option**

| Durable medical equipment (DME) | You pay | |
| --- | --- | --- |
| | **High Option** | **Standard Option** |
| • During a covered stay in a Plan hospital or skilled nursing facility<br><br>• We limit coverage to the standard item that meets your medical needs consistent with our Plan DME formulary guidelines. | Nothing | Nothing |
| For use in the home when intended to be used repeatedly. Includes but is not limited to:<br><br>• Oxygen and oxygen dispensing equipment<br><br>• Hospital beds<br><br>• Wheelchairs including motorized when medically necessary<br><br>• Crutches<br><br>• Walkers<br><br>• Blood glucose testing monitors and related supplies<br><br>• Insulin pumps<br><br>• Infant apnea monitors<br><br>• Repairs and replacements resulting from normal use<br><br>• We limit coverage to the standard item that meets your medical needs consistent with our Plan DME formulary guidelines. We decide whether to rent or purchase the item, and choose the vendor.<br><br>Note: We only provide DME in the Plans' service areas. | 20% of our allowance | 50% of our allowance |
| External devices used for the treatment of sexual dysfunction<br><br>• We limit coverage to the standard item that meets your medical needs consistent with our Plan DME formulary guidelines. We decide whether to rent or purchase the item, and choose the vendor.<br><br>Note: We only provide DME in the Plans' service areas. | 50% of our allowance | 50% of our allowance |

*(continues on next page)*

**High and Standard Option**

| Durable medical equipment (continued) | You pay High Option | Standard Option |
|---|---|---|
| *Not covered:* | *All charges* | *All charges* |

- *Comfort, convenience, or luxury equipment or features*

- *Devices not medical in nature, such as sauna baths, exercise and hygiene equipment*

- *Electronic monitors of the function of the heart or lungs, except for infant apnea monitors*

- *Devices to perform medical tests on blood or other bodily substances or excretions, except diabetic testing equipment and supplies*

- *Dental appliances*

- *Experimental or research equipment*

- *Modifications to the home or auto*

- *Items which are no longer medically necessary must be paid for or returned*

| Home health services | | |
|---|---|---|
| • Home health care ordered by a Plan physician and provided by a registered nurse (RN), licensed practical nurse (LPN), licensed vocational nurse (LVN), or home health aide | Nothing | Nothing |

- Services include oxygen therapy, intravenous therapy, and medications

Notes:

- We only provide these services in the Plans' service areas.

- The services are covered only if a Plan physician determines that it is feasible to maintain effective supervision and control of your care in your home.

| *Not covered:* | *All charges* | *All charges* |
|---|---|---|

- *Nursing care requested by, or for the convenience of, the patient or the patient's family*

- *Home care primarily for personal assistance that does not include a medical component and is not diagnostic, therapeutic, or rehabilitative*

- *Services outside of our service area*

- *Care in the home if the home is not a safe and effective treatment setting*

**High and Standard Option**

| Chiropractic | You pay | |
|---|---|---|
| | **High Option** | **Standard Option** |
| • Chiropractic services covering the diagnosis or treatment of neuromusculoskeletal disorders limited to 20 visits per year. Chiropractic services are provided through American Specialty Health Plans (ASH Plans). You will have direct access to a participating ASH Plans chiropractor without the need to obtain a Plan physician referral. You can obtain a list of ASH Plans Participating Providers by calling **1-800-678-9133.** | $15 per office visit | $15 per office visit |
| • You phone the ASH Plans chiropractor you have selected for an initial examination. After the initial examination and except for chiropractic emergency services, your ASH Plans chiropractor is responsible for obtaining authorization from ASH Plans for any additional chiropractic services on your behalf. ASH Plans will not cover any chiropractic services if you were referred through your Plan physician. | | |
| Note: When necessary and prescribed by an ASH Plans chiropractor, you may receive up to $50 of chiropractic appliances per calendar year. | | |
| *Not covered:* <br> • *Naturopathic services* <br> • *Hypnotherapy* | *All charges* | *All charges* |
| **Educational classes and programs** | | |
| We cover a wide range of health education programs to help protect and improve your health. Examples of covered health education topics include: smoking cessation, pregnancy, depression, and living with chronic conditions. <br><br> Note: Call the Member Service Call Center at **1-800-464-4000** for information on classes near you. <br><br> • Selected health education programs and materials including information on how to use our services | Nothing | Nothing |
| • Individual health education visits | $15 per office visit | $30 per office visit |
| • Other health education programs, materials, and services | Charges vary | Charges vary |

## Section 5(b). Surgical and anesthesia services provided by physicians and other health care professionals

**Important things you should keep in mind about these benefits:**

- Please remember that all benefits are subject to the definitions, limitations, and exclusions in this brochure and we cover them only when we determine they are medically necessary.

- Plan physicians must provide or arrange your care and will also determine the most medically appropriate setting for provision of care. Consult with your physician to determine what is appropriate for you.

- We have no calendar year deductible.

- Be sure to read Section 4, *Your costs for covered services*, for valuable information about how cost-sharing works. Also read Section 9, *Coordinating benefits with other coverage.*

- The amounts listed below are for the charges billed by a physician or other health care professional for your surgical care. Look in Section 5(c) for charges associated with the facility (i.e., hospital, surgical center, etc.).

- **YOUR PHYSICIAN MUST GET A REFERRAL FOR SOME SURGICAL PROCEDURES.** Please refer to the referral information shown in Section 3 to be sure which services require a referral and identify which surgeries require a referral.

- You will pay a $50 copayment (High Option) and a $200 copayment (Standard Option) for any surgical procedures performed in the medical office that require licensed staff to monitor your vital signs as you regain sensation after receiving drugs to reduce sensation or to minimize discomfort.

| Benefit Description | You pay | |
| --- | --- | --- |
| **Surgical procedures** | **High Option** | **Standard Option** |
| A comprehensive range of services, such as: | $15 per office visit when provided in the medical office | $30 per office visit when provided in the medical office |
| • Operative procedures | | |
| • Treatment of fractures, including casting | $50 per admission when provided as an outpatient in a hospital or ambulatory surgery center | $200 per admission when provided as an outpatient in a hospital or ambulatory surgery center |
| • Treatment of burns | | |
| • Normal pre- and postoperative care by the surgeon | | |
| • Pre-surgical testing | $100 per admission when provided on an inpatient basis | $500 per admission when provided on an inpatient basis |
| • Correction of amblyopia and strabismus | | |
| • Endoscopy procedures | | |
| • Biopsy procedures | | |

**High and Standard Option**

| Surgical procedures *(continued)* | You pay | |
| --- | --- | --- |
| | **High Option** | **Standard Option** |
| • Removal of tumors and cysts | $15 per office visit when provided in the medical office | $30 per office visit when provided in the medical office |
| • Correction of congenital anomalies (see *Reconstructive surgery*) | | |
| • Voluntary sterilization (e. g., tubal ligation, vasectomy) | $50 per admission when provided as an outpatient in a hospital or ambulatory surgery center | $200 per admission when provided as an outpatient in a hospital or ambulatory surgery center |
| • Implanting internally implanted, time-release contraceptive drugs and insertion of intrauterine devices (IUDs) | | |
| • Implanting other implantable time-release drugs | $100 per admission when provided on an inpatient basis | $500 per admission when provided on an inpatient basis |
| • Injection of contraceptive drugs | | |
| • Surgical treatment of morbid obesity (bariatric surgery). If your Plan Provider makes a written referral for bariatric surgery, approval for bariatric surgery will be required by the Medical Group's regional bariatric medical director or his or her designee before the surgery will be covered. The Medical Group's criteria for determining whether bariatric surgery is medically necessary are described in the Medical Group's bariatric surgery referral criteria, which are available upon request and are summarized as follows: | | |
| —You must be 18 years of age or older | | |
| —You must have a body mass index (BMI) of 50 or greater. If your BMI is 40 to 49.9, bariatric surgery may be covered if Medical Group authorizes the services in accord with Medical Group's bariatric surgery referral criteria. The criteria may require that another or a combination of medical condition(s) be present, such as diabetes, degenerative joint disease, hypertension, or sleep apnea | | |
| —You must meet all other bariatric surgery referral criteria, including but not limited to: nutritional, psychological, medical, and social readiness for surgery | | |
| Note: See *Services requiring prior our approval* in <u>Section 3</u> for more information. | | |
| • Surgical procedures requiring licensed staff to monitor your vital signs as you regain sensation after receiving drugs to reduce sensation or to minimize discomfort. The following criteria must be met: anesthesia or procedural sedation is required and it is medically necessary that recovery time is monitored by a registered nurse or higher. | $50 per office visit when provided in the medical office | $200 per office visit when provided in the medical office |

*2006 Kaiser Foundation Health Plan, Inc.*
*California Region*                    31                    *(continues on next page)*
*High and Standard Option Section 5(b)*



**High and Standard Option**

| Surgical procedures *(continued)* | You pay High Option | Standard Option |
|---|---|---|
| Note: The following contraceptive devices and drugs are provided at no charge: intrauterine devices (IUDs), implanted time-release contraceptive drugs and injectable contraceptive drugs. We cover oral contraceptives, cervical caps, and diaphragms under the prescription drug benefit.<br><br>• Treatment for sexual dysfunction or inadequacy.<br><br>• Insertion of internal prosthetic devices. See <u>Section 5(a)</u>, *Orthopedic and prosthetic devices* for device coverage information. | $15 per office visit when provided in the medical office<br><br>$50 per admission when provided as an outpatient in a hospital or ambulatory surgery center<br><br>$100 per admission when provided on an inpatient basis | $30 per office visit when provided in the medical office<br><br>$200 per admission when provided as an outpatient in a hospital or ambulatory surgery center<br><br>$500 per admission when provided on an inpatient basis |
| *Not covered:*<br><br>• *Reversal of voluntary surgical sterilization*<br><br>• *Routine treatment of conditions of the foot* | *All charges* | *All charges* |
| **Reconstructive surgery** | | |
| • Surgery to correct a functional defect<br><br>• Surgery to correct a condition caused by injury or illness if:<br><br>— the condition produced a major effect on the member's appearance; and<br><br>— the condition can reasonably be expected to be corrected by such surgery<br><br>• Surgery to correct a condition that existed at or from birth and is a significant deviation from the common form or norm. Examples of congenital anomalies are: protruding ear deformities, cleft lip, cleft palate, birth marks, webbed fingers, and webbed toes<br><br>• All stages of breast reconstruction surgery following a mastectomy, such as:<br><br>— surgery to produce a symmetrical appearance on the other breast,<br><br>— treatment of any physical complications, such as lymphedemas, and<br><br>— breast prostheses and surgical bras and replacements (see Prosthetic devices)<br><br>Note: If you need a mastectomy, you may choose to have the procedure performed on an inpatient basis and remain in the hospital up to 48 hours after the procedure. | $15 per office visit when provided in the medical office<br><br>$50 per admission when provided as an outpatient in a hospital or ambulatory surgery center<br><br>$100 per admission when provided on an inpatient basis | $30 per office visit when provided in the medical office<br><br>$200 per admission when provided as an outpatient in a hospital or ambulatory surgery center<br><br>$500 per admission when provided on an inpatient basis |

**High and Standard Option**

| Reconstructive surgery (continued) | You pay | |
|---|---|---|
| | **High Option** | **Standard Option** |
| • Reconstructive surgical procedures requiring licensed staff to monitor your vital signs as you regain sensation after receiving drugs to reduce sensation or to minimize discomfort. The following criteria must be met: anesthesia or procedural sedation is required and it is medically necessary that recovery time is monitored by a registered nurse or higher. | $50 per office visit when provided in the medical office | $200 per office visit when provided in the medical office |
| Not covered:<br><br>• Cosmetic surgery—any surgical procedure (or any portion of a procedure) performed primarily to improve physical appearance through change in bodily form, except repair of accidental injury<br><br>• Surgeries related to sex transformation | All charges | All charges |
| **Oral and maxillofacial surgery** | | |
| • Oral surgical procedures, limited to:<br><br>• Reduction of fractures or dislocations of the jaw or facial bones<br><br>• Surgical correction of cleft lip, cleft palate, or severe functional malocclusion<br><br>• Removal of stones from salivary ducts<br><br>• Excision of leukoplakia or malignancies<br><br>• Excision of cysts and incision of abscesses when done as independent procedures<br><br>• Medical and surgical treatment of TMJ<br><br>• Other surgical procedures that do not involve the teeth or their supporting structures | $15 per office visit when provided in the medical office<br><br>$50 per admission when provided as an outpatient in a hospital or ambulatory surgery center<br><br>$100 per admission when provided on an inpatient basis | $30 per office visit when provided in the medical office<br><br>$200 per admission when provided as an outpatient in a hospital or ambulatory surgery center<br><br>$500 per admission when provided on an inpatient basis |
| • Oral surgical procedures requiring licensed staff to monitor your vital signs as you regain sensation after receiving drugs to reduce sensation or to minimize discomfort. The following criteria must be met: anesthesia or procedural sedation is required and it is medically necessary that recovery time is monitored by a registered nurse or higher. | $50 per office visit when provided in the medical office | $200 per office visit when provided in the medical office |
| Not covered:<br><br>• Oral implants and transplants<br><br>• Procedures that involve the teeth or their supporting structures (such as the periodontal membrane, gingiva, and alveolar bone) | All charges | All charges |

**High and Standard Option**

| Organ/tissue transplant | You pay High Option | Standard Option |
|---|---|---|
| Limited to:<br><br>• Cornea<br>• Heart<br>• Heart/Lung<br>• Kidney<br>• Kidney/Pancreas<br>• Liver<br>• Lung: Single–Double<br>• Pancreas | $15 per office visit when provided in the medical office<br><br>$50 per admission when provided as an outpatient in a hospital or ambulatory surgery center<br><br>$100 per admission when provided on an inpatient basis | $30 per office visit when provided in the medical office<br><br>$200 per admission when provided as an outpatient in a hospital or ambulatory surgery center<br><br>$500 per admission when provided on an inpatient basis |
| Limited to:<br><br>• Allogeneic (donor) bone marrow transplants<br><br>• Autologous bone marrow transplants (autologous stem cell and peripheral stem cell support) for the following conditions: acute lymphocytic or non-lymphocytic leukemia; advanced Hodgkin's lymphoma; advanced non-Hodgkin's lymphoma; advanced neuroblastoma; breast cancer; multiple myeloma; epithelial ovarian cancer; and testicular, mediastinal, retroperitoneal, and ovarian germ cell tumors<br><br>• Intestinal transplants (small intestine) and the small intestine with the liver or small intestine with multiple organs such as the liver, stomach, and pancreas<br><br>• Limited benefits—Treatment for breast cancer, multiple myeloma, and epithelial ovarian cancer may be provided in a National Cancer Institute (NCI)- or National Institutes of Health (NIH)-approved clinical trial at a Plan-designated Center of Excellence and if approved by the Plans' medical director in accordance with the Plans' protocols.<br><br>Note: We cover related medical and hospital expenses of the donor when we cover your transplant. | $15 per office visit when provided in the medical office<br><br>$50 per admission when provided as an outpatient in a hospital or ambulatory surgery center<br><br>$100 per admission when provided on an inpatient basis | $30 per office visit when provided in the medical office<br><br>$200 per admission when provided as an outpatient in a hospital or ambulatory surgery center<br><br>$500 per admission when provided on an inpatient basis |
| • Transplants requiring licensed staff to monitor your vital signs as you regain sensation after receiving drugs to reduce sensation or to minimize discomfort. The following criteria must be met: anesthesia or procedural sedation is required and it is medically necessary that recovery time is monitored by a registered nurse or higher. | $50 per office visit when provided in the medical office | $200 per office visit when provided in the medical office |

**High and Standard Option**

| Organ/tissue transplants *(continued)* | You pay | |
| --- | --- | --- |
| | **High Option** | **Standard Option** |
| *Not covered:* | *All charges* | *All charges* |
| • *Donor screening tests and donor search expenses, except those performed for the actual donor* | | |
| • *Implants of non-human artificial organs* | | |
| • *Transplants not listed as covered* | | |
| **Anesthesia** | | |
| • Professional services provided during a surgical procedure | Nothing | Nothing |
| • Hospital (inpatient) | | |
| • Ambulatory surgery center (outpatient) | | |

**High and Standard Option**

## Section 5(c). Services provided by a hospital or other facility, and ambulance services

### Important things you should keep in mind about these benefits:

- Please remember that all benefits are subject to the definitions, limitations, and exclusions in this brochure and we cover them only when we determine they are medically necessary.

- Plan physicians must provide or arrange your care and you must be hospitalized in a Plan facility.

- We have no calendar year deductible.

- Be sure to read Section 4, *Your costs for covered services,* for valuable information about how cost-sharing works. Also read Section 9, *Coordinating benefits with other coverage.*

- The amounts listed below are for the charges billed by the facility (i.e., hospital or surgical center) or ambulance service for your surgery or care. Any costs associated with the professional charge (i.e., physicians, etc.) are covered in Sections 5(a) or (b).

| Benefit Description | You pay | |
|---|---|---|
| **Inpatient hospital** | **High Option** | **Standard Option** |
| Room and board, such as: | $100 per admission | $500 per admission |
| • Ward, semiprivate, or intensive care accommodations | | |
| • General nursing care | | |
| • Meals and special diets | | |
| Note: Your physician may prescribe accommodation or private duty nursing (independent nursing) care if it is medically necessary. If you want a private room when it is not medically necessary, you pay the additional charge above the semiprivate room rate. | | |
| Other hospital services and supplies, such as: | Nothing | Nothing |
| • Operating, recovery, maternity, and other treatment rooms | | |
| • Prescribed drugs and medicines | | |
| • Diagnostic laboratory tests and X-rays | | |
| • Administration of blood and blood products | | |
| • Blood or blood plasma | | |
| • Dressings, splints, casts, and sterile tray services | | |
| • Medical supplies and equipment, including oxygen | | |
| • Anesthetics, including nurse anesthetist services | | |

**High and Standard Option**

| Inpatient hospital *(continued)* | You pay | |
| --- | --- | --- |
| | **High Option** | **Standard Option** |
| Other hospital services and supplies *(continued)* | Nothing | Nothing |
| • Plan physicians' and surgeons' services and supplies, including consultation and treatment by specialists | | |
| • Take-home items | | |
| Note: You may receive covered hospital services for certain dental procedures if a Plan physician determines you need to be hospitalized for reasons unrelated to the dental procedure. The conditions for which we will provide hospitalization include hemophilia and heart disease. The need for anesthesia, by itself, is not such a condition. | | |
| *Not covered:* | *All charges* | *All charges* |
| • *Custodial care and care in an intermediate care facility* | | |
| • *Personal comfort items, such as barber services, guest meals, and beds* | | |
| • *Private nursing care, except when medically necessary* | | |
| • *Inpatient dental procedures* | | |
| **Outpatient hospital or ambulatory surgical center** | | |
| • Operating, recovery, and other treatment rooms | $50 per admission | $200 per admission |
| • Prescribed drugs and medicines | | |
| • Dressings, casts, and sterile trays | | |
| • Diagnostic laboratory tests, X-rays, and pathology services | | |
| • Administration of blood, blood plasma, and other biologicals | | |
| • Blood and blood plasma | | |
| • Pre-surgical testing | | |
| • Dressings, casts, and sterile tray services | | |
| • Medical supplies, including oxygen | | |
| • Anesthetics and anesthesia service | | |

**High and Standard Option**

| Skilled nursing care benefits | You pay | |
|---|---|---|
| | **High Option** | **Standard Option** |
| • Up to 100 days per benefit period when you need full-time skilled nursing care. Your benefit period begins when you enter a hospital or skilled nursing facility and ends when you have not been a patient in either a hospital or skilled nursing facility for 60 consecutive days. | Nothing | Nothing |
| • All necessary services are covered, including: | | |
| • Bed, board, and general nursing care | | |
| • Prescribed drugs and their administration, biologicals, supplies, and equipment ordinarily provided or arranged by the skilled nursing facility | | |
| *Not covered:* | *All charges* | *All charges* |
| • *Custodial care* | | |
| • *Care in an intermediate care facility* | | |
| **Hospice care** | | |
| Supportive and palliative care for a terminally ill member: | Nothing | Nothing |
| • You must reside in the service area | | |
| • Services are provided in the home | | |
| • Services are provided in a Plan-approved hospice facility | | |
| • Services include inpatient care, outpatient care, and family counseling. A Plan physician must certify that you have a terminal illness, with a life expectancy of approximately twelve months or less. | | |
| Notes: | | |
| • Hospice is a program for caring for the terminally ill that emphasizes supportive services, such as home care and pain control, rather than curative care of the terminal illness. A person who is terminally ill may elect to receive hospice benefits. These palliative and supportive services include nursing care, medical social services, physician services, and short-term inpatient care for pain control and acute and chronic symptom management. We also provide counseling and bereavement services for the individual and family members, and therapy for purposes of symptom control to enable the person to continue life with as little disruption as possible. If you make a hospice election, you are not entitled to receive other health care services that are related to the terminal illness. If you have made a hospice election, you may revoke that election at any time, and your standard health benefits will be covered. | | |

**High and Standard Option**

| Hospice care *(continued)* | You pay | |
|---|---|---|
| | **High Option** | **Standard Option** |
| Notes: *(continued)*<br><br>• The services are covered only if a Plan physician determines that it is feasible to maintain effective supervision and control of your care in your home. | Nothing | Nothing |
| *Not covered:*<br><br>• *Care in the home if the home is not a safe and effective treatment setting* | | |
| **Ambulance** | | |
| • Nonemergency ambulance service and psychiatric transport van to a facility we designate when medically appropriate. These services are covered only when the vehicle transports you to or from covered services. | $50 per trip | $150 per trip |
| *Not covered:*<br><br>• *Transports that we determine are not medically necessary*<br><br>• *Transportation by car, taxi, bus, gurney van, wheelchair van, and any other type of transportation (other than a licensed ambulance or psychiatric transport van), even if it is the only way to travel to a Plan Provider* | *All charges* | *All charges* |

**High and Standard Option**

## Section 5(d). Emergency services/accidents

**Important things you should keep in mind about these benefits:**

- Please remember that all benefits are subject to the definitions, limitations, and exclusions in this brochure and we cover them only when we determine they are medically necessary.

- We have no calendar year deductible.

- Be sure to read <u>Section 4</u>, *Your costs for covered services*, for valuable information about how cost-sharing works. Also read <u>Section 9</u>, *Coordinating benefits with other coverage*.

## What is a medical emergency?

A medical emergency is the sudden and unexpected onset of a condition or an injury that you believe endangers your life or could result in serious injury or disability, and requires immediate medical or surgical care. Some problems are emergencies because, if not treated promptly, they might become more serious; examples include deep cuts and broken bones. Others are emergencies because they are potentially life-threatening, such as heart attacks, strokes, poisonings, gunshot wounds, or sudden inability to breathe. There are many other acute conditions that we may determine are medical emergencies—what they all have in common is the need for quick action.

## What to do in case of emergency

You are covered for medical emergencies anywhere in the world. In a medical emergency, call **911** or go to the nearest hospital. If you call **911**, when the operator answers, stay on the phone and answer all questions.

## Emergencies within our service area

If you think you have a medical emergency, call **911** or go to the nearest hospital. To better coordinate your emergency care, we recommend that you go to a Plan Hospital if it is reasonable to do so considering your condition or symptoms. Please refer to *Your Guidebook to Kaiser Permanente Services (Guidebook)* for the location of Plan Hospitals that provide emergency care.

Post-stabilization care is the services you receive after your treating physician determines that you are clinically stable. We cover post-stabilization care if a Plan Provider provides it or if you obtain authorization from us to receive the care from a non-Plan Provider.

When you are sick or injured, you may have an urgent care need. An urgent care need is one that requires prompt medical attention, but is not a medical emergency. If you think you may need urgent care, call the appropriate appointment or advice nurse number at a Plan Facility. Please refer to the *Guidebook* for advice nurse and Plan Facility telephone numbers.

## Emergencies outside our service area

If you think you have a medical emergency, call **911** or go to the nearest hospital.

Post-stabilization care is the services you receive after your treating physician determines that you are clinically stable. We cover post-stabilization care if a Plan Provider provides it or if you obtain authorization from us to receive the care from a non-Plan Provider.

When you are sick or injured, you may have an urgent care need. An urgent care need is one that requires prompt medical attention, but is not a medical emergency. If you think you may need urgent care, call the appropriate appointment or advice nurse number at a Plan Facility. Please refer to the *Guidebook* for advice nurse and Plan Facility telephone numbers. If you are temporarily outside the service area and have an urgent care need due to an unforeseen illness or injury, we cover the medically necessary services and supplies you receive from a non-Plan Provider if we find that the services and supplies were necessary to prevent serious deterioration of your health and they could not be delayed until you returned to the service area.

**High and Standard Option**

You may obtain emergency and urgent care services from Kaiser Permanente medical facilities and providers when you are in the service area of another Kaiser Permanente plan. The facilities will be listed in the local telephone book under Kaiser Permanente. These numbers are available 24 hours a day, seven days a week. You may also obtain information about the location of facilities by calling **1-800-227-2415**.

### How to Obtain Authorization

You must call us at **1-800-225-8883** (the telephone number is also on your ID card) to:

- Request authorization for post-stabilization care before you obtain the care from a non-Plan Provider if it is reasonably possible to do so (otherwise, call us as soon as reasonably possible)

- Notify us that you have been admitted to a non-Plan Hospital.

We understand that extraordinary circumstances can delay your ability to call us, for example if you are unconscious or a young child without a parent or guardian. In these cases, you must call us as soon as it is reasonably possible. Please keep in mind that anyone can call us. We do not cover any care you receive from non-Plan Providers after you're clinically stable unless we authorize it, so if you don't call us as soon as reasonably possible you increase the risk that you will have to pay for this care.

| Benefit Description | You pay | |
|---|---|---|
| **Emergency within our service area** | **High Option** | **Standard Option** |
| Emergency room visit for emergency services<br><br>Notes:<br><br>• We waive your emergency copayment if you are admitted to the hospital as an inpatient.<br><br>• Transfers to an observation bed or observation status do not qualify as an admission to a hospital and your emergency copayment will not be waived. | $50 per visit | $100 per visit |
| *Not covered:*<br><br>• *Elective care or nonemergency care (unless you receive prior authorization)*<br><br>• *Urgent care at a non-Plan urgent care center* | *All charges* | *All charges* |

**High and Standard Option**

| Emergency outside our service area | You pay | |
| --- | --- | --- |
| | **High Option** | **Standard Option** |
| • Emergency care as an outpatient or inpatient at a hospital, including physicians' services  <br><br>• Emergency room visit for emergency services  <br><br>• Emergency care at an urgent care center  <br><br>Note: See Section 5(g) for travel benefit coverage of continuing or follow-up care. | $50 per visit | $100 per visit |
| • Emergency care in a Kaiser Foundation hospital in another Kaiser Foundation Health Plan service area  <br><br>Note: See Section 5(g) for travel benefit coverage of continuing or follow-up care. | The amount charged a member in that service area. | The amount charged a member in that service area. |
| *Not covered:*  <br><br>• *Elective care or nonemergency care at non-Plan facilities (unless you receive prior authorization)* | *All charges* | *All charges* |
| **Urgent care outside our service area** | | |
| • Urgent care at an urgent care center | $15 per visit | $30 per visit |
| • Urgent care at an emergency room | $50 per visit | $100 per visit |
| Note: An urgent care need is one that requires prompt medical attention, but is not a medical emergency | | |
| **Ambulance** | | |
| • Professional ambulance service, when medically appropriate  <br><br>• We cover emergency services of a licensed ambulance when:  <br><br>• Your treating physician determines that you must be transported to another facility when you are not clinically stable because the care you need is not available at the treating facility.  <br><br>• You are not already being treated, and you reasonably believe that your condition requires ambulance transportation. | $50 per trip | $150 per trip |
| *Not covered:*  <br><br>• *Transports we determine are not medically necessary*  <br><br>• *Transportation by car, taxi, bus, gurney van, wheelchair van, and any other type of transportation (other than a licensed ambulance or psychiatric transport van), even if it is the only way to travel to a Plan Provider* | *All charges* | *All charges* |

**High and Standard Option**

## Section 5(e). Mental health and substance abuse benefits

When you get our approval for services and follow a treatment plan we approve, cost-sharing, and limitations for Plan mental health and substance abuse benefits will be no greater than for similar benefits for other illnesses and conditions.

### Important things you should keep in mind about these benefits:

- Please remember that all benefits are subject to the definitions, limitations, and exclusions in this brochure and we cover them only when we determine they are clinically appropriate to treat your condition.

- Plan physicians must provide or arrange your care

- We have no calendar year deductible.

- Be sure to read Section 4, *Your costs for covered services,* for valuable information about how cost-sharing works. Also read Section 9, *Coordinating benefits with other coverage.*

| Benefit Description | You pay | |
| --- | --- | --- |
| Mental health and substance abuse benefits | High Option | Standard Option |
| We cover all diagnostic and treatment services recommended by a Plan provider and contained in a treatment plan. The treatment plan may include services, drugs, and supplies described elsewhere in this brochure.<br><br>Notes:<br><br>• We cover the services only when we determine that the care is clinically appropriate to treat your condition, and only when you receive the care as part of a treatment plan developed by a Plan provider.<br><br>• OPM will base its review of disputes about treatment plans on the treatment plan's clinical appropriateness. OPM will generally not order us to pay or provide one clinically appropriate treatment in favor of another. | Your cost sharing responsibilities are no greater than for other illnesses or conditions | Your cost sharing responsibilities are no greater than for other illnesses or conditions |

*(continues on next page)*

**High and Standard Option**

| Mental health and substance abuse benefits *(continued)* | You Pay High Option | You Pay Standard Option |
|---|---|---|
| Diagnosis and treatment of psychiatric conditions, mental illness, and mental disorders. Services include:<br><br>• Diagnostic evaluation<br><br>• Treatment (including individual, family, and group therapy visits)<br><br>• Crisis intervention and stabilization for acute episodes<br><br>• Psychological testing that is medically necessary to determine the appropriate psychiatric treatment<br><br>• Medication management and evaluation<br><br>• Diagnosis and treatment of alcoholism and drug abuse. Services include:<br><br>   —Treatment and counseling (including individual, family, and group therapy visits)<br><br>   —Outpatient detoxification (medical management of withdrawal from the substance)<br><br>Notes:<br><br>• You may see a Plan mental health or substance abuse provider for outpatient treatment without a referral from your primary care physician.<br><br>• Your Plan provider will develop a treatment plan to assist you in improving or maintaining your condition and functional level, or to prevent relapse and will determine which diagnostic and treatment services are appropriate for you. | $15 per individual office visit<br><br>$7 per group office visit | $30 per individual office visit<br><br>$15 per group office visit |
| • Inpatient psychiatric care<br><br>• Hospital alternative services, such as partial hospitalization and intensive outpatient psychiatric treatment programs<br><br>• Inpatient substance abuse care<br><br>• Methadone treatment for a pregnant woman throughout the pregnancy and for two months after delivery<br><br>Note: All inpatient admissions and hospital alternative services treatment programs require approval by a Plan physician. | $100 per admission | $500 per admission |

**High and Standard Option**

| Mental health and substance abuse benefits *(continued)* | You pay | |
|---|---|---|
| | **High Option** | **Standard Option** |
| • Recovery services for alcoholism and drug abuse in a non-medical residential care facility<br><br>Note: All inpatient and alternative services treatment programs require approval by a Plan physician. We cover up to 60 days per calendar year and no more than 120 days in any five consecutive year period of non-medical residential recovery care. | $100 per stay | $100 per stay |
| *Not covered:*<br><br>• *Care that is not clinically appropriate for the treatment of your condition*<br><br>• *Services we have not approved*<br><br>• *Intelligence, IQ, aptitude ability, learning disorders, or interest testing not necessary to determine the appropriate treatment of a psychiatric condition*<br><br>• *Evaluation or therapy on court order or as a condition of parole or probation, or otherwise required by the criminal justice system, unless determined by a Plan physician to be medically necessary and appropriate*<br><br>• *Services that are custodial in nature*<br><br>• *Services rendered or billed by a school or a member of its staff*<br><br>• *Services provided under a Federal, state, or local government program*<br><br>• *Psychoanalysis or psychotherapy credited toward earning a degree or furtherance of education or training regardless of diagnosis or symptoms* | *All charges* | *All charges* |

**Limitation** We may limit your benefits if you do not obtain a treatment plan.

**High and Standard Option**

## Section 5(f). Prescription drug benefits

**Important things you should keep in mind about these benefits:**

- We cover prescribed drugs and medications, as described in the chart beginning on the next page.

- Please remember that all benefits are subject to the definitions, limitations, and exclusions in this brochure and we cover them only when we determine they are medically necessary.

- We have no calendar year deductible.

- Be sure to read Section 4, *Your costs for covered services,* for valuable information about how cost-sharing works. Also read Section 9, *Coordinating benefits with other coverage.*

There are important features you should be aware of. These include:

- **Who can write your prescription.** A Plan physician or any dentist must write the prescription. Drugs prescribed by dentists are not covered if a Plan physician determines that they are not medically necessary.

- **Where you can obtain them.** You must fill the prescription at a Plan pharmacy or another pharmacy that we designate, or through our mail order program.

- **We use a formulary.** Our formulary includes a list of prescription drugs that have been approved by our Pharmacy and Therapeutics Committee. This committee, which is comprised of Plan physicians and other Plan providers, selects prescription drugs for the formulary based on a number of factors, including safety and effectiveness as determined from a review of medical literature and research. The committee meets quarterly to consider adding and removing prescription drugs on the formulary. If you would like information about whether a particular drug is included on our formulary, please call the Member Service Call Center at **1-800-464-4000**.

  If the physician specifically prescribes a non-formulary drug because it is medically necessary, the non-formulary drug will be covered. If you request the non-formulary drug when your physician has prescribed a substitution, the non-formulary drug is not covered. However, you may purchase the non-formulary drug from a Plan pharmacy at prices charged to members for non-covered drugs.

- **These are the dispensing limitations.** On the High Option plan, we provide up to a 100-day supply (3 cycles of oral contraceptives) for most drugs at one copayment. On the Standard Option plan, we provide up to a 30-day supply (1 cycle of oral contraceptives) for most drugs when dispensed in a Plan pharmacy at one copayment or up to a 100-day supply (3 cycles of oral contraceptives) through our mail order program for two copayments. Certain medications are not available through the mail, including high cost and sexual dysfunction drugs. On either option, drugs that have a significant potential for waste will be provided for up to a 30-day supply in any 30-day period. In addition, we may limit the provision of drugs that are in limited supply in the market. Additionally, Plan members called to active military duty (or members in time of national emergency) who need to obtain prescribed medications should contact our Member Service Call Center at **1-800-464-4000** for further information regarding dispensing limitations.

  The brand name copayment applies to compounded products and single-source generic drugs, which are generic drugs that are available in the United States only from a single manufacturer and that are not listed as generic in the then-current commercially available drug database(s) to which Health Plan subscribes.

- **When you have to file a claim.** When you receive drugs from a Plan pharmacy, you do not have to file a claim. For a covered emergency, you will need to file a claim when you receive drugs from a non-Plan pharmacy.

*Prescription drug benefits begin on the next page*

**High and Standard Option**

| Covered medications and supplies | You pay | |
|---|---|---|
| | **High Option** | **Standard Option** |
| We cover the following medications and supplies prescribed by a Plan physician or dentist in accord with our drug formulary and obtained from a Plan pharmacy or through our mail order program:<br><br>• Certain self-administered IV drugs and fluids requiring specific types of parenteral infusion, and the supplies required for their administration<br><br>• Amino acid-modified products used to treat congenital errors of amino acid metabolism<br><br>• Diabetes urine-testing supplies<br><br>• Vaccines and immunizations approved for use by the Food and Drug Administration<br><br>• Elemental dietary enteral formula when used as a primary therapy for regional enteritis | Nothing | Nothing |
| • Drugs and medicines that by Federal law of the United States require a physician's prescription for their purchase, except as excluded below. We also cover certain drugs that do not require a prescription by law if they are listed on our drug formulary.<br><br>• Insulin<br><br>• Certain insulin administration devices<br><br>• Disposable needles and syringes for the administration of covered medications<br><br>• Smoking cessation drugs are covered only if you participate in a Plan approved behavioral intervention program<br><br>Note: The brand name drug copayment will apply to compounded products listed on our drug formulary, or that include ingredients requiring a prescription by law. | Up to a 100-day supply at $10 for generic drugs and $25 for brand name drugs<br><br>All charges if you request a brand name drug in place of a generic drug | Up to a 30-day supply at $10 for generic drugs and $30 for brand name drugs<br><br>All charges if you request a brand name drug in place of a generic drug |
| • Oral contraceptives<br><br>• Cervical caps and diaphragms | $10 for generic drugs (up to a 3 cycle supply)<br><br>$25 per prescription for brand name drugs (up to a 3 cycle supply)<br><br>All charges if you request a brand name drug in place of a generic drug<br><br>$25 per device | $10 for generic drugs (1 cycle)<br><br>$30 per prescription for brand name drugs (1 cycle)<br><br>All charges if you request a brand name drug in place of a generic drug<br><br>$30 per device |

*(continues on next page)*

### High and Standard Option

| Covered medications and supplies *(continued)* | You pay | |
| --- | --- | --- |
| | **High Option** | **Standard Option** |
| • Fertility drugs | 50% of our allowance | 50% of our allowance |
| • Sexual dysfunction drugs:<br><br>—Episodic drugs will be provided up to a maximum of 27 doses in any 100-day period. Additional prescribed doses during the same 100 days will be dispensed at our allowance.<br><br>—Maintenance drugs that require doses at regulated intervals. | | |
| *Not covered:*<br><br>• *Drugs and supplies for cosmetic purposes*<br><br>• *Vitamins and nutritional supplements that can be purchased without a prescription*<br><br>• *Nonprescription drugs, unless they are included in our drug formulary*<br><br>• *Medical supplies, such as dressings and antiseptics*<br><br>• *Drugs to enhance athletic performance*<br><br>• *Drugs that shorten the duration of the common cold*<br><br>• *Drugs for the promotion, prevention, or other treatment of hair loss or growth*<br><br>• *Compounded products unless the product is listed on our drug formulary, or one of the ingredients requires a prescription by law*<br><br>• *Any requested packaging of drugs (such as dose packaging) other than the dispensing pharmacy's standard packaging*<br><br>*Note: If a drug for which a prescription is required by law is excluded and we had been covering and providing it to you for a use approved by the FDA, we will continue to provide the drug upon payment of 50% of our allowance if a Plan physician continues to prescribe the drug for the same condition.* | *All charges* | *All charges* |

 
**High and Standard Option**

## Section 5(g). Special features

| Feature | Description |
| --- | --- |
| **Flexible benefits option** | Under the flexible benefits option, we determine the most effective way to provide services. |
| | We may identify medically appropriate alternatives to traditional care and coordinate other treatments as a less costly alternative benefit. |
| | Alternative treatments are subject to our ongoing review. |
| | By approving an alternative treatment, we cannot guarantee you will get it in the future. |
| | The decision to offer an alternative treatment is solely ours, and we may withdraw it at any time and resume regular contract benefits. |
| | Our decision to offer or withdraw alternative treatments is not subject to OPM review under the disputed claims process. |
| **Services from other Kaiser Permanente Plans** | When you visit another Kaiser Permanente Plan, you are entitled to receive virtually all the services described in this brochure (including our mail order prescription program) at any Kaiser Permanente medical office or medical center. You must pay the charges or copayments imposed by the Kaiser Permanente Plan you are visiting, with the exception of mail order prescriptions which are administered by your home Plan. You will have to pay the charges imposed by the plan you are visiting. If the plan you are visiting has a service that is different from the services of this Plan, you are not entitled to receive that service. |
| | Some services covered by this Plan, such as artificial reproductive services and the services of specialized rehabilitation facilities, will not be available in other Kaiser Permanente service areas. If a service is limited to a specific number of visits or days, you are entitled to receive only the number of visits or days covered by the Plan in which you are enrolled. |
| | If you are seeking routine, non-emergent, or non-urgent services, you should call the Kaiser Permanente Member Services Department in that service area and request an appointment. You may obtain routine follow-up or continuing care from these plans, even when you have obtained the original services in the service area of this Plan. If you require emergency services as the result of unexpected or unforeseen illness that requires immediate attention, you should go directly to the nearest Kaiser Permanente facility to receive care. |
| | At the time you register for services, you will be asked to pay the charges required by the local plan. |
| | If you plan to travel to an area with another Kaiser Permanente plan and wish to obtain more information about the services available to you from the Kaiser Permanente plan, please call our Member Service Call Center at **1-800-464-4000**. |
| **24-hour nurse line** | For any of your health concerns, 24 hours a day, 7 days a week, you may talk with a registered nurse who can help assess medical symptoms and provide advice over the phone, when medically appropriate. You can obtain an advice nurse phone number for the nearest Kaiser Permanente facility in the white pages of your phone book under "Kaiser Permanente." |

**High and Standard Option**

| Feature | Description |
|---|---|
| **Services for deaf and hearing impaired** | We provide a TTY/text telephone number 1-800-777-1370. Sign language services are also available. |
| **Centers of Excellence** | Kaiser Permanente's National Transplant Network (NTN) was created to offer members greater choice of and access into Centers of Excellence (COE) that exceed minimum quality standards for experience (based on volume of cases and transplant team composition), outcomes, and service (waiting time and access to the Center). The goal is to ensure that members are treated at Centers where optimal outcomes can be expected, measured, and managed. Currently, the NTN contains 20 Centers that include 70 transplant programs. Transplant services provided through the NTN are heart, lung, heart/lung, liver, simultaneous kidney/pancreas, pancreas, small bowel, and bone marrow/stem cell (autologous and allogeneic). |
| **Travel benefit** | Kaiser Permanente's travel benefits for Federal employees provide you with outpatient follow-up and/or continuing medical care when you are temporarily outside your home service area by more than 100 miles or outside of any other Kaiser Permanente service area. These benefits are in addition to your emergency and urgent care benefits and include: Outpatient follow-up care necessary to complete a course of treatment after a covered emergency. Services include removal of stitches, a catheter, or a cast. Outpatient continuing care for conditions diagnosed and treated within the previous 90 days by a Kaiser Permanente health care provider or affiliated Plan provider. Services include dialysis and prescription drug monitoring. You pay $25 for each follow-up and/or continuing care office visit. This amount will be deducted from the payment we make to you. Your benefit is limited to $1,200 each calendar year. For more information about this benefit call 1-800-464-4000. File claims as shown in Section 7. *The following are a few examples of services not included in your travel benefits coverage:* • *Nonemergency hospitalization* • *Infertility treatments* • *Medical and hospital costs resulting from a normal full-term delivery of a baby outside the service area* • *Transplants* • *DME* • *Prescription drugs* • *Home health services* |

**High and Standard Option**

## Section 5(h). Dental benefits

**Important things you should keep in mind about these benefits:**

- Please remember that all benefits are subject to the definitions, limitations, and exclusions in this brochure and are payable only when we determine they are medically necessary.

- We cover hospitalization for dental procedures at a Plan hospital we designate only when a non-dental physical impairment exists which makes hospitalization necessary to safeguard the health of the patient. See Section 5(c) for inpatient hospital benefits. We do not cover the dental procedure except as described below.

- Be sure to read Section 4, *Your costs for covered services,* for valuable information about how cost-sharing works. Also read Section 9, *Coordinating benefits with other coverage.*

| Benefit Description | You pay | |
|---|---|---|
| **Accidental Injury to Teeth** | **High Option** | **Standard Option** |
| We cover services to promptly restore (but not replace) a sound, natural tooth, if: <br><br> • damage is due to an accidental injury from trauma to the mouth from violent contact with an external object, <br><br> • the tooth has not been restored previously, except in a proper manner, and <br><br> • the tooth has not been weakened by decay, periodontal disease, or other existing dental pathology. <br><br> Note: Services will be covered only when provided within 72 hours following the accidental injury. | Nothing up to the benefit maximum of $500 of covered charges per accidental injury <br><br> All charges after reaching the benefit maximum of $500 per accidental injury | Nothing up to the benefit maximum of $500 of covered charges per accidental injury <br><br> All charges after reaching the benefit maximum of $500 per accidental injury |
| *Not covered:* <br><br> • *Services for conditions caused by an accidental injury occurring before your eligibility date.* | *All charges* | *All charges* |

| **Dental benefits** | | |
|---|---|---|

We have no dental benefits on the High Option or on the Standard Option except as covered above.

## Section 5(i). Non-FEHB benefits available to Plan members

The benefits on this page are not part of the FEHB contract or premium, **and you cannot file an FEHB disputed claim about them**. Fees you pay for these services do not count toward FEHB deductibles or catastrophic protection out-of-pocket maximums.

**Eyewear discount** (Available only on the High Option.)

As a Kaiser Permanente FEHB Program Member, you and your eligible dependents will be able to purchase eyewear at significant savings. When you visit any of the California Health Plan Optical Departments, you will receive 25 percent off our allowance for frames and lenses and options such as no-line bifocals and prescription and non-prescription sunglasses. You will also be able to receive 25 percent off our allowance for cosmetic contact lenses and the required lens fitting.

*Limitations & exclusions:* This discount will apply only to purchased eyewear under the FEHBP basic coverage. The vision discount may not be coordinated with any other Kaiser Permanente Health Plan vision benefit. This discount will also not apply to any sale, promotional, or packaged eyewear program or for any contact lens Extended Purchase Agreement (which includes products purchased in this Agreement) or to low-vision aids or devices.

**Expanded dental benefits**

Kaiser Permanente is pleased to offer Federal employees, retirees, and dependents a choice of dental coverages to supplement your medical plan.

*Option I: KPIC's Dental Assistance Insurance Plan*
Underwritten by Kaiser Permanente Insurance Company (KPIC) and administered by Delta Dental of California, KPIC's Dental Assistance Insurance Plan uses a Table of Allowances that allows you the freedom to see any licensed dentist of your choice. The Table of Allowances lists the dollar amount KPIC will pay for each covered dental service. Your calendar year deductible is $50 per person, up to a maximum of $150 for the family. There is no deductible on diagnostic and preventive services. KPIC's Dental Assistance Insurance Plan offers a full range of services: diagnostic, preventive, restorative, endodontics, periodontics, oral surgery, and both fixed and removable prosthodontics.

*Option II: DeltaCare*
DeltaCare offers dental health maintenance organization (HMO) benefits that are administered by PMI, an affiliate of Delta Dental Plan of California. You select a dentist from the network of contracting DeltaCare dental offices that is most convenient for you and your family. With DeltaCare, there are no claim forms to worry about. DeltaCare also provides a full range of services that includes preventive, restorative, endodontics, periodontics, prosthetics, oral surgery, and orthodontics. Under this program, the subscriber pays a specific copayment for most covered services.

| Premium* | Option I/KPIC's Dental Assistance Insurance Plan | Option II/DeltaCare | Option II/DeltaCare |
|---|---|---|---|
| | Monthly Premium | Monthly Premium | Quarterly Premium |
| Self Only | $26.20 | $10.77 | $32.31 |
| Self & One Party | $46.43 | $18.02 | $54.06 |
| Self & Two or More | $69.79 | $27.32 | $81.96 |

These dental plans are not part of the FEHB contract or premium, enrollment is voluntary. Enrollment in either dental plan is for a period of one year. This does not apply if your employment is terminated. Payment for either the KPIC or PMI dental plan will be automatically withdrawn from the checking, savings, or credit union account you specify.

*How to enroll*

Please use the enclosed postage-paid card to send in your application. If you would like more information on either dental plan, please call:

> Delta Dental: **(800) 933-9312**
> KPIC Dental Assistance Insurance Plan: federal dental group number is 9874
> PMI DeltaCare: **(800) 422-4234**
> PMI DeltaCare Federal dental group number is 8161

## Section 6. General exclusions—things we don't cover

The exclusions in this section apply to all benefits. **Although we may list a specific service as a benefit, we will not cover it unless your Plan physician determines it is medically necessary to prevent, diagnose, or treat your illness, disease, injury, or condition.**

We do not cover the following:

- When a service is not covered, all services, drugs or supplies related to the noncovered service are excluded from coverage, except services we would otherwise cover to treat complications of the noncovered service;

- Care by non-Plan providers except for authorized referrals or emergencies (see Section 5(d)), services under the Travel Benefit (see Section 5(g)), and services received from other Kaiser Permanente plans (see Section 5(g));

- Services, drugs, or supplies you receive while you are not enrolled in this Plan;

- Services, drugs, or supplies that are not medically necessary;

- Services, drugs, or supplies not required according to accepted standards of medical, dental, or psychiatric practice;

- Experimental or investigational procedures, treatments, drugs, or devices;

- Services, drugs, or supplies related to abortions, except when the life of the mother would be endangered if the fetus were carried to term or when the pregnancy is the result of an act of rape or incest;

- Services, drugs, or supplies you receive without charge while in active military service;

- Services, drugs, or supplies related to sex transformations; or

- Services, drugs, or supplies you receive from a provider or facility barred from the FEHB Program.

## Section 7. Filing a claim for covered services

When you see Plan physicians, receive services at Plan hospitals and facilities, or fill your prescription drugs at Plan pharmacies, you will not have to file claims. Just present your identification card and pay your copayment or coinsurance.

You will only need to file a claim when you receive emergency services or urgent care outside our service area from non-Plan providers or when you use the travel benefit. Sometimes these providers bill us directly. Check with the provider. If you need to file the claim, here is the process:

**Medical and hospital benefits**

In most cases, providers and facilities file claims for you. Physicians must file on the form HCFA-1500, Health Insurance Claim Form. Facilities will file on the UB-92 form. For claims questions and assistance, call our Member Service Call Center at **1-800-464-4000**.

When you must file a claim—such as for services you receive outside the Plans' service area—submit it on the HCFA-1500 or a claim form that includes the information shown below. Bills and receipts should be itemized and show:

- Covered member's name and ID number;
- Name and address of the physician or facility that provided the service or supply;
- Dates you received the services or supplies;
- Diagnosis;
- Type of each service or supply;
- The charge for each service or supply;
- Follow-up services rendered out-of-area;
- A copy of the explanation of benefits, payments, or denial from any primary payer—such as the Medicare Summary Notice (MSN); and
- Receipts, if you paid for your services.

Submit your claims to:

*Northern California service area:*
Kaiser Foundation Health Plan, Inc.
Claims Department
P.O. Box 12923
Oakland, CA 94604-2923

*Southern California service area:*
Kaiser Foundation Health Plan, Inc.
Claims Department
P.O. Box 7004
Downey, CA 90242-7004

**Deadline for filing your claim**

Send us all of the documents for your claim as soon as possible. You must submit the claim by December 31 of the year after the year you received the service, unless timely filing was prevented by administrative operations of Government or legal incapacity, provided the claim was submitted as soon as reasonably possible.

**When we need more information**

Please reply promptly when we ask for additional information. We may delay processing or deny your claim if you do not respond.

**If you have a malpractice claim**

If you have a malpractice claim because of services you did receive, or did not receive, from a Plan provider, you must submit the claim to binding arbitration. The Plan has the information that describes the arbitration process. Contact our Member Service Call Center at **1-800-464-4000** for copies of our requirements. These will explain how you can begin the binding arbitration process.

# Section 8. The disputed claims process

Follow this Federal Employees Health Benefits Program disputed claims process if you disagree with our decision on your claim or request for services, drugs, or supplies—including a request for referral:

| Step | Description |
|------|-------------|
| **1** | Ask us in writing to reconsider our initial decision. You must: |
| | a)  Write to us within 6 months from the date of our decision; and |
| | b)  Send your request to us at: *Northern California service area: Kaiser Permanente, Special Services Unit, P.O. Box 23280, Oakland, CA 94623; or Southern California service area: Kaiser Permanente, Special Services Unit, P.O. Box 7136, Pasadena, CA 91109;* and |
| | c)  Include a statement about why you believe our initial decision was wrong, based on specific benefit provisions in this brochure; and |
| | d)  Include copies of documents that support your claim, such as physicians' letters, operative reports, bills, medical records, and explanation of benefits (EOB) forms. |
| **2** | We have 30 days from the date we receive your request to: |
| | a)  Pay the claim (or, if applicable, arrange for the health care provider to give you the care); or |
| | b)  Write to you and maintain our denial—go to step 4; or |
| | c)  Ask you or your provider for more information. If we ask your provider, we will send you a copy of our request—go to step 3. |
| **3** | You or your provider must send the information so that we receive it within 60 days of our request. We will then decide within 30 more days. |
| | If we do not receive the information within 60 days, we will decide within 30 days of the date the information was due. We will base our decision on the information we already have. |
| | We will write to you with our decision. |
| **4** | If you do not agree with our decision, you may ask OPM to review it. |
| | You must write to OPM within: |
| | •  90 days after the date of our letter upholding our initial decision; or |
| | •  120 days after you first wrote to us—if we did not answer that request in some way within 30 days; or |
| | •  120 days after we asked for additional information. |

Write to OPM at: United States Office of Personnel Management, Insurance Services Programs, Health Insurance Group 3, 1900 E Street, NW, Washington, DC 20415-3630.

Send OPM the following information:

- A statement about why you believe our decision was wrong, based on specific benefit provisions in this brochure;

- Copies of documents that support your claim, such as physicians' letters, operative reports, bills, medical records, and explanation of benefits (EOB) forms;

- Copies of all letters you sent to us about the claim;

- Copies of all letters we sent to you about the claim; and

- Your daytime phone number and the best time to call.

Note: If you want OPM to review more than one claim, you must clearly identify which documents apply to which claim.

Note: You are the only person who has a right to file a disputed claim with OPM. Parties acting as your representative, such as medical providers, must include a copy of your specific written consent with the review request.

Note: The above deadlines may be extended if you show that you were unable to meet the deadline because of reasons beyond your control.

**5**   OPM will review your disputed claim request and will use the information it collects from you and us to decide whether our decision is correct. OPM will send you a final decision within 60 days. There are no other administrative appeals.

If you do not agree with OPM's decision, your only recourse is to sue. If you decide to sue, you must file the suit against OPM in Federal court by December 31 of the third year after the year in which you received the disputed services, drugs, or supplies or from the year in which you were denied precertification or prior approval. This is the only deadline that may not be extended.

OPM may disclose the information it collects during the review process to support their disputed claim decision. This information will become part of the court record.

You may not sue until you have completed the disputed claims process. Further, Federal law governs your lawsuit, benefits, and payment of benefits. The Federal court will base its review on the record that was before OPM when OPM decided to uphold or overturn our decision. You may recover only the amount of benefits in dispute.

Note: **If you have a serious or life threatening condition** (one that may cause permanent loss of bodily functions or death if not treated as soon as possible), and

a)   We haven't responded yet to your initial request for care or prior referral/preauthorization, then call us at **1-888-987-7247** and we will expedite our review; or

b)   We denied your initial request for care or referral, then:

- If we expedite our review and maintain our denial, we will inform OPM so that they can give your claim expedited treatment too, or

- You may call OPM's Health Insurance Group 3 at **1-202-606-0755** between 8 a.m. and 5 p.m. Eastern Time.

## Section 9. Coordinating benefits with other coverage

**When you have other health coverage**

You must tell us if you or a covered family member have coverage under another group health plan or have automobile insurance that pays health care expenses without regard to fault. This is called "double coverage."

When you have double coverage, one plan normally pays its benefits in full as the primary payer and the other plan pays a reduced benefit as the secondary payer. We, like other insurers, determine which coverage is primary according to the National Association of Insurance Commissioners' guidelines.

When we are the primary payer, we will pay the benefits described in this brochure.

When we are the secondary payer, we will determine our allowance. After the primary plan pays, we will pay what is left of our allowance, up to our regular benefit. We will not pay more than our allowance.

**What is Medicare?**

Medicare is a Health Insurance Program for:

- People 65 years of age or older.

- Some people with disabilities under 65 years of age.

- People with End-Stage Renal Disease (permanent kidney failure requiring dialysis or a transplant).

Medicare has four parts:

- Part A (Hospital Insurance). Most people do not have to pay for Part A. If you or your spouse worked for at least 10 years in Medicare-covered employment, you should be able to qualify for premium-free Part A insurance. (Someone who was a Federal employee on January 1, 1983 or since automatically qualifies.) Otherwise, if you are age 65 or older, you may be able to buy it. Contact **1-800-MEDICARE** for more information.

- Part B (Medical Insurance). Most people pay monthly for Part B. Generally, Part B premiums are withheld from your monthly Social Security check or your retirement check.

- Part C (Medicare Advantage): You may enroll in a Medicare Advantage plan to get your Medicare benefits. We offer a Medicare Advantage plan, Kaiser Permanente Senior Advantage. Please review the information on Medicare Advantage plans on page 58.

- Part D (Medicare prescription drug coverage). There is a monthly premium for Part D coverage. If you have limited savings and a low income, you may be eligible for Medicare's Low-Income Benefits. For people with limited income and resources, extra help in paying for a Medicare prescription drug plan is available. Information regarding this program is available through the Social Security Administration (SSA). For more information about this extra help, visit SSA online at www.socialsecurity.gov, or call them at **1-800-772-1213 (TTY 1-800-325-0778)**. Before enrolling in Medicare Part D, please review the important disclosure notice from us about the FEHB prescription drug coverage and Medicare. The notice is on the first inside page of this brochure. The notice will give you guidance on enrolling in Medicare Part D.



- **Should I enroll in Medicare?**

  The decision to enroll in Medicare is yours. We encourage you to apply for Medicare benefits 3 months before you turn age 65. It's easy. Just call the Social Security Administration toll-free number **1-800-772-1213** to set up an appointment to apply. If you do not apply for one or more Parts of Medicare, you can still be covered under the FEHB Program.

  If you can get premium-free Part A coverage, we advise you to enroll in it. Most Federal employees and annuitants are entitled to Medicare Part A at age 65 **without cost**. When you don't have to pay premiums for Medicare Part A, it makes good sense to obtain the coverage. It can reduce your out-of-pocket expenses as well as costs to the FEHB, which can help keep FEHB premiums down.

  Everyone is charged a premium for Medicare Part B coverage. The Social Security Administration can provide you with premium and benefit information. Review the information and decide if it makes sense for you to buy the Medicare Part B coverage.

  If you are eligible for Medicare, you may have choices in how you get your health care. Medicare Advantage is the term used to describe the various private health plan choices available to Medicare beneficiaries. The information in the next few pages shows how we coordinate benefits with Medicare, depending on whether you are in the Original Medicare Plan or a private Medicare Advantage plan.

- **The Original Medicare Plan (Part A or Part B)**

  The Original Medicare Plan (Original Medicare) is available everywhere in the United States. It is the way everyone used to get Medicare benefits and is the way most people get their Medicare Part A and Part B benefits now. You may go to any doctor, specialist, or hospital that accepts Medicare. The Original Medicare Plan pays its share and you pay your share.

  When you are enrolled in Original Medicare along with this Plan, you still need to follow the rules in this brochure for us to cover your care.

  **Claims process when you have the Original Medicare Plan**—You probably will never have to file a claim form when you have both our Plan and the Original Medicare Plan.

  When we are the primary payer, we process the claim first.

  When Original Medicare is the primary payer, Medicare processes your claim first. In most cases, your claim will be coordinated automatically and we will then provide secondary benefits for covered charges. You will not need to do anything. To find out if you need to do something to file your claim, call us at **1-800-MEDICARE (1-800-633-4227)** or at www.medicare.gov.

  We do not waive any costs if the Original Medicare Plan is your primary payer.

- **Medicare Advantage (Part C)**

  If you are eligible for Medicare, you may choose to enroll in and get your Medicare benefits from a Medicare Advantage plan. These are private health care choices (like HMOs and regional PPOs) in some areas of the country. To learn more about Medicare Advantage plans, contact Medicare at **1-800-MEDICARE (1-800-633-4227)** or at www.medicare.gov.

If you enroll in a Medicare Advantage plan, the following options are available to you:

**This Plan and our Medicare Senior Advantage plan:** We offer a Medicare Advantage plan known as Kaiser Permanente Senior Advantage at no additional cost to our members eligible for Medicare benefits, including Part D, as well as lower copayments and coinsurance at no cost to you. If you have already enrolled and would like to understand your additional benefits in more detail, please refer to your Medicare Annual Notice of Change (ANOC). If you are considering enrolling in our Senior Advantage plan, please call Member Services at **1-800-443-0815.**

**This Plan and another plan's Medicare Advantage plan:** You may enroll in another plan's Medicare Advantage plan and also remain enrolled in our FEHB plan. We will still provide benefits when your Medicare Advantage plan is primary, even out of the Medicare Advantage plan's network and/or service area (if you use our Plan providers), but we will not waive any of our copayments, coinsurance, or deductibles. If you enroll in a Medicare Advantage plan, tell us. We will need to know whether you are in the Original Medicare Plan or in a Medicare Advantage plan so we can correctly coordinate benefits with Medicare.

**Suspended FEHB coverage to enroll in a Medicare Advantage plan:** If you are an annuitant or former spouse, you can suspend your FEHB coverage to enroll in a Medicare Advantage plan, eliminating your FEHB premium. (OPM does not contribute to your Medicare Advantage plan premium.) For information on suspending your FEHB enrollment, contact your retirement office. If you later want to re-enroll in the FEHB Program, generally you may do so only at the next Open Season unless you involuntarily lose coverage or move out of the Medicare Advantage plan's service area.

- **Medicare prescription drug coverage (Part D)**

When we are the primary payer, we process the claim first. If you enroll in a Medicare Part D PDP and we are the secondary payer, our Plan owned and operated pharmacies will not consider the PDP benefits. These Plan pharmacies will only provide your FEHB Kaiser benefits.

You will still need to follow the rules in this brochure for us to cover your care. We will only cover your prescription if it is written by a Plan provider and obtained at a Plan pharmacy or through our Plan mail service delivery program, except in an emergency or urgent care situation.

If you enroll in our Kaiser Permanente Senior Advantage plan, you will get all of the benefits of Medicare Part D plus additional benefits, because Medicare Part D is included in our plan.

Medicare always makes the final determination as to whether they are the primary payer. The following chart illustrates whether Medicare or this Plan should be the primary payer for you according to your employment status and other factors determined by Medicare. It is critical that you tell us if you or a covered family member has Medicare coverage so we can administer these requirements correctly.

### Primary Payer Chart

| | | |
|---|:---:|:---:|
| 1) Have FEHB coverage on your own as an active employee or through your spouse who is an active employee | | ✓ |
| 2) Have FEHB coverage on your own as an annuitant or through your spouse who is an annuitant | ✓ | |
| 3) Are a reemployed annuitant with the Federal government and your position is excluded from the FEHB (your employing office will know if this is the case) and you are not covered under FEHB through your spouse under #1 above | ✓ | |
| 4) Are a reemployed annuitant with the Federal government and your position is not excluded from the FEHB (your employing office will know if this is the case) and … | | |
| • You have FEHB coverage on your own or through your spouse who is also an active employee | | ✓ |
| • You have FEHB coverage through your spouse who is an annuitant | ✓ | |
| 5) Are a Federal judge who retired under title 28, U. S. C., or a Tax Court judge who retired under Section 7447 of title 26, U. S. C. (or if your covered spouse is this type of judge) and you are not covered under FEHB through your spouse under #1 above | ✓ | |
| 6) Are enrolled in Part B only, regardless of your employment status | ✓ for Part B services | ✓ for other services |
| 7) Are a former Federal employee receiving Workers' Compensation and the Office of Workers' Compensation Programs has determined that you are unable to return to duty | ✓ * | |
| 1) Have Medicare solely based on end-stage renal disease (ESRD) and… | | |
| • It is within the first 30 months of eligibility for or entitlement to Medicare due to ESRD (30-month coordination period) | | ✓ |
| • It is beyond the 30-month coordination period and you or a family member are still entitled to Medicare due to ESRD | ✓ | |
| 2) Become eligible for Medicare due to ESRD while already a Medicare beneficiary and… | | |
| • This Plan was the primary payer before eligibility due to ESRD | | ✓ for 30-month coordination period |
| • Medicare was the primary payer before eligibility due to ESRD | ✓ | |
| 1) Have FEHB coverage on your own as an active employee or through a family member who is an active employee | | ✓ |
| 2) Have FEHB coverage on your own as an annuitant or through a family member who is an annuitant | ✓ | |

\* Workers' Compensation is primary for claims related to your condition under Workers' Compensation



**TRICARE and CHAMPVA**

TRICARE is the health care program for eligible dependents of military persons, and retirees of the military. TRICARE includes the CHAMPUS program. CHAMPVA provides health coverage to disabled Veterans and their eligible dependents. If TRICARE or CHAMPVA and this Plan cover you, we pay first. See your TRICARE or CHAMPVA Health Benefits Advisor if you have questions about these programs.

**Suspended FEHB coverage to enroll in TRICARE or CHAMPVA:** If you are an annuitant or former spouse, you can suspend your FEHB coverage to enroll in one of these programs, eliminating your FEHB premium. (OPM does not contribute to any applicable plan premiums.) For information on suspending your FEHB enrollment, contact your retirement office. If you later want to re-enroll in the FEHB Program, generally you may do so only at the next Open Season unless you involuntarily lose coverage under the program.

**Workers' Compensation**

We do not cover services that:

- You need because of a workplace-related illness or injury that the Office of Workers' Compensation Programs (OWCP) or a similar Federal or State agency determines they must provide; or

- OWCP or a similar agency pays for through a third-party injury settlement or other similar proceeding that is based on a claim you filed under OWCP or similar laws.

Once OWCP or similar agency pays its maximum benefits for your treatment, we will cover your care.

**Medicaid**

When you have this Plan and Medicaid, we pay first.

**Suspended FEHB coverage to enroll in Medicaid or a similar State-sponsored program of medical assistance:** If you are an annuitant or former spouse, you can suspend your FEHB coverage to enroll in one of these State programs, eliminating your FEHB premium. For information on suspending your FEHB enrollment, contact your retirement office. If you later want to re-enroll in the FEHB Program, generally you may do so only at the next Open Season unless you involuntarily lose coverage under the State program.

**When other Government agencies are responsible for your care**

We do not cover services and supplies when a local, State, or Federal government agency directly or indirectly pays for them.

**When others are responsible for your injuries**

When you receive money to compensate you for medical or hospital care for injuries or illness caused by another person, you must reimburse us for any expenses we paid. However, we will cover the cost of treatment that exceeds the amount you received in the settlement.

If you do not seek damages you must agree to let us try. This is called subrogation. If you need more information, contact us for our subrogation procedures.

## Section 10. Definitions of terms we use in this brochure

**Calendar year**

January 1 through December 31 of the same year. For new enrollees, the calendar year begins on the effective date of their enrollment and ends on December 31 of the same year.

**Coinsurance**

Coinsurance is the percentage of our allowance that you must pay for your care. See <u>Section 4</u>.

**Copayment**

A copayment is a fixed amount of money you pay when you receive covered services. See <u>Section 4</u>.

**Covered services**

Care we provide benefits for, as described in this brochure.

**Custodial care**

(1) Assistance with activities of daily living, for example, walking, getting in and out of bed, dressing, feeding, toileting, and taking medicine. (2) Care that can be performed safely and effectively by people who, in order to provide the care, do not require medical licenses or certificates or the presence of a supervising licensed nurse. Custodial care that lasts 90 days or more is sometimes known as long term care.

**Deductible**

A deductible is a fixed amount of covered expenses you must incur for certain covered services and supplies before we start paying benefits for those services. See <u>Section 4</u>.

**Durable medical equipment**

Durable medical equipment (DME) is equipment that is intended for repeated use, medically necessary, primarily and customarily used to serve a medical purpose, generally not useful to a person who is not ill or injured, designed for prolonged use, appropriate for use in the home, and serves a specific therapeutic purpose in the treatment of an illness or injury.

**Experimental or investigational services**

We carefully evaluate whether a particular therapy is safe and effective or offers a reasonable degree of promise with respect to improving health outcomes. The primary source of evidence about health outcomes of any intervention is peer-reviewed medical or dental literature. When the service or supply, including a drug: (1) has not been approved by the FDA; or (2) is the subject of a new drug or new device application on file with the FDA; or (3) is part of a Phase I or Phase II clinical trial, as the experimental or research arm of a Phase III clinical trial; or is intended to evaluate the safety, toxicity, or efficacy of the service; or (4) is available as the result of a written protocol that evaluates the service's safety, toxicity, or efficacy; or (5) is subject to the approval or review of an Institutional Review Board; or (6) requires an informed consent that describes the service as experimental or investigational; then this Plan considers that service, supply, or drug to be experimental, and not covered by the Plan.

**Group health coverage**

Health care benefits that are available as a result of your employment, or the employment of your spouse, and that are offered by an employer or through membership in an employee organization. Health care coverage may be insured or indemnity coverage, self-insured or self-funded coverage, or coverage through health maintenance organizations or other managed care plans. Health care coverage purchased through membership in an organization is also "group health coverage."

**Medical necessity**

All benefits need to be medically necessary in order for them to be covered benefits. Generally, if your Plan physician provides the service in accord with the terms of this brochure, it will be considered medically necessary. However, some services are reviewed in advance of your receiving them to determine if they are medically necessary. When we review a service to determine if it is medically necessary, a Plan physician will evaluate what would happen to you if you do not receive the service. If not receiving the service would adversely affect your health, it will be considered medically necessary. The services must be a medically appropriate course of treatment for your condition. If they are not medically necessary, we will not cover the services. In case of emergency services, the services that you received will be evaluated to determine if they were medically necessary.

**Our allowance**

The amount we use to determine your coinsurance. When you receive services or supplies from Plan providers, it is the amount that we set for the services or supplies if we were to charge for them. When you receive services from non-Plan providers, we determine the amount that we believe is usual and customary for the service or supply, and compare it to the billed charges. Our payment is based upon the reasonableness of the charges. If the billed charges exceed what we believe is reasonable, you may be responsible for the excess over our allowance in addition to your coinsurance.

**Us/We**

Us and we refer to Kaiser Foundation Health Plan, Inc., California Region.

**You**

You refers to the enrollee and each covered family member.

## Section 11. FEHB Facts

**Coverage information**

- **No pre-existing condition limitation**

We will not refuse to cover the treatment of a condition you had before you enrolled in this Plan solely because you had the condition before you enrolled.

- **Where you can get information about enrolling in the FEHB Program**

See www.opm.gov/insure/health for enrollment as well as:

- Information on the FEHB Program and plans available to you

- A health plan comparison tool

- A list of agencies who participate in Employee Express

- A link to Employee Express

- Information on and links to other electronic enrollment systems

- Also, your employing or retirement office can answer your questions, and give you a *Guide to Federal Employees Health Benefits Plans,* brochures for other plans, and other materials you need to make an informed decision about your FEHB coverage. These materials tell you:

  - When you may change your enrollment;

  - How you can cover your family members;

  - What happens when you transfer to another Federal agency, go on leave without pay, enter military service, or retire;

  - When your enrollment ends; and

  - When the next open season for enrollment begins.

We don't determine who is eligible for coverage and, in most cases, cannot change your enrollment status without information from your employing or retirement office.

- **Types of coverage available for you and your family**

Self Only coverage is for you alone. Self and Family coverage is for you, your spouse, and your unmarried dependent children under age 22, including any foster children or stepchildren your employing or retirement office authorizes coverage for. Under certain circumstances, you may also continue coverage for a disabled child 22 years of age or older who is incapable of self-support.

If you have a Self Only enrollment, you may change to a Self and Family enrollment if you marry, give birth, or add a child to your family. You may change your enrollment 31 days before to 60 days after that event. The Self and Family enrollment begins on the first day of the pay period in which the child is born or becomes an eligible family member. When you change to Self and Family because you marry, the change is effective on the first day of the pay period that begins after your employing office receives your enrollment form; benefits will not be available to your spouse until you marry.

Your employing or retirement office will **not** notify you when a family member is no longer eligible to receive benefits, nor will we. Please tell us immediately when you add or remove family members from your coverage for any reason, including divorce, or when your child under age 22 marries or turns 22.

If you or one of your family members is enrolled in one FEHB plan, that person may not be enrolled in or covered as a family member by another FEHB plan.

- **Children's Equity Act**

OPM has implemented the Federal Employees Health Benefits Children's Equity Act of 2000. This law mandates that you be enrolled for Self and Family coverage in the FEHB Program, if you are an employee subject to a court or administrative order requiring you to provide health benefits for your child(ren).

If this law applies to you, you must enroll for Self and Family coverage in a health plan that provides full benefits in the area where your children live or provide documentation to your employing office that you have obtained other health benefits coverage for your children. If you do not do so, your employing office will enroll you involuntarily as follows:

If you have no FEHB coverage, your employing office will enroll you for Self and Family coverage in the Blue Cross and Blue Shield Service Benefit Plan's Basic Option;

If you have a Self Only enrollment in a fee-for-service plan or in an HMO that serves the area where your children live, your employing office will change your enrollment to Self and Family in the same option of the same plan; or

If you are enrolled in an HMO that does not serve the area where the children live, your employing office will change your enrollment to Self and Family in the Blue Cross and Blue Shield Service Benefit Plan's Basic Option.

As long as the court/administrative order is in effect, and you have at least one child identified in the order who is still eligible under the FEHB Program, you cannot cancel your enrollment, change to Self Only, or change to a plan that doesn't serve the area in which your children live, unless you provide documentation that you have other coverage for the children. If the court/administrative order is still in effect when you retire, and you have at least one child still eligible for FEHB coverage, you must continue your FEHB coverage into retirement (if eligible) and cannot cancel your coverage, change to Self Only, or change to a plan that doesn't serve the area in which your children live as long as the court/administrative order is in effect. Contact your employing office for further information.

- **When benefits and premiums start**

The benefits in this brochure are effective on January 1. If you joined this Plan during Open Season, your coverage begins on the first day of your first pay period that starts on or after January 1. If you changed plans or plan options during Open Season and you receive care between January 1 and the effective date of coverage under your new plan or option, your claims will be paid according to the 2006 benefits of your old plan or option. However, if your old plan left the FEHB Program at the end of the year, you are covered under that plan's 2005 benefits until the effective date of your coverage with your new plan. Annuitants' coverage and premiums begin on January 1. If you joined at any other time during the year, your employing office will tell you the effective date of coverage.

- **When you retire**

When you retire, you can usually stay in the FEHB Program. Generally, you must have been enrolled in the FEHB Program for the last five years of your Federal service. If you do not meet this requirement, you may be eligible for other forms of coverage, such as Temporary Continuation of Coverage (TCC).

## When you lose benefits

- **When FEHB coverage ends**

  You will receive an additional 31 days of coverage, for no additional premium, when:

  Your enrollment ends, unless you cancel your enrollment, or

  You are a family member no longer eligible for coverage.

  You may be eligible for spouse equity coverage or Temporary Continuation of Coverage (TCC), or a conversion policy (a non-FEHB individual policy).

- **Spouse equity coverage**

  If you are divorced from a Federal employee or annuitant, you may not continue to get benefits under your former spouse's enrollment. This is the case even when the court has ordered your former spouse to provide health coverage to you. But, you may be eligible for your own FEHB coverage under the spouse equity law or Temporary Continuation of Coverage (TCC). If you are recently divorced or are anticipating a divorce, contact your ex-spouse's employing or retirement office to get RI 70-5, the *Guide To Federal Employees Health Benefits Plans for Temporary Continuation of Coverage and Former Spouse Enrollees*, or other information about your coverage choices. You can also download the guide from OPM's Web site, www.opm.gov/insure.

- **Temporary Continuation of Coverage (TCC)**

  If you leave Federal service, or if you lose coverage because you no longer qualify as a family member, you may be eligible for Temporary Continuation of Coverage (TCC). For example, you can receive TCC if you are not able to continue your FEHB enrollment after you retire, if you lose your Federal job, if you are a covered dependent child and you turn 22 or marry, etc.

  You may not elect TCC if you are fired from your Federal job due to gross misconduct.

  **Enrolling in TCC.** Get the RI 79-27, which describes TCC, and the RI 70-5, the *Guide to Federal Employees Health Benefits Plans for Temporary Continuation of Coverage and Former Spouse Enrollees*, from your employing or retirement office or from www.opm.gov/insure. It explains what you have to do to enroll.

- **Converting to individual coverage**

  You may convert to a non-FEHB individual policy if:

  Your coverage under TCC or the spouse equity law ends (If you canceled your coverage or did not pay your premium, you cannot convert);

  You decided not to receive coverage under TCC or the spouse equity law; or

  You are not eligible for coverage under TCC or the spouse equity law.

  If you leave Federal service, your employing office will notify you of your right to convert. You must apply in writing to us within 31 days after you receive this notice. However, if you are a family member who is losing coverage, the employing or retirement office will **not** notify you. You must apply in writing to us within 31 days after you are no longer eligible for coverage.

  Your benefits and rates will differ from those under the FEHB Program; however, you will not have to answer questions about your health, and we will not impose a waiting period or limit your coverage due to pre-existing conditions.


- **Getting a Certificate of Group Health Plan Coverage**

The Health Insurance Portability and Accountability Act of 1996 (HIPAA) is a Federal law that offers limited Federal protections for health coverage availability and continuity to people who lose employer group coverage. If you leave the FEHB Program, we will give you a Certificate of Group Health Plan Coverage that indicates how long you have been enrolled with us. You can use this certificate when getting health insurance or other health care coverage. Your new plan must reduce or eliminate waiting periods, limitations, or exclusions for health related conditions based on the information in the certificate, as long as you enroll within 63 days of losing coverage under this Plan. If you have been enrolled with us for less than 12 months, but were previously enrolled in other FEHB plans, you may also request a certificate from those plans.

For more information, get OPM pamphlet RI 79-27, *Temporary Continuation of Coverage (TCC) under the FEHB Program*. See also the FEHB Web site at www.opm.gov/insure/health; refer to the "TCC and HIPAA" frequently asked questions. These highlight HIPAA rules, such as the requirement that Federal employees must exhaust any TCC eligibility as one condition for guaranteed access to individual health coverage under HIPAA, and information about federal and state agencies you can contact for more information.



## Section 12. Two Federal Programs complement FEHB benefits

**Important information**

OPM wants to make sure you are aware of two Federal programs that complement the FEHB Program. First, the **Federal Flexible Spending Account (FSA) Program**, also known as **FSAFEDS**, lets you set aside pre-tax money to pay for health and dependent care expenses. The result can be a discount of 20% to more than 40% on services you routinely pay for out-of-pocket. Second, the **Federal Long Term Care Insurance Program (FLTCIP)** helps cover long term care costs, which are not covered under the FEHB.

## The Federal Flexible Spending Account Program — FSAFEDS

- **What is an FSA?**

  It is a tax-favored benefit that allows you to set aside pre-tax money from your paychecks to pay for a variety of eligible expenses. *By using an FSA, you can reduce your taxes while paying for services you would have to pay for anyway, producing a discount that can be over 40%.*

  There are two types of FSAs offered by FSAFEDS:

**Health Care Flexible Spending Account (HCFSA)**

- Covers eligible health care expenses not reimbursed by this Plan, or any other medical, dental, or vision care plan you or your dependents may have.

- Eligible dependents for this account include anyone you claim on your Federal Income Tax return as a qualified dependent under the U.S. Internal Revenue Service (IRS) definition and/or with whom you jointly file your Federal Income Tax return, even if you don't have self and family health benefits coverage. *Note:* The IRS has a broader definition of a "family member" than is used under the FEHB Program to provide benefits by your FEHB Plan.

- The maximum annual amount that can be allotted for the HCFSA is $5,000. *Note:* The Federal workforce includes a number of employees married to each other. If each spouse/employee is eligible for FEHB coverage, both may enroll for a HCFSA up to the maximum of $5,000 each ($10,000 total). Both are covered under each other's HCFSA. The minimum annual amount is $250.

**Dependent Care Flexible Spending Account (DCFSA)**

- Covers eligible dependent care expenses incurred so you, and your spouse, if married, can work, look for work, or attend school full-time.

- Qualifying dependents for this account include your dependent children under age 13, or any person of any age whom you claim as a dependent on your Federal Income Tax return.

- The maximum annual amount that can be allotted for the DCFSA is $5,000. The minimum annual amount is $250. *Note:* The IRS limits contributions to a DCFSA. For single taxpayers and taxpayers filing a joint return, the maximum is $5,000 per year. For taxpayers who file their taxes separately with a spouse, the maximum is $2,500 per year.

- **Enroll during Open Season**

  You **must make an election** to enroll in an FSA during the 2006 FEHB Open Season. Even if you enrolled for 2005, you must make a new election to continue participating in 2006. Enrollment is easy!

  - Online: visit www.fsafeds.com and click on Enroll.

  - Telephone: call an FSAFEDS Benefits Counselor toll-free at **1-877-FSAFEDS (1-877-372-3337)**, Monday through Friday, from 9 a. m. until 9 p. m. Eastern Time. **TTY: 1-800-952-0450.**

| **What is SHPS?** | SHPS is a third-party administrator hired by OPM to manage the FSAFEDS Program. SHPS is responsible for the enrollment, claims processing, customer service, and day-to-day operations of FSAFEDS. |
|---|---|

**Who is eligible to enroll?**

If you are a Federal employee eligible for FEHB – even if you're not enrolled in FEHB – you can choose to participate in either, or both, of the FSAFEDs accounts. *However, if you enroll in an FSA and enroll in a High Deductible Health Plan (HDHP), you are not eligible for a Health Savings Account (HSA) under your HDHP and will be enrolled in a Health Reimbursement Arrangement (HRA) instead.*

Almost all Federal employees are eligible to enroll for a DCFSA. The only exception is intermittent (also called "when actually employed" [WAE]) employees expected to work fewer than 180 days during the year.

*Note:* FSAFEDS is the FSA Program established for all Executive Branch employees and Legislative Branch employees whose employers have signed on to participate. Under IRS law, FSAs are not available to annuitants. Also, the U.S. Postal Service and the Judicial Branch, among others, have their own plans with slightly different rules. However, the advantages of having an FSA are the same regardless of the agency for which you work.

- **How much should I contribute to my FSA?**

Plan carefully when deciding how much to contribute to an FSA. Because of the tax benefits an FSA provides, the IRS requires that you forfeit any money for which you did not incur an eligible expense under your FSA account(s) during the Plan Year. This is known as the "Use-it-or-Lose-it" rule. FSAFEDS has adopted the "grace period" permitted by the IRS. You now have an additional 2 ½ months to incur eligible expenses and reduce any potential forfeitures. In addition, you will have until May 31, following the end of the Plan Year to submit claims for your eligible expenses incurred from January 1 through March 15 of the following year. For example, if you enrolled in FSAFEDS for the 2005 Plan Year, you will have from January 1, 2005 until March 15, 2006 to incur eligible expenses, and you may submit claims for those expenses through May 31, 2006.

The FSAFEDS Calculator at www.FSAFEDS.com will help you plan your FSA allocations and provide an estimate of your tax savings based on your individual situation.

- **What can my HCFSA pay for?**

Every FEHB plan includes cost sharing features, such as deductibles you must meet before the Plan provides benefits, coinsurance or copayments that you pay when you and the Plan share costs, and medical services and supplies that are not covered by the Plan and for which you must pay. These out-of-pocket costs are summarized in Section 4 and detailed throughout this brochure. Your HCFSA will reimburse you when those costs are for qualified medical care that you, your spouse and/or your dependents receive that is NOT covered or reimbursed by this FEHB Plan or any other coverage that you have.

**Under the High Option** of this plan, typical out-of-pocket expenses include: copayments for covered physician office visits, prescription drugs and durable medical equipment.

**Under the Standard Option** of this plan, typical out-of-pocket expenses include: copayments for covered physician office visits, prescription drugs and durable medical equipment.

The IRS governs expenses reimbursable by a HCFSA. See Publication 502 for a comprehensive list of tax-deductible medical expenses. Since Publication 502 is primarily meant to help on preparing your Federal income tax return, there are two important differences to note. **Note: While you will see insurance premiums listed in Publication 502, they are NOT a reimbursable expense for FSA purposes. In addition, over-the-counter medicines and products ARE an eligible expense under your HCFSA, and this is not included in Publication 502.** Publication 502 can be found on the IRS Web site at http://www.irs.gov/pub/irs-pdf/p502.pdf. The FSAFEDS Web site also has a comprehensive list of eligible expenses at www. FSAFEDS.com/fsafeds/eligibleexpenses.asp. If you do not see your service or expense listed, please call an FSAFEDS Benefits Counselor at **1-877-FSAFEDS (372-3337)**, who will be able to answer your specific questions.

- **Tax savings with an FSA**

An FSA lets you allot money for eligible expenses *before* your agency deducts taxes from your paycheck. This means the amount of income that your taxes are based on will be lower, so your tax liability will be less. Without an FSA, you would still pay for these expenses, but you would do so using money remaining in your paycheck after Federal (and often state and local) taxes are deducted. The following chart illustrates a typical tax savings example:

| Annual Tax Savings Example | With FSA | Without FSA |
|---|---|---|
| If your taxable income is: | $50,000 | $50,000 |
| And you deposit this amount into an FSA: | $2,000 | -$0- |
| Your taxable income is now: | $48,000 | $50,000 |
| Subtract Federal & Social Security taxes: | $13,807 | $14,383 |
| If you spend after-tax dollars for expenses: | -$0- | $2,000 |
| Your real spendable income is: | $34,193 | $33,617 |
| Your tax savings: | $576 | -$0- |

**Note:** This example is intended to demonstrate a typical tax savings based on 27% Federal and 7.65% FICA taxes. Actual savings will vary based upon the retirement system in which you are enrolled (CSRS or FERS), your state of residence, and your individual tax situation. In this example, the individual received $2,000 in services for $1,424 - a discount of almost 36%! You may also wish to consult a tax professional for more information on the tax implications of an FSA.

- **Tax credits and deductions**

You *cannot* claim expenses on your Federal Income Tax return if you receive reimbursement for them from your HCFSA or DCFSA. Below are some guidelines that may help you decide whether to participate in FSAFEDS.

**Health care expenses**

The HCFSA is Federal Income tax-free from the first dollar. In addition, you may be reimbursed from your HCFSA at any time during the year for expenses up to the annual amount you've elected to contribute.

Only health care expenses exceeding 7.5% of your adjusted gross income are eligible to be deducted on your Federal Income Tax return. Using the example shown above, only health care expenses exceeding $3,750 (7.5% of $50,000) would be eligible to be deducted on your Federal Income Tax return. In addition, money set aside through an HCFSA is also exempt from FICA taxes. This exemption is not available on your Federal Income Tax return.

**Paperless Reimbursement** – This plan participates in the FSAFEDS paperless reimbursement program. When you enroll for your HCFSA, you will have the opportunity to enroll for paperless reimbursement. You must re-enroll every Open Season to remain in the paperless reimbursement program. If you do, we will send FSAFEDS the information they need to reimburse you for your out-of-pocket costs so you can avoid filing paper claims.

**Dependent care expenses**

The DCFSA generally allows many families to save more than they would with the Federal tax credit for dependent care expenses. Note that you may only be reimbursed from the DCFSA up to your current account balance. If you file a claim for more than your current balance, it will be held until additional payroll allotments have been added to your account.

Visit www.FSAFEDS.com and download the Dependent Care Tax Credit Worksheet from the Forms and Literature page to help you determine what is best for your situation. You may also wish to consult a tax professional for more details.

- **Does it cost me anything to participate in FSAFEDS?**

No. Section 1127 of the National Defense Authorization Act (Public Law 108-136) requires agencies that offer FSAFEDS to employees to cover the administrative fee(s) on behalf of their employees. However, remember that participating in FSAFEDS can cost you money if you don't spend your entire account balance during your period of coverage for the Plan Year plus 2 ½ month grace period, resulting in the forfeiture of funds remaining in your account (the IRS "Use-it-or-Lose-it" rule).

- **Contact us**

To learn more or to enroll, please visit the **FSAFEDS Web site** at www.FSAFEDS.com, or contact SHPS directly via email or by phone. FSAFEDS Benefits Counselors are available Monday through Friday, from 9 a.m. until 9 p.m. Eastern Time.

- E-mail: FSAFEDS@shps.net

- Telephone: **1-877-FSAFEDS (1-877-372-3337)**

- TTY: **1-800-952-0450**

## The Federal Long Term Care Insurance Program — FLTCIP

- **It's important protection**

Why should you consider applying for coverage under the **Federal Long Term Care Insurance Program (FLTCIP)**?

- **FEHB plans do not cover the cost of long term care.** Also called "custodial care," long term care is help you receive to perform activities of daily living—such as bathing or dressing yourself—or supervision you receive because of a severe cognitive impairment. The need for long term care can strike anyone at any age and the cost of care can be substantial.

- **The Federal Long Term Care Insurance Program can help protect you from the potentially high cost of long term care.** This coverage gives you options regarding the type of care you receive and where you receive it. With FLTCIP coverage, you won't have to worry about relying on your loved ones to provide or pay for your care.

- **It's to your advantage to apply sooner rather than later.** In order to qualify for coverage under the FLTCIP, you must apply and pass a medical screening (called underwriting). Certain medical conditions, or combinations of conditions, will prevent some people from being approved for coverage. By applying while you're in good health, you could avoid the risk of having a future change in your health disqualify you from obtaining coverage. Also, the younger you are when you apply, the lower your premiums.

- **You don't have to wait for an open season to apply.** The Federal Long Term Care Insurance Program accepts applications from eligible persons at any time. You will have to complete a full underwriting application, which asks a number of questions about your health. However, if you are a new or newly eligible employee, you (and your spouse, if applicable) have a limited opportunity to apply using the abbreviated underwriting application, which asks fewer questions. Newly married spouses of employees also have a limited opportunity to apply using abbreviated underwriting.

- **Qualified relatives are also eligible to apply.** Qualified relatives include spouses and adult children of employees and annuitants, and parents, parents-in-law, and stepparents of employees.

- **To request an Information Kit and application**

Call **1-800-LTC-FEDS (1-800-582-3337) (TTY 1-800-843-3557)** or visit www.ltcfeds.com.

# Index

*Do not rely on this page; it is for your convenience and may not show all the pages where the terms appear.*

24-hour nurse line............................. 49

Accidental injury ........................ 33, 51
Alternative treatment ....................... 49
Ambulance.................15, 36, 37, 39, 42
Anesthesia .......6, 19, 30, 31, 33, 34, 37
Autologous bone marrow
    transplant........................... 23, 34, 50

Biopsy.............................................. 30
Blood and blood plasma ..19, 27, 28, 36
Breast cancer .................................... 34

Casts .......................................... 36, 37
Centers of Excellence ....................... 50
Changes for 2006............................. 10
Chemotherapy .................................. 23
Chiropractic.......................... 14, 17, 29
Cholesterol tests............................... 19
Coinsurance ....7, 11, 14, 17, 54, 59, 62,
    63, 69
Colorectal cancer screening............. 19
Congenital anomalies ................. 31, 32
Contraceptive devices and drugs ...... 14
    21, 31, 32, 46, 47
Crutches............................................ 27

Deaf and hearing impaired service ... 50
Deductible ........................14, 52, 59, 62
Dental ........ 14, 28, 51, 52, 53, 62, 683.
Diabetes ............................24, 25, 31, 47
Diabetic ............................................ 28
Donor expenses (transplants)...... 34, 35
Dressings ................................ 36, 37,48
Durable medical equipment (DME) .....
    27, 50, 62

Educational classes and programs .... 29
Effective date of enrollment ....... 62, 65
Emergency............11, 40, 41, 42, 46, 50
Experimental or investigational .. 53, 62
Eyeglasses ....................................... 24

Family planning................................ 21
Fecal occult blood test ..................... 19
Flexible benefit options .................. 49

General Exclusions............................53

Hearing services..................................24
Home health services.........................28
Hospice care......................................37
Hospital .. 11, 13, 18, 21, 27, 32, 36, 37,
    38, 48, 49, 52, 61

Immunizations...................7, 17, 20, 47
Infertility ............................14, 22, 50
Inpatient Hospital Benefits..........10, 36
Insulin......................................27, 47

Laboratory and pathological services...
    11, 36, 37

Mail Order Prescription Drugs.....9, 17,
    46, 47, 49
Mammograms ...........................19, 20
Maternity Benefits.....................21, 36
Medicaid...........................................61
Medically necessary ........18, 19, 28, 30
    36, 40, 44, 46, 51, 62
Medicare...........................................57
Mental Conditions/Substance Abuse
    Benefits ......................................43

Newborn care ..............................18, 21
Non-FEHB Benefits.........................52
Nurse
    24-hour nurse line ...................... 49
    Licensed Practical Nurse............. 28
    Nurse Anesthetist ....................... 36
    Nurse Practitioner ...................... 11
    Registered Nurse........19, 28, 31, 49
Nursery charges................................21

Obstetrical care .................................21
Occupational therapy........................23
Oral and maxillofacial surgery .........33
Orthopedic devices.....................15, 25
Ostomy and catheter supplies...........26
Out-of-pocket expenses.........14, 52, 58
    68, 69, 71
Oxygen ...........................27, 28, 36, 37

Pap test.............................................19
Physical therapy .........................11, 23
Precertification.................................56
Prescription drugs ..........21, 46, 47, 59
Preventive care
    Adult..........................................19
    Children .....................................20
Prior approval...................................13
Prostate cancer screening .................19
Prosthetic devices..........................14,
Psychotherapy ..................................45

Radiation therapy .............................23
Renal dialysis...................................23
Room and board...............................34

Services from other
    Kaiser Permanente Plans..............49
Skilled nursing facility care..............38
Smoking cessation............................47
Speech therapy .................................23
Splints ..............................................36
Sterilization procedures.........21, 31, 32
Subrogation .....................................61
Substance abuse ..............................43
Surgery.............................................30
    Anesthesia...................................35
    Outpatient .............................10, 36
    Reconstructive ...........................32
Syringes ...........................................47

Temporary continuation of coverage 66
Transplants.......................................34
Travel benefit....................................50
Treatment therapies..........................23
TRICARE & CHAMPVA................61

Vision services.................................24

Well-child care.................................20
Wheelchairs......................................27
Workers' Compensation...................61

X-rays.................................19, 36, 37

## Summary of benefits for Kaiser Foundation Health Plan, Inc., California Region
## High Option—2006

- **Do not rely on this chart alone.** All benefits are provided in full unless indicated and are subject to the definitions, limitations, and exclusions in this brochure. On this page we summarize specific expenses we cover; for more detail, look inside.

- If you want to enroll or change your enrollment in this Plan, be sure to put the correct enrollment code from the cover on your enrollment form.

- We only cover services provided or arranged by Plan physicians, except in emergencies.

| High Option Benefits | You Pay | Page |
|---|---|---|
| **Medical services provided by physicians:** | | |
| • Diagnostic and treatment services provided in the office | $15 per office visit | 18 |
| **Services provided by a hospital:** | | |
| • Inpatient | $100 per admission | 36 |
| • Outpatient | $50 per admission | 37 |
| **Emergency benefits:** | | |
| • In-area | $50 per visit | 41 |
| • Out-of-area | $50 per visit | 42 |
| **Mental health and substance abuse treatment:** | Regular cost sharing | 43 |
| **Prescription drugs:** | | |
| • Generic drugs | $10 per prescription | 47 |
| • Brand name drugs | $25 per prescription | 47 |
| | All charges if you request a brand name drug in place of a generic drug | |
| **Dental care** | No benefit | 51 |
| **Vision care** | Refractions; $15 per office visit | 24 |
| **Special features:** Flexible benefits option; Services from other Kaiser Permanente Plans; 24-hour nurse line; Services for deaf and hearing impaired; Centers of Excellence; Travel benefit. | | 49 |
| **Protection against catastrophic costs** (your catastrophic protection out-of-pocket maximum) | Nothing after $1,500/Self Only or $3,000/Family enrollment per year. Some costs do not count toward this protection | 14 |

## Summary of benefits for Kaiser Foundation Health Plan, Inc., California Region
## Standard Option—2006

- **Do not rely on this chart alone.** All benefits are provided in full unless indicated and are subject to the definitions, limitations, and exclusions in this brochure. On this page we summarize specific expenses we cover; for more detail, look inside.

- If you want to enroll or change your enrollment in this Plan, be sure to put the correct enrollment code from the cover on your enrollment form.

- We only cover services provided or arranged by Plan physicians, except in emergencies.

| Standard Option Benefits | You Pay | Page |
|---|---|---|
| **Medical services provided by physicians:** | | |
| • Diagnostic and treatment services provided in the office | $30 per office visit | 18 |
| **Services provided by a hospital:** | | |
| • Inpatient | $500 per admission | 36 |
| • Outpatient | $200 per admission | 37 |
| **Emergency benefits:** | | |
| • In-area | $100 per visit | 41 |
| • Out-of-area | $100 per visit | 42 |
| **Mental health and substance abuse treatment:** | Regular cost sharing | 43 |
| **Prescription drugs:** | | |
| • Generic drugs | $10 per prescription | 47 |
| • Brand name drugs | $30 per prescription<br><br>All charges if you request a brand name drug in place of a generic drug | 47 |
| **Dental care** | No benefit | 51 |
| **Vision care** | Refractions; $30 per office visit | 24 |
| **Special features:** Flexible benefits option; Services from other Kaiser Permanente Plans; 24-hour nurse line; Services for deaf and hearing impaired; Centers of Excellence; Travel benefit. | | 49 |
| **Protection against catastrophic costs**<br><br>(your catastrophic protection out-of-pocket maximum) | Nothing after $2,000/Self Only or $4,000/Family enrollment per year<br><br>Some costs do not count toward this protection | 14 |

# 2006 Rate Information for Kaiser Foundation Health Plan, Inc., California Region

**Non-Postal rates** apply to most non-Postal employees. If you are in a special enrollment category, refer to the FEHB Guide for that category or contact the agency that maintains your health benefits enrollment.

**Postal rates** apply to career Postal Service employees. Most employees should refer to the FEHB Guide for United States Postal Service Employees, RI 70-2. Different postal rates apply and a special FEHB Guide is published for Postal Service Inspectors and Office of Inspector General (OIG) employees (see RI 70-2IN).

**Postal rates** do not apply to non-career postal employees, postal retirees, or associate members of any postal employee organization who are not career postal employees. Refer to the applicable FEHB Guide.

| Type of Enrollment | Code | | Non-Postal Premium Biweekly Your Share | | Non-Postal Premium Monthly Your Share | | Postal Premium Biweekly Your Share |
|---|---|---|---|---|---|---|---|
| **Northern California** | | | | | | | |
| High Option Self Only | 591 | | $45.71 | | $99.03 | | $20.57 |
| High Option Self & Family | 592 | | $120.36 | | $260.78 | | $63.29 |
| Standard Option Self Only | 594 | | $33.39 | | $72.34 | | $15.03 |
| Standard Option Self & Family | 595 | | $79.70 | | $172.69 | | $35.87 |
| **Southern California** | | | | | | | |
| High Option Self Only | 621 | | $41.25 | | $89.37 | | $18.56 |
| High Option Self & Family | 622 | | $95.33 | | $206.55 | | $42.90 |
| Standard Option Self Only | 624 | | $31.11 | | $67.40 | | $14.00 |
| Standard Option Self & Family | 625 | | $71.89 | | $155.76 | | $32.35 |

ORIGINAL

1  Daniel S. Belsky, Esq. (SBN 75810)
   Vincent J. Iuliano, Esq. (SBN 153594)
2  Bruce W. Boetter, Esq. (SBN 188376)
   **BELSKY & ASSOCIATES**
3  591 Camino de la Reina, Suite 640
   San Diego, CA 92108
4  Telephone:    (619) 497-2900
   Facsimile:    (619) 497-2901
5

FILED
CIVIL BUSINESS OFFICE 5
(SPACE BELOW FOR FILING STAMP ONLY)

2008 MAY 30    A 11: 01

SUPERIOR COURT
COUNTY, CA

6  Attorneys for Defendants
7     CELESTINE ARAMBULO, D.O., (erroneously sued and served as DR. C. ARAMBULO),
      KAISER FOUNDATION HOSPITALS, SOUTHERN CALIFORNIA PERMANENTE
8     MEDICAL GROUP, and KAISER FOUNDATION HEALTH PLAN, INC.

9          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10              **COUNTY OF SAN DIEGO - CENTRAL DIVISION**

| | |
|---|---|
| 11  FRANZISKA I. COLLIER, individually, and as) Administrator of the Estate of Edgar T. Collier,) 12  Deceased; KEA JADE COLLIER, a Minor, by) her Guardian Ad Litem, MICHAEL HYDE, ) 13  ) Plaintiffs, ) 14  ) v. ) 15  ) PARADISE HILLS CONVALESCENT) 16  CENTER, a business entity, form unknown; DR.) GAYNSKI; DR. C. ARAMBULO; KAISER) 17  FOUNDATION HOSPITALS; SOUTHERN) CALIFORNIA PERMANENTE MEDICAL) 18  GROUP; KAISER FOUNDATION HEALTH) PLAN, INC.; and DOES 1 through 100,) 19  inclusive, ) 20  ) Defendants. ) ) | Case No. 37-2007-00075145-CU-MM-CTL **ANSWER TO SECOND AMENDED COMPLAINT** IC JUDGE:  CHARLES R. HAYES DEPT:  C-66 COMPLAINT FILED:  SEPTEMBER 17, 2007 2ND AMENDED COMPLAINT FILED:  APRIL 3, 2008 TRIAL DATE:  TBD |

21

22          COMES NOW Defendants CELESTINE ARAMBULO, D.O., (erroneously sued and served

23  as DR. C. ARAMBULO), KAISER FOUNDATION HOSPITALS, SOUTHERN CALIFORNIA

24  PERMANENTE MEDICAL GROUP, and KAISER FOUNDATION HEALTH PLAN, INC., and

25  severing themselves from all other defendants, answer the Second Amended Complaint on file herein

26  as follows:

27  / / /

28  / / /

Answer to Second Amended Complaint

**I.**

Under the provisions of § 431.30 of the California Code of Civil Procedure, these answering defendants deny generally and specifically each, every and all of the allegations in said Second Amended Complaint, and the whole thereof, including each and every purported cause of action contained therein, and deny that plaintiffs have or will sustain damages in the sum or sums alleged or in any other sum or sums, or at all.

Further answering said Second Amended Complaint, and the whole thereof, and including each and every purported cause of action contained therein, these answering defendants deny that plaintiffs have or will sustain any damages or losses, if any, by reason of any act or omission, fault or negligence on the part of these answering defendants, their agents, servants or employees, or either or any of them.

**II.**

**AS AND FOR A FIRST, SEPARATE AND AFFIRMATIVE DEFENSE**

The Second Amended Complaint and every purported cause of action contained therein are barred in whole or in part by the applicable statute of limitations, including, but not limited to, California Code of Civil Procedure §§ 340.5, 339, 335.1, AND 337.

**III.**

**AS AND FOR A SECOND, SEPARATE AND AFFIRMATIVE DEFENSE**

The Second Amended Complaint and every purported cause of action contained therein fail to set forth facts sufficient to state a cause of action.

**IV.**

**AS AND FOR A THIRD, SEPARATE AND AFFIRMATIVE DEFENSE**

That these answering defendants deny any wrongdoing, negligence, carelessness, fault or liability on their part. However, should it be determined that these answering defendants are liable, then these answering defendants further allege that plaintiffs and plaintiffs' decedent further contributed to their own alleged injuries, losses and damages, and by virtue thereof, these answering defendants ask that any judgment entered against them be proportionately reduced to the extent that plaintiffs' and plaintiffs' decedent's negligence proximately contributed to the happening of the

1    subject incident and to any injuries, losses or damages sustained by plaintiffs if any there were. That

2    to assess any greater percentage of fault and damages against these answering defendants in excess

3    of their percentage of fault would be a denial of equal protection and due process which are

4    guaranteed by the constitutions of the State of California and the United States, respectively.

5                                            **V.**

6              **AS AND FOR A FOURTH, SEPARATE AND AFFIRMATIVE DEFENSE**

7              These answering defendants deny that they were negligent in any fashion with respect to the

8    damages, losses, injuries and debts claimed by the plaintiffs in the Second Amended Complaint on

9    file herein, however, if these answering defendants are found to have been negligent (which

10   supposition is denied and merely stated for the purpose of this affirmative defense), then these

11   answering defendants provisionally assert that this negligence is not the sole and proximate cause of

12   the resultant damages, losses and injuries alleged by plaintiffs and that the damages awarded to

13   plaintiffs, if any, are to be apportioned according to the respective fault of the parties, persons, and

14   entities, or their agents, servants, and employees who contributed to and/or caused said resultant

15   damages as alleged, according to proof presented at the time of trial.  That to assess any greater

16   percentage of fault and damages against these answering defendants in excess of their percentage of

17   fault would be a denial of equal protection and due process which are guaranteed by the constitutions

18   of the State of California and the United States, respectively.

19                                           **VI.**

20             **AS AND FOR A FIFTH, SEPARATE AND AFFIRMATIVE DEFENSE**

21             That in the event these answering defendants are found to be liable (which supposition is

22   denied and merely stated for the purpose of this affirmative defense), that any liability of these

23   answering defendants, if any, for the amount of non-economic damages shall be allocated to these

24   answering defendants in direct proportion to these answering defendants' percentage of fault, if any,

25   according to the Fair Responsibility Act of 1986, California Civil Code §1431.1 and §1431.2,

26   respectively.

27   ///

28   ///

## VII.

### AS AND FOR A SIXTH, SEPARATE AND AFFIRMATIVE DEFENSE

Plaintiffs and plaintiffs' decedent have failed to exercise reasonable care and diligence to avoid loss and to minimize damages and, therefore, plaintiffs may not recover for losses which could have been prevented by reasonable efforts on their and plaintiffs' decedent's own parts, or by expenditures that might reasonably have been made. Therefore, plaintiffs' recovery, if any, should be reduced by the failure of plaintiffs and plaintiffs' decedent to mitigate their claimed damages.

## VIII.

### AS AND FOR A SEVENTH, SEPARATE AND AFFIRMATIVE DEFENSE

Plaintiffs' actions herein are barred by the provisions of California Civil Code § 1714.8, in that the injuries and damages complained of by plaintiffs herein, if any, were solely as the result of the natural course of a disease or condition and/or expected result of reasonable treatment rendered for the disease or condition by the defendants herein.

## IX.

### AS AND FOR A EIGHTH, SEPARATE AND AFFIRMATIVE DEFENSE

That in the event these answering defendants are found to be negligent (which supposition is denied and merely stated for the  purpose of this affirmative defense), these answering defendants may elect to introduce evidence of any amounts paid or payable, if any, as a benefit to plaintiffs and plaintiffs' decedent, pursuant to California Civil Code § 3333.1.

## X.

### AS AND FOR A NINTH, SEPARATE AND AFFIRMATIVE DEFENSE

That in the event these answering defendants are found to be negligent (which supposition is denied and merely stated for the purpose of this affirmative defense), the damages for non-economic losses shall not exceed the amount specified in California Civil Code § 3333.2.

## XI.

### AS AND FOR AN TENTH,  SEPARATE AND AFFIRMATIVE DEFENSE

That in the event these answering defendants are found to be negligent (which supposition is denied and merely stated for the purpose of this affirmative defense), these answering defendants may

-4-

1  elect to have future damages, if in excess of the amount specified in California Code of Civil

2  Procedure § 667.7, paid in whole or in part, as specified in California Code of Civil Procedure §

3  667.7.

**XII.**

**AS AND FOR A ELEVENTH, SEPARATE AND AFFIRMATIVE DEFENSE**

These answering defendants assert by way of affirmative defense the applicable provisions

of California Business & Professions Code § 6146.

**XIII.**

**AS AND FOR A TWELFTH, SEPARATE AND AFFIRMATIVE DEFENSE**

The Second Amended Complaint and every purported cause of action contained therein fails

to set forth facts sufficient to support the prayer for interest and/or prejudgment interest.

**XIV.**

**AS AND FOR A THIRTEENTH, SEPARATE AND AFFIRMATIVE DEFENSE**

The claims asserted by plaintiffs are subject to arbitration as provided for by written

agreement, and plaintiffs cannot proceed with this action until such arbitration is completed.

**XV.**

**AS AND FOR A FOURTEENTH, SEPARATE AND AFFIRMATIVE DEFENSE**

The Second Amended Complaint and every purported cause of action contained therein fails

to set forth facts sufficient to state a cause of action for breach of fiduciary duty.

**XVI.**

**AS AND FOR A FIFTEENTH, SEPARATE AND AFFIRMATIVE DEFENSE**

The Second Amended Complaint and every purported cause of action contained therein fails

to set forth facts sufficient to state a cause of action for violation of statute.

**XVII.**

**AS AND FOR A SIXTEENTH, SEPARATE AND AFFIRMATIVE DEFENSE**

The Second Amended Complaint and every purported cause of action contained therein fails

to set forth facts sufficient to state a claim for Elder Abuse pursuant to Welfare & Institutions Code

§§ 15600, et seq.

1          ## XVIII.

2    ### AS AND FOR A SEVENTEENTH, SEPARATE AND AFFIRMATIVE DEFENSE

3    The Second Amended Complaint and every purported cause of action contained therein fails

4    to set forth facts sufficient to state a claim for breach of contract.

5          ## XIX.

6    ### AS AND FOR AN EIGHTEENTH, SEPARATE AND AFFIRMATIVE DEFENSE

7    The Second Amended Complaint and every purported cause of action contained therein fails

8    to set forth facts sufficient to state a claim for attorney's fees for Public Interest Issue, pursuant to

9    C.C.P. § 1021.5.

10          ## XX.

11   ### AS AND FOR A NINETEENTH, SEPARATE AND AFFIRMATIVE DEFENSE

12   The Second Amended Complaint and every purported cause of action contained therein fails

13   to set forth facts sufficient to state a claim for breach of Covenant of Good Faith and Fair Dealing.

14          ## XXI.

15   ### AS AND FOR A TWENTIETH, SEPARATE AND AFFIRMATIVE DEFENSE

16   The Second Amended Complaint and every purported cause of action contained therein fails

17   to set forth facts sufficient to state a claim for intentional infliction of emotional.

18          ## XXII.

19   ### AS AND FOR A TWENTY-FIRST, SEPARATE AND AFFIRMATIVE DEFENSE

20   The Second Amended Complaint and every purported cause of action contained therein fails

21   to set forth facts sufficient to state a claim for negligent inflection of emotional distress.

22          ## XXIII.

23   ### AS AND FOR A TWENTY-SECOND, SEPARATE AND AFFIRMATIVE DEFENSE

24   Plaintiffs' Second Amended Complaint is vague and ambiguous. It is unclear which Plaintiff

25   is asserting which cause of action.

26   ///

27   ///

28   ///

1 | XXIV.

2 | **AS AND FOR A TWENTY-THIRD, SEPARATE AND AFFIRMATIVE DEFENSE**

3 | Plaintiff The Estate of Edgar T. Collier may not recover as a matter of law damages on a

4 | medical negligence claim and has no standing to assert a wrongful death claim, intentional infliction

5 | of emotional distress or negligent infliction of emotional distress.

6 | XXV.

7 | **AS AND FOR A TWENTY-FOURTH, SEPARATE AND AFFIRMATIVE DEFENSE**

8 | The Second Amended Complaint and every purported cause of action contained therein fails

9 | to set forth facts sufficient to state a claim for interest pursuant to C.C. § 3291.

10 | XXVI.

11 | **AS AND FOR A TWENTY-FIFTH, SEPARATE AND AFFIRMATIVE DEFENSE**

12 | Plaintiff The Estate of Edgar T. Collier may not recover as a matter of law general damages

13 | on the breach of a fiduciary duty cause of action.

14 | XXVII.

15 | **AS AND FOR A TWENTY-SIXTH, SEPARATE AND AFFIRMATIVE DEFENSE**

16 | The Second Amended Complaint and every purported cause of action contained therein fails

17 | to set forth facts sufficient to state a claim for treble damages pursuant to C.C. § 3345.

18 | XXVIII.

19 | **AS AND FOR A TWENTY-SEVENTH, SEPARATE AND AFFIRMATIVE DEFENSE**

20 | The Second Amended Complaint and every purported cause of action contained therein fails

21 | to set forth facts sufficient to state a claim for damages equal to the profit realized from defendants'

22 | conduct.

23 | XXIX.

24 | **AS AND FOR A TWENTY-EIGHTH, SEPARATE AND AFFIRMATIVE DEFENSE**

25 | The Second Amended Complaint and every purported cause of action contained therein fails

26 | to set forth facts sufficient to state a claim for violation of unstated federal law.

27 | / / /

28 | / / /

Answer to Second Amended Complaint

1          XXX.

2    <u>**AS AND FOR A TWENTY-NINTH, SEPARATE AND AFFIRMATIVE DEFENSE**</u>

3          Plaintiffs may not recover general damages as a matter of law for a breach of contract and/or

4    breach of covenant of good faith and fair dealing claims.

5          XXXI.

6    <u>**AS AND FOR A THIRTIETH, SEPARATE AND AFFIRMATIVE DEFENSE**</u>

7          Plaintiffs' failed to comply with C.C.P. § 425.13.

8          XXXII.

9    <u>**AS AND FOR A THIRTY-FIRST, SEPARATE AND AFFIRMATIVE DEFENSE**</u>

10          The Second Amended Complaint and every purported cause of action contained therein fails

11    to set forth facts sufficient to state a claim for exemplary damages.

12          XXXIII.

13    <u>**AS AND FOR A THIRTY-SECOND, SEPARATE AND AFFIRMATIVE DEFENSE**</u>

14          Plaintiffs are not entitled as a matter of law to recover attorney's fees pursuant to Welfare &

15    Institutions Code § 15657(a) on a claim of intentional infliction of emotional distress.

16          XXXIV.

17    <u>**AS AND FOR A THIRTY-THIRD, SEPARATE AND AFFIRMATIVE DEFENSE**</u>

18          This Court lacks jurisdiction over Plaintiffs' claims for denial of benefits.  Such claims are

19    completely preempted by the Federal Employees Health Benefit Act, 5 U.S.C. §§ 8901 - 8914, which

20    provides the exclusive remedy for such claims.  Thus, Plaintiffs' Second Amended Complaint is

21    subject to removal to Federal Court.

22          WHEREFORE, these answering defendants pray that plaintiffs take nothing by way of their

23    Second Amended Complaint on file herein, that judgment be entered in the within action in favor of

24    / / /

25    / / /

26    / / /

27    / / /

28    / / /

1   this answering defendants and against the plaintiffs upon the issues of the Second Amended

2   Complaint, together with an award to these answering defendants of attorney's fees and costs of suit

3   herein incurred, and such other relief as the court deems just in the premises.

4

5                                          Respectfully submitted,

6                                          BELSKY & ASSOCIATES

7

8   Dated: May 29 , 2008         By: _____

9                                          Daniel S. Belsky, Esq.
                                           Vincent J. Iuliano, Esq.
                                           Bruce W. Boetter, Esq.
10                                         Attorneys for Defendant
                                           CELESTINE ARAMBULO, D.O., (erroneously sued and
11                                         served as DR. C. ARAMBULO), KAISER
                                           FOUNDATION HOSPITALS, SOUTHERN
12                                         CALIFORNIA PERMANENTE MEDICAL GROUP, and
                                           KAISER FOUNDATION HEALTH PLAN, INC.
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-9-

Answer to Second Amended Complaint

Daniel S. Belsky, Esq. (SBN 75810)
Vincent J. Iuliano, Esq. (SBN 153594)
Bruce W. Boetter, Esq. (SBN 188376)
**BELSKY & ASSOCIATES**
591 Camino de la Reina, Suite 640
San Diego, CA 92108
Telephone:   (619) 497-2900
Facsimile:    (619) 497-2901

(SPACE BELOW FOR FILING STAMP ONLY)

FILED
CIVIL BUSINESS OFFICE 5

2008 MAY 30  A 11: 01

CLERK-SUPERIOR COURT
COUNTY, CA

**San Diego Superior Court - Central Division**
**Case No. 37-2007-00075145-CU-MM-CTL**
*Collier v. Arambulo, D.O., et al.*

---

### PROOF OF SERVICE

I, the undersigned, declare:  that I am, and was at the time of service of the papers herein referred to, over the age of 18 years, and not a party to the above-referenced action; and I am employed in the County of San Diego, California, in which county the mailing occurred.  My business address is 591 Camino de la Reina, Suite 640, San Diego, California 92108.  I am readily familiar with the practices of Belsky & Associates for collection and processing of correspondence for mailing with the United States Postal Service, Federal Express and UPS.  Such correspondence is deposited with the United States Postal Service, Federal Express, or UPS the same day in the ordinary course of business.  I served the following documents *via* **Knox Attorney Services**:

### ANSWER TO SECOND AMENDED COMPLAINT

of which the original document, or a true and correct copy, is attached, by placing a copy thereof in a separate envelope for each addressee named hereafter, addressed to each such addressee respectively as follows:

Bernard R. Lafer, Esq.
LAW OFFICES OF BERNARD R. LAFER
7801 Mission Center Court, Suite 430
San Diego, CA 92108
(619) 298-1969 / (619) 298-7784 (Fax)
**Attorney for Plaintiffs**
**FRANZISKA I. COLLIER, individually, and**
**as Administrator of the Estate of Edgar T.**
**Collier, Deceased and KEA JADE**
**COLLIER, a Minor by her Guardian Ad**
**Litem MICHAEL HYDE**

I then placed for collection and for personal service *via* Knox Attorney Service on May 30, 2008.

/ / /

/ / /

/ / /

---

Proof of Service

1  **San Diego Superior Court - Central Division**
2  **Case No. 37-2007-00075145-CU-MM-CTL**
   *Collier v. Arambulo, D.O., et al.*
3
   **PROOF OF SERVICE**
4  Page 2

5

6      I also served the following documents of which the original document, or a true and correct
   copy, is attached, by placing a copy thereof in a separate envelope for each addressee named
7  hereafter, addressed to each such addressee respectively as listed above VIA U.S. MAIL on May 30,
   2008.
8
       I declare under penalty of perjury that the foregoing is true and correct.
9
       Executed on May 30, 2008 at San Diego, California.
10

11

12     Melinda Scocozza

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

≈JS 44   (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Franziska I. Collier, individually, etc., et al.

## DEFENDANTS
Paradise Hills Convalescent Center, a business entity, etc., et al.

**(b)** County of Residence of First Listed Plaintiff   San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Law Offices of Bernard R. Lafer, Bernard R. Lafer, Esq., 7801 Mission Center Court, #430, S.D., CA 92108 (619) 298-1969

Attorneys (If Known)
Belsky & Associates, Vincent J. Iuliano, Esq., 591 Camino de la Reina, #640, S.D., CA 92108 (619) 497-2900

'08 CV 0969 L POR

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
☒ 3  Federal Question (U.S. Government Not a Party)
☐ 2  U.S. Government Defendant
☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☒ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☐ 1 Original Proceeding
☒ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
5 U. S. C. Sections 8901 - 8914
Brief description of cause:
Claims related to FEHBA Contracts

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):   JUDGE                      DOCKET NUMBER

DATE   05/30/2008

SIGNATURE OF ATTORNEY OF RECORD   Vincent J. Iuliano

**FOR OFFICE USE ONLY**

RECEIPT #   151399      AMOUNT  $350      APPLYING IFP            JUDGE            MAG. JUDGE

TAC   5/30/08



**UNITED STATES**
**DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**# 151399    —  TC**

**May 30, 2008**
**13:40:51**

**Civ Fil Non-Pris**
USAO #.: 08CV0969
Judge..: M. JAMES LORENZ
Amount.:                    $350.00 CK
Check#.: BC0382

**Total—>  $350.00**

FROM: FRANZISKA I COLLIER ET AL.
      PARADISE HILLS CONVALESCENT CT
      ET AL.